## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE KNIT WITH, | : | CIVIL ACTION **FILED** |
| Plaintiff, | : | APR 08 2009 |
| v. | : | MICHAEL E. KUNZ, Clerk<br>By _____ Dep. Clerk |
| KNITTING FEVER, INC.,<br>DESIGNER YARNS, LTD.,<br>FILATURA PETTINATA V.V.G. DI<br>STEFANO VACCARI & C., SION<br>ELALOUF, DIANE ELOUF, JEFFREY J.<br>DENECKE, JR., JAY OPPERMAN, and<br>DEBBIE BLISS, | :<br>:<br>:<br>:<br>:<br>:<br>: | NO. 08-4221 |
| Defendants. | : | |

| | | |
|---|---|---|
| THE KNIT WITH, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| EISAKU NORO & CO., LTD.,<br>KNITTING FEVER, INC.,<br>SION ELALOUF, DIANE ELALOUF,<br>and JAY OPPERMAN, | :<br>:<br>: | NO. 08-4775 |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                 April 8, 2009

Currently pending before the Court is the Motion of Plaintiff The Knit With to Dismiss

Counterclaims and Strike Affirmative Defenses. For the reasons set forth below, the Motion is

denied in part and granted in part.

## I.   PROCEDURAL HISTORY

This case arises from a dispute between Plaintiff, The Knit With ("The Knit"), a small,

family-owned and operated business retailing specialty yarns and accessories to consumers, and

Defendant Knitting Fever, Inc. ("KFI"), a New York corporation that manufactures and distributes

specialty yarns.  At the core of the dispute is a claim that KFI sold yarns to The Knit, representing

that they contained a percentage of cashmere, which, in fact, they did not.[1]

On September 2, 2008, Plaintiff initiated litigation against KFI, its officers/directors, and

several related entities, alleging that, as a consequence of the false labeling of three of the six

Cashmerino yarns at issue, its business and commercial interests were harmed.  (Compl., The Knit

With v. Knitting Fever, Inc., Civ. A. No. 08-4221 (E.D. Pa. Sep. 2, 2008) ("The Knit With I").)  The

Complaint set forth several causes of action, including: (1) breach of the express warranty of

merchantability; (2) breach of the implied warranty of merchantability; (3) false advertising under

the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) injury to business and property pursuant to the

Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962; (5) conspiracy to

cause injury to business and property pursuant to RICO; (6) perfidious trade practices (deceit) under

the common law of unfair competition; and (7) piercing the corporate veil.  (Id. ¶¶ 82-150.)

Defendants moved, on September 24, 2008, to dismiss the third, fourth, and fifth counts.

On October 6, 2008, Plaintiff initiated a second litigation against KFI, as well as the Japanese

manufacturers of the remaining three Cashmerino yarns at issue.  (Compl., The Knit With v. Eisaku

Noro & Co., Ltd., Civ. A. No. 08-4775 (E.D. Pa. Oct. 6, 2008) ("The Knit With II").)  The

---

[1]  The facts were fully summarized in this Court's December 2008 decisions and, in lieu
of repeating them here, the Court incorporates them by reference.  See The Knit With v. Knitting
Fever, Inc., Civ. A. No. 08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008); The Knit
With v. Eisaku Noro, Civ. A. No. 08-4775, 2008 WL 5273582, at *1-3 (E.D. Pa. Dec. 18, 2008).

Complaint in that case alleged the following causes of action: (1) breach of express warranty of merchantability of goods for resale to consumers; (2) breach of implied warranty of merchantability of goods for resale to consumers; (3) explicitly false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) perfidious trade practices and common law unfair competition; (5) civil conspiracy; and (6) piercing the corporate veil. On November 10, 2008, Defendants filed another motion to dismiss. (Id. ¶¶ 35-82.)

On December 18, 2008, this Court, in The Knit With I, granted the motion to dismiss the Lanham Act claim on standing grounds, but denied the motion to dismiss the RICO claims. The Knit With v. Knitting Fever, Inc., Civ. A. No. 08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008). The following day, the Court also dismissed the Lanham Act claim in The Knit With II. The Knit With v. Eisaku Noro and Co., Ltd., Civ. A. No. 08-4775, 2008 WL 5273582 (E.D. Pa. Dec. 19, 2008). By way of Order dated December 23, 2008, the Court consolidated both actions under the first civil action number.

Defendants Knitting Fever, Inc., Sion Elalouf, Diane Elalouf, Jeffrey J. Denecke, and Jay Opperman (collectively "Answering Defendants") filed their Answer and Counterclaims on January 6, 2009. On January 22, 2009, Plaintiff filed the current Motion to Dismiss Counterclaims and Strike Affirmative Defenses. Answering Defendants responded on February 5, 2009, and Plaintiff submitted its Reply Brief on February 19, 2009. The Court now reaches the merits of this pending motion.

## II.   MOTION TO DISMISS COUNTERCLAIMS

### A.   Standard of Review

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. U.S.,

3

404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1965.  Following Twombly, the Third Circuit has cautioned that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Additionally, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  Id. (alteration in original) (quoting Twombly, 127 S. Ct. at 1969 n.8).  Finally, the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'"  Id. at 234 (quoting Twombly, 127 S. Ct. at 1965).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  Id. (quoting Twombly, 127 S. Ct. at 1965).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  Spence v. Brownsville Area Sch. Dist., Civ. A. No. 08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations.  Phillips, 515 F.3d at 231.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002).

4

**B.    Whether Defendants' Counterclaims Are Untimely**

Answering Defendants raise four Counterclaims against Plaintiff: (1) defamation; (2) trade libel; (3) tortious interference with existing contractual relations; and (4) tortious interference with prospective contractual relations.  Plaintiff argues that these Counterclaims were filed outside of the one year statute of limitations set forth in 42 Pa.C.S. § 5523 and, thus, must be dismissed as time-barred.

The statute of limitations for defamation/trade libel claims provides that any such claim must be brought within one year from the date of accrual.  42 PA. CONS. STAT. § 5523.  For tortious interference with contractual relations claims, Pennsylvania courts generally apply the two year statute of limitations of 42 Pa.C.S. § 5524(3).  CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 383 (3d Cir. 2004).  Where, however, "the underlying wrong alleged in the complaint is essentially commercial disparagement by publication of defamatory statements, and the alleged injury springs solely from the act of publication," the claim is governed by the one year statute of limitations for pleading defamation.[2]  Atiyeh Publ'g., LLC v. Times Mirror Magazines, Inc., Civ. A. No. 00-1962, 2000 WL 1886574, at *4 (E.D. Pa. Dec. 7, 2000); see also Westwood-Booth v. Davy-Loewy Ltd., Civ. A. No. 97-7539, 1999 WL 219897, at *5 (E.D. Pa. Apr. 13, 1999).

All four of the challenged Counterclaims raised by Answering Defendants reference the following set of factual allegations:

164.    Beginning in July of 2006 and continuing to the present, The Knit With has engaged in a course of conduct that, upon information and belief, is designed to impugn the reputation of KFI and disparage the quality of its yarn products.

---

[2] Answering Defendants do not dispute that all of their Counterclaims are governed by a one-year statute of limitations.

165.   This course of conduct includes the publication by The Knit With to its
       customers as well as to customers of KFI and to the hand knitting yarn trade in
       general of its goods, and the reputation and character of its employees
       including Mr. Elalouf, KFI's Chief Executive Officer. These published
       statements include those made in the October 16, 2006 letter attached as
       Exhibit 17 to the Complaint sent by KFI to its customers, those made to a
       reporter for a local newspaper, *The Chestnut Hill Local*, which appeared in an
       article published on May 31, 2007, as well as numerous other statements.

166.   Following the publication of these statements by The Knit With, KFI
       experienced a loss of customers as well as a loss of sales. Upon information
       and belief, KFI also lost prospective customers due to The Knit With's
       statements to the hand knitting yarn trade in general.

(Answer and Countercl. ¶ 164-166.) Plaintiff argues that, per the express language of these

allegations, the sole bases for the purported defamation and interference with contractual relations

are: (1) the October 16, 2006 "Recall Letter," and (2) the May 31, 2007 article published in *The

Chestnut Hill Local*. As the Counterclaims were not filed until January 6, 2008 – more than one year

past each of these instances – Plaintiff concludes that they are time barred.

Plaintiff's contention, however, disregards the well-established "Third Circuit Rule" that a

motion to dismiss based on the statute of limitations may be raised in a Fed. R. Civ. P. 12 motion

only if "the time alleged in the statement of a claim shows that the cause of action has not been

brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002)

(quotations omitted); see also Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 358-

359 (E.D. Pa. 2001) (holding that for a Rule 12 dismissal of a claim as time-barred, noncompliance

with limitations period must clearly appear on the face of the pleading). Where the face of the

pleadings does not unequivocally reveal whether a cause of action has been commenced within the

limitations period, the Court may not dismiss the claim on a Fed. R. Civ. P. 12 motion. Robinson,

313 F.3d at 135.

6

The Third Circuit extended this principle to a complaint alleging continuing conduct in the case of Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978). In Bethel, the plaintiff claimed racial discrimination under, *inter alia*, 42 U.S.C. § 1981. Id. at 1170. The district court dismissed the claim on the grounds that plaintiff had not alleged any section 1981 violations by defendants within the two year statute of limitations period. Id. at 1174. On appeal, the Third Circuit reversed, noting that the complaint at issue alleged that the defendants' discriminatory acts continued "to the present." Id. The court held that "if [plaintiff's] assertions are true, as we are obliged to presume they are at this stage, each of the discriminatory acts, by having been continued to the date of the filing of the complaint, would necessarily escape the bar of any statute of limitations." Id.

Following the dictates of Bethel, several decisions in this Circuit have declined to dismiss claims of defamation where the complaint alleged that the purported defamation continued to the present. For example, in Linker v. Custom-Bilt Mach., Inc., 594 F. Supp. 894 (E.D. Pa. 1984), the plaintiff asserted that defendants' counterclaims for defamation and intentional infliction of emotional distress should be dismissed as time-barred by the relevant statutes of limitations. Id. at 902-03. The court remarked that the defendants' counterclaim "alleged that plaintiff's conduct constituting defamation and intentional infliction of emotional distress have continued up to the present." Id. at 903. Relying on Bethel's holding, the court found that because the timeliness or untimeliness of the claim was not obvious from the face of the complaint, the motion to dismiss must be denied. Id.

Similarly, in First Am. Mktg. Corp. v. Canella, Civ. A. No. 03-812, 2004 WL 250537 (E.D. Pa. Jan. 26, 2004), the plaintiff's amended complaint alleged that defendant gained access to

7

plaintiff's actual and prospective clients and proceeded to make untrue accusations regarding plaintiff and its clients' investments. Id. at *5. Defendant argued that plaintiff's claim of defamation should be dismissed for failure to file within the one year statute of limitations. Id. The court held that, on the face of the amended complaint, it was not apparent that the defamation action had been brought within the limitations period. Id. at *6. It reasoned that "[u]nlike a typical case where a plaintiff alleges an instance of defamation that occurred on a particular day, in this case Plaintiff alleges that '[a]s a direct and proximate result of [defendant's] false and misleading statements, [plaintiff] has been damaged and *continues* to be damaged.'" Id. While the court acknowledged that this allegation did not necessarily mean that plaintiff continued to be defamed, the court found it reasonable, particularly in light of plaintiff's request for an injunction, to assume that the alleged action by defendant had continued. Id.

The case before the Court presents a similar scenario. Paragraph 164 of the Counterclaim states, "[b]eginning in July of 2006 *and continuing to the present*, The Knit With has engaged in a course of conduct that, upon information and belief, is designed to impugn the reputation of KFI and disparage the quality of its yarn products." (Answer and Countercl. ¶ 164 (emphasis added).) Paragraph 165 goes on to allege that:

> 165.    This course of conduct *includes* the publication by The Knit With to its customers as well as to customers of KFI and to the hand knitting yarn trade in general of its goods, and the reputation and character of its employees including Mr. Elalouf, KFI's Chief Executive Officer. These published statements *include* those made in the October 16, 2006 letter attached as Exhibit 17 to the Complaint sent by KFI to its customers, those made to a reporter for a local newspaper, The Chestnut Hill Local, which appeared in an article published on May 31, 2007, *as well as numerous other statements.*

(Id. ¶ 165 (emphasis added).) Although the two cited examples of defamation fall outside the statute of limitations, the claim as a whole asserts that Plaintiff continues to defame Answering Defendants

to the present. Presuming this allegation to be true – as is required under Rule 12(b) – the Court finds that an issue of fact remains as to when exactly the other acts of defamation occurred. Under Bethel and its progeny, we must deny Plaintiff's Motion to Dismiss.

In an effort to distinguish this jurisprudence, Plaintiff asserts that Bethel "establishes no more than the hardly remarkable proposition that supporting facts need not be pled for allegations of continuing violative conduct when the pleadings allege *violative conduct occurring inside the limitations period.*" (Pl.'s Reply Br. 4.) Plaintiff then reasons that, unlike the complaint in Bethel, Answering Defendants' Counterclaim only provides two express instances of allegedly libelous conduct occurring outside the limitations period without expressly identifying libelous conduct occurring within the one-year limitations period. (Id. at 5.) It concludes that "[c]ommon sense indicates the 'heft' to make plausible KFI's defamation claim is *at least one instance* of allegedly violative conduct by TKW *occurring inside* the one-year statutory period to support a claim of defamation." (Id.)

Plaintiff's argument is misplaced on two grounds. First, quite contrary to Plaintiff's argument that Defendant "turns Bethel on its head," it is actually Plaintiff that misreads Bethel's holding. In Bethel, the district court dismissed the complaint on statute of limitations grounds, expressly finding that the plaintiff "failed to allege any violations by [the moving defendants] within the applicable two-year time period." Bethel, 570 F.2d at 1174. When reversing the district court's decision, the Third Circuit accepted the District Court's factual interpretation of the complaint, but nonetheless ruled that because the complaint asserted that defendants' discriminatory acts continued "to the present," the claims of discrimination, on their face, were not clearly barred by the statute of limitations. Id. at 1174. In other words, the Court found that an allegation of continuing tortious

conduct, standing alone, was sufficient to survive a statute of limitations-based motion to dismiss. Id. Nothing in Bethel or its progeny required an allegation of violative conduct occurring inside the limitations period.

Second, Plaintiff's bald contention that Answering Defendants must include at least one instance of defamation occurring within the statutory period stands in stark contrast to well-established federal pleading standards. Under Federal Rule of Civil Procedure 8(a), "'a defamation plaintiff does not have to plead the precise defamatory statements, nor must she specifically name the person who made the statements.'" Rishell v. RR Donnelly & Sons Co., Civ. A. No. 06-4782, 2007 WL 1545622, at *3 (E.D. Pa. May 24, 2007) (quoting Tuman v. Genesis Assocs., 935 F. Supp. 1375, 1391 (E.D. Pa. 1996)). "As long as a defamation count provides sufficient notice to defendants it states a claim." Id. (internal quotation marks omitted); see also Bagasra v. Thomas Jefferson Univ., Civ. A. No. 99-2321,1999 WL 517404, at *2 (E.D. Pa. Jul. 20, 1999) (specific statements and instances of publication need not be set forth in a complaint in order for a defamation claim to survive a Rule 12(b)(6) motion; EEOC v. Creative Playthings, Ltd., 375 F. Supp. 2d 427, 436-37 (E.D. Pa. 2005) (denying motion to dismiss grounded on statute of limitations where complaint did not set forth the dates of the alleged incidents underlying the trade libel and defamation claims). "The detailed facts underlying these claims can be obtained through discovery."[3] Bagasra, 1999 WL 517404, at *2.

---

[3] Pennsylvania law requires a complaint "on its face, [to] identify specifically what allegedly defamatory statements were made, and to whom they were made." Moses v. McWilliams, 549 A.2d 950, 960 (Pa. Super. 1988). As the Counterclaim Complaint at issue was filed in federal court, however, it is governed by the Federal Rules of Civil Procedure. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).

In short, the Court finds that a question of fact, not answerable from the face of the pleading, exists as to whether the Counterclaims are barred by the applicable statute of limitations. While the two cited examples of defamation appear to fall outside the limitations period, further discovery may reveal that the alleged additional, continuing acts of defamation occurred within the one-year statutory period. Taking Answering Defendants' allegations as true, the Court denies the Motion to Dismiss the Counterclaims.[4]

## III. MOTION TO STRIKE AFFIRMATIVE DEFENSES

### A. Standard of Review

Federal Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "An affirmative defense is insufficient if it is not recognized as a defense to the cause of action." Total Containment, Inc. v. Environ Prods., Inc., Civ. A. No. No. 91-7911, 1992 WL 208981, at *1 (E.D. Pa. Aug. 19, 1992) (quotations omitted).

As a general rule, motions to strike are not favored and "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." River Road Devel. Corp. v. Carlson Corp., Civ. A. No. 89-7037, 1990 WL 69085, at *2 (E.D. Pa. May 23, 1990) (citing 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1382. 809-10, 815 (1969)). Striking a pleading is a "drastic remedy" and should be used sparingly by courts, partly because of the difficulty of deciding cases without a

---

[4] Plaintiff concedes that "the legal viability of the trade libel and tortious interference Counterclaims depend upon the legal sufficiency of the defamation claim." (Pl.'s Reply Br. 6.) As the defamation Counterclaim survives the motion to dismiss, so must the remaining Counterclaims.

factual record. <u>North Penn Transfer, Inc. v. Victaulic Co. of Am.</u>, 859 F. Supp. 154, 158-59 (E.D. Pa. 1994). The Third Circuit has cautioned that courts "should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" <u>Cipollone v. Liggett Group, Inc.</u>, 789 F.2d 181, 188 (3d Cir. 1986); <u>see also</u> <u>Linker</u>, 594 F. Supp. at 898 ("An affirmative defense can be stricken 'only if the defense asserted could not possibly prevent recovery under any pleaded set or inferable set of facts.'"). Thus, "[a] motion to strike will not be granted where the sufficiency of a defense depends on disputed issues of fact." <u>Id.</u> (citations omitted). Even when facts are not in dispute, a motion to strike is not the appropriate procedure to determine disputed or unclear questions of law. <u>Id.</u>

### B. Whether Answering Defendants' Affirmative Defenses Must Be Stricken

In their Answer to Plaintiff's Complaints, Answering Defendants set forth seven Affirmative Defenses: (1) failure to state claims upon which relief may be granted; (2) failure to state RICO claims with sufficient particularity; (3) barred by applicable statutes of limitations; (4) failure to provide timely notice of the alleged breaches of warranties; (5) assumption of risk; (6) failure to mitigate; and (7) unclean hands. (Answer and Countercl. ¶¶ 152-158.) Plaintiff moves to strike all the Affirmative Defenses as either immaterial, redundant, legally insufficient, or factually insufficient. The Court addresses each argument individually.

#### 1. Immaterial Matters (First and Second Affirmative Defenses)

At the outset of its Motion, Plaintiff asserts that Answering Defendants' First Affirmative Defense – failure to state a claim upon which relief may be granted – does not lend itself to be pled as an affirmative defense, and must instead be raised in a Rule 12(b) motion. This argument is patently incorrect.

12

Federal Rule of Civil Procedure 12(b) provides that "[a] defense of failure to state a claim upon which relief can be granted may be made in any pleading permitted or ordered under Rule 7(a)." FED. R. CIV. P. 12(b). Thus, "[t]he Federal Rules specifically permit an averment of failure to state a claim to be raised as an affirmative defense." Cintron Beverage Group, LLC v. Depersia, Civ. A. No. 07-3043, 2008 WL 1776430, at *2 (E.D. Pa. Apr. 15, 2008). "[I]t is well-settled that a party can set forth the defense of failure to state a claim as an affirmative defense in the answer." Id. (citing Greiff v. T.I.C. Enter., LLC, Civ. A. No. 03-842, 2004 WL 115553, at *2 (D. Del. Jan. 9, 2004)); see also F.D.I.C. v. Modular Homes, Inc., 859 F. Supp. 117, 122 (D.N.J. 1994) (noting that "[s]ince there is a federal rule on point which recognizes that failure to state a claim upon which relief can be granted is a defense," the defendant will be permitted to raise this defense). As it does not appear to a certainty that this defense cannot succeed under any set of facts, the Court denies this portion of the Motion to Dismiss.[5]

---

[5] Plaintiff cites to two cases in support of its argument that a failure to state a claim argument may not be raised in a pleading. First, it relies on U.S. v. Marisol, Inc., 725 F. Supp. 833 (M.D. Pa. 1989), wherein the court struck the affirmative defense of failure to state a claim. Id. at 836-37. In that case, however, the court did not simply strike the affirmative defense as untenable. Rather, it considered the elements of the statute under which plaintiff sued and was able to easily conclude that the complaint alleged all of those elements. In the current matter, the Court has not yet addressed – and declines to do so without briefing by the parties – whether the Counterclaims are sufficient to state a claim for all of the alleged counts.

Plaintiff also cites Home Depot U.S.A., Inc. v. UBM, Inc., Civ. A. No. 06-3821, 2007 WL 611279 (N.D. Ill. Feb. 22, 2007) as holding that an affirmative defense of failure to state a claim should be stricken with prejudice because the proper vehicle for a party to establish a failure to state a claim is a Rule 12(b)(6) motion. This Court finds Home Depot inapposite on two bases. First, the court, in a cursory, two-sentence paragraph, struck the affirmative defense in light of the defendant's failure to dispute the plaintiff's argument. Id. at *2. Second, the court improperly, and in direct contravention of the Federal Rules of Civil Procedure, accepted as true plaintiff's argument that a failure to state allegation must be raised in Rule 12(b)(6) motion rather than as an affirmative defense. Id.

13

Plaintiff also asserts that Answering Defendants' Second Affirmative Defense – failure to state with sufficient particularity the elements of its causes of action based on RICO, 18 U.S.C. § 1961, *et seq.* – should have been included in the initial motion to dismiss. Pursuant to Rule 12(g), Plaintiff contends that by failing to raise this issue in their motion to dismiss, Answering Defendants have waived their right to pursue this issue as an affirmative defense.

Again, Plaintiff is mistaken. The Second Affirmative Defense is nothing more than an allegation of failure to state a claim, tailored to the RICO claims and specifically referencing the heightened standard of pleading for such claims. See Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004) (holding that although RICO claims are generally subject to the notice pleading requirements of Rule 8(a), RICO allegations sounding in fraud are subject to the heightened pleading standards of Rule 9(b)). As with the First Affirmative Defense, it is far from clear that this defense could not succeed under any set of facts.

Moreover, Answering Defendants have not waived this defense by failing to present it in their original Motion to Dismiss. Federal Rule of Civil Procedure 12(h) not only exempts this defense from any type of waiver, but in fact explicitly permits it to be raised by pleading, Rule 12(c) motion, or at trial.[6] Accordingly, the Court rejects this portion of Plaintiff's motion.

---

[6] Rule 12(g)(2), upon which Plaintiff relies, states:

*Except as provided in Rule 12(h)(2) or (3)*, a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

FED. R. CIV. P. 12(g)(2) (emphasis added). Rule 12(h)(2) goes on to provide that:

Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:
(A) in any pleading allowed or ordered under Rule 7(a);

14

## 2.   Redundant Matters (Third and Fifth Affirmative Defenses)

Plaintiff next argues that both the Third Affirmative Defense (statute of limitations) and the

Fifth Affirmative Defense (assumption of a known risk) seek to re-litigate issues already decided by

the Court during the Motion to Dismiss.  Upon consideration of the competing arguments, the Court

retains the Third Affirmative Defense, but strikes the Fifth Affirmative Defense.

### a.   Statute of Limitations

Plaintiff argues that the Third Affirmative Defense – which states that Plaintiff is barred from

maintaining its breach of warranty causes of action against Answering Defendants under the four-

year statute of limitations set forth in 15 Pa.C.S. § 2725[7] and 42 Pa.C.S. §§ 5524-25[8] – has already

_____

(B) by a motion under Rule 12(c); or
(C) at trial.

FED. R. CIV. P. 12(h).

[7] This section states, in pertinent part:

**(a) General rule.**--An action for breach of any contract for sale must be
commenced within four years after the cause of action has accrued. By the original
agreement the parties may reduce the period of limitation to not less than one year
but may not extend it.
**(b) Accrual of cause of action.**--A cause of action accrues when the breach
occurs, regardless of the aggrieved party's lack of knowledge of the breach. A
breach of warranty occurs when tender of delivery is made, except that where a
warranty explicitly extends to future performance of the goods and discovery of
the breach must await the time of such performance the cause of action accrues
when the breach is or should have been discovered.

13 PA. CONS. STAT. § 2725.

[8] Section 5525 states:

General rule. Except as provided for in subsection (b), the following actions and
proceedings must be commenced within four years:
* * *

been considered and rejected by the Court. Specifically, Plaintiff contends that, in the December 2008 denial of Defendants' Motion to Dismiss, the Court considered a four year limitations period applicable to Plaintiff's RICO claims. Applying the injury discovery rule, the Court determined that Plaintiff could not have discovered its injury prior to the summer of 2006 and, thus, the September 2, 2008 commencement of the action was well within the statute of limitations. Plaintiff reasons that because section 2725(b)[9] also involves a four-year statute of limitations, which accrues under the injury discovery rule, the Court's reasoning necessarily bars Answering Defendants' Third Affirmative Defense.

While Plaintiff correctly restates the conclusion from the Court's previous opinion as to the statute of limitations, it misunderstands the breadth of that decision. As noted above, the Court previously determined that a four-year statute of limitations applied to the RICO cause of action and that the accrual of that cause of action was governed by the injury discovery rule. The Knit I, 2008 WL 5381349, at *18. Applying those legal principles to the current facts, this Court then held, that, "*[t]aking the allegations of the Complaint as true* . . . there were no 'storm warnings' alerting Plaintiff, or any other reasonable yarn retailers, to the presence of unlawful RICO activity" until the summer of 2006. Id. at *20-21 (emphasis added). In so ruling, the Court relied exclusively on

---

(2) Any action subject to 13 Pa.C.S. § 2725 (relating to statute of limitations in contracts for sale).

(3) An action upon an express contract not founded upon an instrument in writing.

42 PA. CONS. STAT. § 5525(a)(2) & (3).

[9] See 13 PA. CONS. STAT. § 2725(b) ("[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.").

16

Plaintiff's factual assertions in the Complaint. Further, the Court was guided by the well-established Third Circuit rule that a court may only consider a statute of limitations defense in a motion to dismiss "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 358-359 (E.D. Pa. 2001) (quotations omitted).

In the current Motion to Strike, however, the burden shifts to Plaintiff, and the Court may strike an affirmative defense "only if the defense asserted could not possibly prevent recovery under *any* pleaded set or inferable set of facts." Linker, 594 F. Supp. at 898 (quotations omitted). All of the facts upon which the Court based the accrual date for the RICO causes of action were taken directly from the Complaint and were not supported by independent evidence. Many of those allegations have since been denied in substantial part via the Answer to the Complaint, thereby creating disputed issues of fact. Should the evidence, as developed through discovery, ultimately reveal that Plaintiff was aware of its injury at an earlier date, Answering Defendants may be able to succeed on this Affirmative Defense. As the insufficiency of this defense is not clearly apparent, the Court denies this portion of Plaintiff's motion.

b.    **Assumption of Risk**

Plaintiff raises a similar redundancy argument with respect to Answering Defendants' Fifth Affirmative Defense, which alleges that "Plaintiff is barred from maintaining this action against Answering Defendants, in whole or in part, by reason of Plaintiff's voluntary assumption of a known risk." (Answer and Countercl. ¶ 156.) Plaintiff contends that this Affirmative Defense references purported obligations under the Wool Products Labeling Act ("WPLA"), 15 U.S.C. § 68, *et seq.*, which this Court already rejected in the December 2008 Memorandum. Further, the Court excused

17

Plaintiff's failure to obtain a Guaranty of Compliance under the WPLA due to Answering

Defendants admitted refusal to provide such a Guaranty.  Id.  As such, Plaintiff argues that the

Court's explicit ruling precludes any further assumption of risk defense based on the WPLA.[10]

      Plaintiff's motion succeeds with respect to this Affirmative Defense.  In our prior opinion,

this Court ruled, as a matter of law, that the WPLA imposed no affirmative duty on retailers, such as

The Knit, to test the fiber contents of wool products intended for sale to consumers.  The Knit With,

2008 WL 5381349, at *19-20.  As such, we concluded that Plaintiff had violated none of its duties

under the WPLA.  Id.  As the Court cannot hypothesize as to any alternative basis for the Fifth

Affirmative Defense, other than one already rejected by this Court, we find that it must be stricken as

redundant.

### 3.    Legal Insufficiency (Fourth and Sixth Affirmative Defenses)

      Plaintiff next seeks dismissal of the Fourth and Sixth Affirmative Defenses on the ground

that they raise "legally insufficient matters which implicitly require the Court to determine the legal

question of which party breached the contract for the sale of *Cashmerino* goods."  (Pl.'s Mem. Supp.

Mot. to Strike 18.).  The Fourth Affirmative Defense states that "Plaintiff is barred from maintaining

---

    [10] In its Reply Brief, Plaintiff argues that in the event Answering Defendants intend the Fifth Affirmative Defense to reference a matter other than the Wool Products Labeling Act, they should be required to give a more definite statement so as to place Plaintiff on notice of the nature of this defense.  (Pl's Reply Br. 10 n.5.)  The Court sees no basis to allow Answering Defendants to provide a more definite statement.  In the original Motion to Strike, Plaintiff assumed, and thus argued, that the defense was directed to Plaintiff's purported allegations under the WPLA.  In response, Answering Defendants stated only that "there are factual questions yet to be resolved concerning . . . to what extent, over the course of these transactions, did Plaintiff assume a known risk."  (Answering Defs.' Opp. Mot. Strike 7-8.)  Such argument leaves this Court to conclude that this Affirmative Defense involves solely Plaintiff's assumption of risk by foregoing its purported obligations under the WPLA. As Answering Defendants, being given the opportunity to further explain the basis of that defense, did nothing to divest Plaintiff – or this Court – of that notion, we find no grounds for permitting a more definite statement.

its causes of action for breach of warranty because Plaintiff failed to comply with the requirement of 13 Pa. C.S.A. § 2607(c)(1)."[11] (Answer and Counterclaim ¶ 155.) The Sixth Affirmative Defense alleges that "Plaintiff is barred from maintaining this action against Answering Defendants, in whole or in part, because Plaintiff has failed to mitigate its damages, if any." (Id. ¶ 157.)

Plaintiff now contends that "[w]hile these defenses may be proper upon [the Knit] being found to have caused the breach of contract by failing to provide notice to KFI of any breach of warranty as required by 13 Pa. Cons. Stat. Anno. § 2607(c)(1), [the Knit] has not been found to have breached its contract with KFI." (Pl.'s Mem. Supp. Mot. to Strike 18-19.) "On the other hand," Plaintiff argues, "should KFI have caused the breach of contract on a date precedent to [the Knit's] failure to provide a § 2607 notice, then [the Knit] owed no duty to KFI to either provide notice or mitigate damages; moreover, should KFI have caused the breach, the US Defendants' fourth and sixth affirmative defenses are rendered legally insufficient and can not be maintained." (Id. at 19.) Plaintiff concludes that because KFI admitted, in its Answer, to not providing the requested guaranty requested under the Wool Products Labeling Act, KFI clearly breached the contract between the parties, thereby absolving the Knit from any duty to provide notice or mitigate damages.

---

[11] This section provides, as follows:

c) Notice of breach.--Where a tender has been accepted:
(1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and
(2) if the claim is one for infringement or the like (section 2312(c) ) and the buyer is sued as a result of such a breach he must so notify the seller within a reasonable time after he receives notice of the litigation or be barred from any remedy over for liability established by the litigation.

13 PA. CONS. STAT. § 2607(c)(1).