# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KNITTING FEVER, INC., | : | |
| DESIGNER YARNS, LTD., | : | |
| FILATURA PETTINATA V.V.G. DI | : | |
| STEFANO VACCARI & C., SION | : | NO.  08-4221 |
| ELALOUF, DIANE ELOUF, JEFFREY J. | : | |
| DENECKE, JR., JAY OPPERMAN, and | : | |
| DEBBIE BLISS, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EISAKU NORO & CO., LTD., | : | |
| KNITTING FEVER, INC., | : | |
| SION ELALOUF, DIANE ELALOUF, | : | NO.  08-4775 |
| and JAY OPPERMAN, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM</u>

BUCKWALTER, S.J.                                             October 20 , 2009

Currently pending before the Court is a Motion for Judgment on the Pleadings Pursuant

to Federal Rule of Civil Procedure 12(c), filed by Defendants Knitting Fever, Inc. ("KFI"), Sion

Elalouf, Diane Elalouf, Jeffrey J. Denecke, Jr., and Jay Opperman (collectively, the "KFI

Defendants").  For the reasons which follow, the Motion is granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL HISTORY

_____The factual background of this case is one familiar to both the parties and the Court and

has been reiterated in several of this Court's prior opinions.[1]  This matter arises between Plaintiff,

The Knit With ("The Knit"), a small, family-owned and operated business retailing specialty

yarns and accessories to consumers, and Defendant Knitting Fever, Inc. ("KFI"), a New York

corporation that manufactures and distributes specialty yarns.  At the core of the dispute is

Plaintiff's claim that KFI sold designer knitting yarns to The Knit, representing that the yarns

contained a percentage of cashmere, which they allegedly did not.

Plaintiff initiated litigation against KFI, on September 2, 2008, its officers/directors, and

several related entities, alleging that, as a consequence of the false labeling of three of the six

Cashmerino yarns at issue, its business and commercial interests were harmed.  (Compl., The

Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221 (E.D. Pa. Sep. 2, 2008) ("The Knit With

I").)  The Complaint set forth several causes of action, including:  (1) breach of the express

warranty of merchantability; (2) breach of the implied warranty of merchantability; (3) false

advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) injury to business and property

pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962;

(5) conspiracy to cause injury to business and property pursuant to RICO; (6) perfidious trade

practices (deceit) under the common law of unfair competition; and (7) piercing the corporate

---

[1]  The facts were fully summarized in two December 2008 decisions and, in lieu of
repeating them here, the Court incorporates them by reference.  See The Knit With v. Knitting
Fever, Inc., No. CIV.A.08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008); The Knit
With v. Eisaku Noro, No. CIV.A. 08-4775, 2008 WL 5273582, at *1-3 (E.D. Pa. Dec. 18, 2008).

veil.  (Id. ¶¶ 82-150.)  Defendants moved, on September 24, 2008, to dismiss the third, fourth, and fifth counts.

On October 6, 2008, prior to the resolution of this motion to dismiss, Plaintiff initiated a second litigation against KFI, also including as Defendants the Japanese manufacturers of the remaining three Cashmerino yarns at issue.  (Compl., The Knit With v. Eisaku Noro & Co., Ltd., No. CIV.A.08-4775 (E.D. Pa. Oct. 6, 2008) ("The Knit With II").)  The Complaint in that case set forth the following causes of action:  (1) breach of express warranty of merchantability of goods for resale to consumers; (2) breach of implied warranty of merchantability of goods for resale to consumers; (3) explicitly false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) perfidious trade practices and common law unfair competition; (5) civil conspiracy; and (6) piercing the corporate veil.  Defendants filed another motion to dismiss.  (Id. ¶¶ 35-82.)

On December 18, 2008, this Court, in The Knit With I, granted the motion to dismiss the Lanham Act claim on standing grounds, but declined to dismiss the RICO claims.  The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008). The following day, the Court also dismissed the Lanham Act claim in The Knit With II.  The Knit With v. Eisaku Noro and Co., Ltd., No. CIV.A.08-4775, 2008 WL 5273582 (E.D. Pa. Dec. 19, 2008).  By way of Order dated December 23, 2008, the Court consolidated both actions under the first civil action number.

Following the KFI Defendants' submission of their Answer, Plaintiff moved, on January 22, 2009, to dismiss all counterclaims and strike all affirmative defenses.  The Court struck Defendants' fifth affirmative defense, but denied the motion in all other respects.

3

Via its current Motion for Judgment on the Pleadings, filed on July 15, 2009, the KFI Defendants seek dismissal of the entire Complaint. Plaintiff responded to the Motion on July 29, 2009, and both parties have submitted supplemental briefing. By letter brief, the KFI Defendants subsequently requested that the portion of their Motion dealing with Plaintiff's breach of warranty claims be converted into a summary judgment motion so as to allow them to supplement the record. Plaintiff objected and, alternatively, contended that if such a conversion was permitted, it wanted the opportunity to engage in its own supplementation. Faced with these conflicting arguments reflecting a potentially unresolved factual discrepancy, the Court denied this portion of the KFI Defendants' Motion for Judgment on the Pleadings without prejudice.

What remains is the KFI Defendants' Motion for Judgment on the Pleadings as to Plaintiff's RICO, deceit, and conspiracy claims. Having considered the briefing of the parties, the Court turns to a discussion of these issues.

## II.  STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). While motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) must be brought before and in lieu of filing an answer, a Rule 12(c) motion is appropriate after the defendants have answered the complaint. Id. The difference between Rules 12(b)(6) and 12(c), however, is purely procedural and there is "no material difference in the applicable legal standards." Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004). Accordingly, the Court turns to Rule 12(b)(6) jurisprudence for further guidance on the appropriate standard of review.

4

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following the basic dictates of Twombly, the Supreme Court, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown an entitlement to relief. Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 231-33 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be

enough to raise a right to relief above the speculative level.'") Id. at 234 (quoting Twombly, 550 U.S. at 555).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

As indicated above, the sole argument before the Court is whether Plaintiff's tort-based and federal statutory claims – specifically, the RICO, deceit, and conspiracy claims (Counts 4-6 of The Knit With I and Counts 4-5 of The Knit With II) – are barred by the gist of the action and/or economic loss doctrines. The KFI Defendants contend that the "sum and substance" of the conduct which Plaintiff alleges in support of these claims relates only to purported misrepresentations concerning the quality and cashmere content of the yarns sold by KFI to Plaintiff. (Defs.' Mem. Supp. Mot. Judg. Pleadings 5, 9.) Because Plaintiff and KFI were commercial parties that entered into a series of contracts for the sale of knitting yarn, the KFI Defendants argue that their legal obligations are defined by those agreements as opposed to the larger social policies of tort. (Id. at 9.) In turn, they claim that the consolidated actions sound

6

only in contract and seek only economic losses under the warranties accompanying each purchase of the purportedly mislabeled yarn.  (Id. at 5.)

Plaintiff denies that either of these doctrines has any preclusive effect on its claims.  Its reasoning is four-fold.  First, Plaintiff contends that neither the gist of the action doctrine nor the economic loss doctrine apply to bar federal statutory claims, such as the RICO causes of action. Second, it asserts that absent discovery, dismissal pursuant to either of these doctrines is procedurally premature.  Third, Plaintiff avers that even assuming Rule 12 dismissal is appropriate under these doctrines, neither applies because the tort claims at issue have a legal foundation independent of the underlying contract for sale of goods.  Finally, it asserts that, in any event, the individual defendants cannot invoke either doctrine without having contractual privity with Plaintiff.  The Court first defines the basic principles underlying each doctrine and then addresses each of Plaintiff's individual arguments.

**A.      Definitions of the Gist of the Action and Economic Loss Doctrines**

**1.      Gist of the Action Doctrine**

As a general rule, Pennsylvania courts are cautious about permitting tort recovery on contractual breaches.  Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964).  In eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10 (Pa. Super. Ct. 2002), the Pennsylvania Superior Court emphasized that the "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims."  Id. at 14.[2]   The simple existence

---

[2]  Although the Pennsylvania Supreme Court has not explicitly adopted the gist of the action doctrine, both the Pennsylvania Superior Court and multiple United States District Courts have predicted that it will.  Woods v. ERA Med LLC, No. CIV.A. 08-2495, 2009 WL 141854, at

of a contractual relationship between two parties does not preclude one party from bringing a tort

claim against the other.  Id.; see also  Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247

F.3d 79, 104 (3d Cir. 2001).  The doctrine, however, forecloses a party's pursuit of a tort action

for the mere breach of contractual duties, without any separate or independent event giving rise

to the tort.  Smith v. Lincoln Benefit Life Co., No. CIV.A.08-1324, 2009 WL 789900, at *20

(W.D. Pa. Mar. 23, 2009) (citing Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co., 256 F.

Supp. 2d 329, 340 (E.D. Pa. 2003)).

"When a plaintiff alleges that the defendant committed a tort in the course of carrying out

a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist'

or gravamen of it sounds in contract or tort."  Sunquest Info. Sys., Inc. v. Dean Witter Reynolds,

Inc., 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999).  To make this determination, the court must

ascertain the source of the duties allegedly breached.  Sunburst Paper, LLC v. Keating Fibre

Int'l., No. CIV.A.06-3957, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006).  The doctrine bars

tort claims: "(1) arising solely from a contract between the parties . . . ; (2) where the duties

allegedly breached were created and grounded in the contract itself . . . ; (3) where the liability

stems from a contract . . . ; or (4) where the tort claim essentially duplicates a breach of contract

claim or the success of which is wholly dependent on the terms of a contract.  eToll, 811 A.2d at

19 (internal quotation marks and citations omitted).  "In other words, if the duties in question are

intertwined with contractual obligations, the claim sounds in contract, but if the duties are

collateral to the contract, the claim sounds in tort."  Sunburst Paper, 2006 WL 3097771, at *2.

Whether the gist of the action doctrine applies in any particular setting is a question of law.

---

*6 n.11 (E.D. Pa. Jan. 21, 2009) (citing cases).

8

Alexander Mill Servs., LLC v. Bearing Distribs., Ins., No. CIV.A.06-1116, 2007 WL 2907174, at
*8 (W.D. Pa. Sep. 28, 2007).

## 2.    Economic Loss Doctrine

As a close relative of the gist of the action doctrine, the economic loss doctrine "prohibits
plaintiffs from recovering in tort economic losses to which their entitlement flows only from a
contract." Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quotations omitted).
In Pennsylvania, the purpose of the economic loss doctrine is to maintain the separation between
the law of contract and the law of tort. Air Prods and Chems., 256 F. Supp. 2d at 335 (citing
N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 564 A.2d 919, 925 (Pa. Super. Ct.
1989)).  In other words, "claims for only economic loss are appropriately brought as breach of
contract or warranty claims rather than as tort claims." Fid. & Deposit Co. of Md. v. Int'l Bus,
Mach. Corp., No. CIV.A.05-461,2005 WL 2665326, at *2 (M.D. Pa. Oct. 19, 2005).   "[I]f a
claim is in essence one arising from 'failed economic expectations,' i.e. expectations that the
product would perform in the manner warranted, then tort recovery is inappropriate." Id.
(quoting Wellsboro Hotel Co. v. Prins, 894 F. Supp. 170, 175 (M.D. Pa.1995)).  Although its
precise contours are unclear, McElwee Group, LLC v. Mun. Auth. of Borough of Elverson, 476
F. Supp. 2d 472, 476 (E.D. Pa. 2007), the economic loss doctrine is concerned primarily with
two main factors:  foreseeability and limitation of liability.[3]  Sovereign Bank v. BJ's Wholesale
Club, Inc., 533 F.3d 162, 175 (3d Cir. 2008) (citing Adams v. Copper Beach Townhome
Communities, L.P., 816 A.2d 301, 305 (Pa. Super. 2003).

---

[3]  Again, although the Supreme Court of Pennsylvania has yet to explicitly adopt the
economic loss doctrine, the Pennsylvania Superior Court, in an en banc decision, accepted the
doctrine's application.  REM Coal v. Clark Equip. Co., 563 A.2d 128 (Pa. Super. Ct. 1989).

**B.     Whether the RICO Claims Are Subject to the Gist of the Action or Economic Loss Doctrines**

Having defined these doctrines, the Court must now determine their application in the case at bar.  The KFI Defendants first seek dismissal of Plaintiff's two causes of action raised pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962. Plaintiff objects, arguing that a Pennsylvania state doctrine cannot bar federal statutory causes of action.

Resolution of this dispute mandates consideration of the nature of a RICO action.  "The legislative history clearly demonstrates that the RICO statute was intended to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots." Russello v. United States, 464 U.S. 16, 26 (1983).  The broad goal was removal of the profit from organized crime "by separating the racketeer from his dishonest gains."  Id. at 28.  To sustain a civil RICO claim under § 1962(c), "a plaintiff must show the existence of an enterprise affecting interstate commerce; that the defendant was employed by or associated with the enterprise; that the defendant participated in the conduct of the affairs of the enterprise; and, that the defendant did so through a pattern of racketeering activity which included at least two predicate acts."  Polymer Dynamics, Inc. v. Bayer Corp., No. CIV.A.99-4040, 2000 WL 1146622, at *3 (E.D. Pa. Aug. 14, 2000) (citing Sedima, S.P.R.I. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985); Annulli v. Panikkar, 200 F.3d 189, 198 (3d Cir. 1999)).[4]  The source of the duties in a RICO action flow from neither a contract between the parties nor social policy/mutual

_____

[4]  More simply put, "[t]he elements of a RICO claim under § 1962 are (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity, (5) which results in injury to the plaintiffs' business or property."  Sedima, 473 U.S. at 496 (1985).

consensus, but rather from federally imposed legislation designed to "quell the potence and persistence of organized crime." In re Cantanella and E.F. Hutton and Co., Inc. Secs. Litig., 583 F. Supp. 1388, 1422 (E.D. Pa. 1984) (noting that RICO "makes collective, ongoing activity, of the sort commonly engaged in by 'organized crime,' an offense separate from the underlying violation."). Although the underlying pattern of racketeering activity – or predicate acts – may sound in tort, "civil RICO is truly *sui generis* and . . . particular claims cannot be readily analogized to causes of action known at common law." Malley-Duff & Assoc., Inc. v. Crown Life Ins. Co., 792 F.2d 341, 353 (3d Cir. 1986), aff'd, 483 U.S. 143 (1987). The United States Supreme Court, considering the nature of a RICO claim in the context of defining the appropriate statute of limitations, has held "there is no comparable single state law analogue to RICO. . . . [and] the predicate acts that may establish racketeering activity under RICO are far ranging, and . . . cannot be reduced to a single generic characterization." Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 152 (1987).

Given this underlying characterization of the RICO statute, neither the gist of the action nor the economic loss doctrines can apply. First, as set forth above, the gist of the action doctrine precludes a plaintiff from recovering in tort for claims that actually sound in contract. Sunburst Paper, 2006 WL 3097771, at *2 (citing Bash v. Bell Tel. Co. of Pa., 601 A.2d 825, 829 (Pa. Super. Ct. 1992). "To determine whether the gist of the claim sounds in contract or in tort, the court must determine the source of the duties allegedly breached." Id. (citing Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc., No. CIV.A.01-1083, 2002 WL 126634, *6 (E.D. Pa. Jan. 31, 2002)). "If the duties flow from an agreement between the parties, the claim is deemed to be contractual." Id. "Conversely, if the duties breached were of a type

11

imposed on society as a matter of social policy, the claim is deemed to sound in tort."  Id.  Where

a statutory cause of action does not clearly sound in contact or tort, such as a RICO claim, it does

not implicate the concerns underlying the gist of the action doctrine.  Jokek Charitable Trust,

R.A. v. Vertical Net, Inc., 412 F. Supp. 2d 469, 483-84 (E.D. Pa. 2006) (gist of the action

designed to "maintain the conceptional distinction between breach of contract claims and tort

claims)..

 KFI Defendants' briefs fail to cite any case where a federal court has dismissed a *sui*

*generis* federal statutory claim under the gist of the action doctrine as duplicative of a contract

claim.  Given the absence of any authority for Defendants' argument, together with the fact that a

RICO cause of action based on tortious predicate acts does not implicate the fundamental

premise of the gist of the action doctrine, the Court declines to dismiss Plaintiff's RICO claims.

 The same holds true for the economic loss doctrine.  While the Third Circuit has held that

the economic loss doctrine can apply to preclude state statutory claims that mirror state common

law fraud, Werwinski, 286 F.3d at 681,[5] KFI Defendants have not pointed to – and this Court is

unaware of – any case that has used Pennsylvania's economic loss doctrine to foreclose a federal

---

 [5]  Notably, the Third Circuit's holding in Werwinski that the economic loss doctrine can
apply to claims under the state Uniform Trade Practices and Consumer Protection Law statute
has been expressly disagreed with by several Pennsylvania courts.  See, e.g., Zwiercan v. Gen.
Motors Corp., 58 D. & C. 4th 251, 266-70 (2002); Smith v. Reinhart Ford, 68 Pa. D. & C. 4th
432, 437-38 (2002).  At least one case from the Eastern District of Pennsylvania has given more
deference to the Pennsylvania state courts on this issue and have declined to find that the
economic loss doctrine bars state statutory claims.  See, e.g., O'Keefe v. Mercedes-Benz USA,
LLC, 214 F.R.D. 266, 277 (E.D. Pa. 2003).  Others, however, have chosen to strictly follow
Werwinski until faced with a contrary dictate by either the Pennsylvania or United States
Supreme Court.  See, e.g., DeFebo v. Andersen Windows, Inc., __ F. Supp. 2d __, 2009 WL
2837684, at *8 (E.D. Pa. Sep. 3, 2009); Sanchez v. Feretti, Inc., No. CIV.A.07-4255, 2008 WL
2517177, at *3 (E.D. Pa. Jun. 20, 2008).

statutory cause of action.[6]  Moreover, as discussed above, the economic loss doctrine only

precludes recovery of damages in tort which "were in the contemplation of the parties at the

origination of the agreement."  Factory Mkt., Inc. v. Schuller Int'l, Inc., 987 F. Supp. 387, 396

(E.D. Pa. 1997) (quoting Auger v. Stouffer Corp., No. CIV.A.93-2529, 1993 WL 364622, at *3

(E.D. Pa. Aug. 31, 1993)).  While a civil RICO action requires a plaintiff to allege economic loss

in order to have standing, Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000), the actual

damages to be recovered are not economic losses, but rather treble damages.  18 U.S.C. §

1964(c) (1995).  Such damages were certainly not in the contemplation of the parties in this case

at the time of contracting.

       In short, neither doctrine precludes Plaintiff's RICO action.  Because a RICO claim does

not sound in either contract or tort, it implicates none of the concerns highlighted by the gist of

the action doctrine.  Morever, Plaintiff's RICO claim seeks not merely economic damages, but

rather the treble damages provided for in the statute, thereby obviating any application of the

economic loss doctrine.  Absent any authority applying these doctrines to dismiss federal

---

       [6]  KFI Defendants, citing to the United States Supreme Court case of East River S.S.
Corp. v. Transamerica Delval, Inc., 476 U.S. 858 (1986), argue that, as originally formulated, the
economic loss doctrine was first a creature of federal common law, independent of state law
principles, and, as such, is applicable to federally-created causes of action such as RICO claims.
(Defs.' Reply Br. 4.)
       Defendants' argument, however, misunderstands the scope of East River.  The Supreme
Court, in that matter, applied the federal economic loss doctrine to maritime law, which is
effectively a federal common law arena.  East River, 476 U.S. 865-66.  It noted that, to the extent
the plaintiff had alleged federal negligence and strict liability claims under maritime law that
otherwise sounded in contract, the economic loss doctrine would operate to bar such tort claims.
East River, 476 U.S. at 873-75.  Nothing in that decision suggests that the economic loss doctrine
would extend to federal statutory claims that sound in neither tort nor contract and that seek
neither tort nor contract damages.

statutory claims, this Court declines to do so.

**C.**    **Whether, in the Absence of Discovery, Dismissal Pursuant to the Gist of the Action Doctrine is Procedurally Premature**

Still at issue, however, are Plaintiff's tort claims for perfidious dealing/deceit and civil conspiracy.  Plaintiff initially argues that, without discovery, KFI Defendants' motion to dismiss these tort claims under either the gist of the action or economic loss doctrines is premature.  Accordingly, Plaintiff requests that this Court deny Defendants' motion for judgment on the pleadings as procedurally defective.

This argument is misplaced.  Undoubtedly, many of the cases invoking the gist of the action in dismissing fraud claims have chosen to do so at the summary judgment stage, in lieu of the Rule 12 phase of litigation.  Metro Auto Sales v. Alfred Stein, Inc., No. CIV.A.05-4721, 2006 WL 237505, at *3 (E.D. Pa. Jan. 30, 2006) (citing Williams v. Hilton Group, 93 Fed. Appx. 384, 386-87 (3d Cir. Mar. 17, 2004); Penn City Invs., Inc. v. Soltech, Inc., No. CIV.A.01-5542, 2003 WL 22844210, at *4 (E.D. Pa. Nov. 25, 2003); Galidieri v. The Monsanto Group, 245 F. Supp. 2d 636, 650 (E.D. Pa. 2002); Werner Kammann, 2002 WL 126634, at *6-7)).  Indeed, courts in this district  have shown some reluctance to dismiss claims for fraud in the inducement or negligent misrepresentation early in the litigation.  See, e.g., Longview Dev. LP v. Great Atl. & Pac. Tea Co., Inc., No. CIV.A.02-7422, 2004 WL 1622032, at *4 (E.D. Pa. 2004); Little Souls, Inc. v. State Auto Mut. Ins. Co., No. CIV.A.03-5722, 2004 WL 503538, at *3 (E.D. Pa. March 15, 2004); Weber Display & Packaging v. Providence Wash. Ins. Co., No. CIV.A.02-7792, 2003 WL 329141, at *4 (E.D. Pa. Feb. 10, 2003); Foster v. Nw. Mut. Life, No. CIV.A.02-2211, 2002 WL 31991114, at *3 (E.D. Pa. July 26, 2002).

14

Nonetheless, "there is precedent in this Court for invocation of the gist of the action doctrine at that stage of the litigation in a 12(b)(6) dismissal." <u>Metro Auto. Sales</u>, 2006 WL 237505, at *3 (citing <u>Owen J. Roberts Sch. Dist. v. HTE, Inc.</u>, No. CIV.A.02-7830, 2003 WL 735098 (E.D. Pa. Feb. 28, 2003)).  Many cases from within this Circuit have dismissed claims under the gist of the action doctrine at the Rule 12(b)(6) stage.  <u>See</u>, <u>e.g.</u>, <u>Bryan's Quality Plus, LLC v. Shaffer Builders, Inc.</u>, No. CIV.A.07-2311, 2008 WL 3523935, at *5 (E.D. Pa. Aug. 12, 2008) (dismissing, pursuant to Rule 12(b)(6), plaintiff's fraud and misrepresentation claims under the gist of the action doctrine); <u>KSM Assoc., Inc. v. ACS State Healthcare, LLC</u>, No. CIV.A.05-4118, 2006 WL 847768, at *4 (E.D. Pa. Mar. 30, 2006) (dismissing, on Rule 12(b)(6) motion, fraud counterclaim under the gist of the action doctrine); <u>Freedom Props., L.P. v. Lansdale Warehouse Co, Inc.</u>, No. CIV.A.06-5469, 2007 WL 2254422, at *6 (E.D. Pa. Aug. 2, 2007) (granting, based on gist of the action doctrine, Rule 12(b)(6) motion to dismiss fraudulent inducement and negligent misrepresentation claims based on plaintiff's failure to perform its contractual duty).[7]

Likewise, federal courts within the Third Circuit have repeatedly granted Rule 12(b)(6) dismissals of cases under the economic loss doctrine.  <u>Sovereign Bank v. BJ's Wholesale Club</u>,

---

[7]  Plaintiff cites two cases for the proposition that "in the absence of discovery, the claimed legal insufficiency of a complaint based upon the 'gist of the action' doctrine is not a proper dismissal." (Pl.'s Resp. Mot. Judg. Pleadings 25 (citing <u>U.S. Claims, Inc. v. Saffren & Weinberg, LLP.</u>, No. CIV.A. 07-543, 2007 WL 4225536 (E.D. Pa. Nov. 29, 2007) and <u>Asbury Auto. Group LLC v. Chrysler Ins. Co.</u>, No. CIV.A. 01-3319, 2002 WL 15925 (E.D. Pa. Jan. 7, 2002).)  Neither of these cases, however, foreclosed Rule 12 dismissal pursuant to the gist of the action doctrine.  Rather, they both found that, under the particular circumstances of the individual matter at bar, Rule 12 dismissal was not appropriate.  <u>U.S. Claims</u>, 2007 WL 4225536, at *12; <u>Asbury Auto.</u>, 2002 WL 15925, at *3.

Inc., 533 F.3d 162, 177-78 (3d Cir. 2008) (affirming district court's dismissal of negligence claim under the economic loss doctrine); Fleet Nat. Bank v. Boyle, No. CIV.A.04-1277, 2005 WL 2455673, at *17 (E.D. Pa. 2005) (granting motion to dismiss negligent misrepresentation claim under economic loss doctrine)  Constar, Inc. v. Nat'l Distrib. Ctrs., Inc., 101 F. Supp. 2d 319, 322-23 (E.D. Pa. 2000) (dismissing, under Rule 12(b)(6), plaintiff's negligence claim under the economic loss doctrine); Titan Stone, Tile & Masonry, Inc. v. Hunt Constr. Group, Inc., 2007 WL 174710, at *4 (D.N.J. 2007) (granting Rule 12(b)(6) dismissal of fraud and conversion claims under economic loss doctrine).

In light of the foregoing, the Court rejects Plaintiff's request to deny the KFI Defendants' Motion as procedurally defective.  Instead, we consider the individual circumstances of the case at bar to determine whether dismissal is appropriate.

**D.      Whether Plaintiff's Actions for Perfidious Dealing and Civil Conspiracy Are Barred by the Gist of the Action Doctrine**

Having thus found that Rule 12 dismissal to be permissible under the relevant doctrines, the Court must now determine whether either doctrine applies to bar the tort claims.  Plaintiff contends that its perfidious dealing/deceit and civil conspiracy claims both involve allegations of fraud in the inducement, which are not barred by either doctrine.  KFI Defendants, on the other hand, contend that the fraudulent conduct set forth in those claims involve representations of fact intertwined with the contractual terms.  Considering the gist of the action doctrine jurisprudence, the Court grants dismissal of these claims.[8]

---

        [8] Notably, the gist of the action and economic loss doctrines are related and share the common purpose of barring relief for a cause of action that is more contractual than tortious in

Pennsylvania courts have battled with whether the gist of the action doctrine may preclude a cause of action for fraud.[9]  The elements of a fraud claim under Pennsylvania law include "a misrepresentation, an intent by the maker that the recipient be induced to act, justifiable reliance by the recipient upon the misrepresentation, and damage to the recipient as the proximate result."  Olkowski v. Prudential Ins. Co. of Am., 584 F. Supp. 1140, 1141 (E.D. Pa. 1984).  A claim for fraudulent inducement includes an additional element, that the misrepresentation was made with the specific intent to induce another to enter into a contract when the person had no duty to enter into the contract.  In Re Allegheny Int'l., 954 F.2d 167, 178

---

nature.  Aarrocki v. Old Republic Nat'l Title Ins. Co., No. CIV.A.06-2422, 2007 WL 4142757, at *6 (E.D. Pa. Nov. 19, 2007).  The economic loss doctrine, however, has traditionally been applied to products liability actions, including services contracts, claims brought by individuals, and claims of intentional and statutory fraud, while the corresponding gist of the action doctrine is applied to other types of actions.  Becker v. Chicago Title Ins. Co., No. CIV.A.03-2922, 2004 WL 228672, at *11 (E.D. Pa. Feb. 4, 2004).  Courts have been wary of relying on the economic loss doctrine alone where the claim does not allege a pure products liability case of action. Hospicomm, Inc. v. Fleet Bank, N.A., 338 F. Supp. 2d 578, 583 & n.4 (E.D. Pa. 2004); accord Wilmington Fin., Inc. v. Am. One Fin., Inc., No. CIV.A.06-5559, 2007 WL 2221424, at *2 n.1 (E.D. Pa. Jul. 31, 2007) (noting that "[t]he economic loss and gist of the action doctrines are very closely related and share the common purpose of maintaining the distinction between contract and tort law."  Where the action is not a products liability action, the "gist of the action" doctrine is more appropriate.)  The case at bar is not clearly the type of products liability action to which the economic loss doctrine has been applied and, as such, the gist of the action doctrine is the more appropriate rule of law.

[9]  Although Plaintiff does not bring a "fraud" claim per se, it captions its first tort claim as "Perfidious Trade Practices (Deceit) Under the Common Law of Unfair Trade Practices."  (Id.) This Court has been unable to find a cause of action under Pennsylvania law for "perfidious trade practices."  We do, however, recognize that Pennsylvania maintains a cause of action for deceit, the elements of which mirror those of common law fraud.  Connolly v. Reliastar Life Ins. Co., No. CIV.A.03-5444, 2006 WL 3355184, at *12 (E.D. Pa. Nov. 13, 2006) (citing Brickman Group, Ltd. v. CGU Ins. Co., 865 A.2d 918, 929 (Pa. Super. Ct. 2004)).  The essential elements of a deceit claim are "a misrepresentation, a fraudulent utterance thereof, an intention to induce action thereby, justifiable reliance thereon, and damages as a proximate result."  Wilson v. Donegal Mut. Ins. Co., 598 A.2d 1310, 1315 (Pa. Super. Ct. 1991).

(3d Cir. 1992).

The Pennsylvania Superior Court has explicitly recognized that Pennsylvania law has "*not* carved out a categorical exception for fraud, and [has] not held that the duty to avoid fraud is always a qualitatively different duty imposed by society rather than by the contract itself." eToll, 811 A.2d at 19.  Rather, as the court explained, the cases turn on the question of whether the fraud concerned the performance of contractual duties.  Id.  If so, then the alleged fraud is generally held to be intertwined with a contract claim for breach of those duties.  Id.  In other words, the gist of the action doctrine generally bars fraud claims in cases where a defendant's alleged failure to perform its duty under the contract is transformed into a claim that this failure amounts to fraud.  Asbury Auto. Group LLC v. Chrysler Ins. Co., No. CIV.A.01-3319, 2002 WL 15925, at *3 (E.D. Pa. Jan. 7, 2002); see also Horizon Unlimited, Inc. v. Silva, No. CIV.A.97-7430, 1998 WL 88391, at *4-5 (E.D. Pa. Feb. 26, 1998) (holding that gist of the action doctrine barred fraud and negligent misrepresentation claims premised on allegedly false statements made in promotional literature about the product when the subsequent contract disclaimed any prior representations); Factory Mkt., 987 F. Supp. at 394-95 (finding that gist of the action doctrine barred fraud claims against roofer who agreed and repeatedly attempted to repair a chronically leaking roof, even though he knew from the outset that it was beyond repair, as the obligation to make the roof watertight was imposed by the contract, not in tort).

Where, however, the fraud concerns an act collateral to and not interwoven with the terms of the parties' contract, such as a fraudulent inducement to enter the contract, courts have been less likely to bar the claims.  eToll, 811 A.2d at 19.  "The distinction between fraud in the inducement and fraud in the performance claims with regard to the gist of the action doctrine is

18

crucial.  This is because fraud in the inducement claims are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists."  Air Prods. and Chems., 256 F. Supp. 2d at 341.

Even this seemingly simple distinction, however, does not establish a clear-cut rule. Where the pre-contractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the contract, courts have repeatedly dismissed such claims as sounding in contract and, thus, barred by the gist of the action doctrine. See, e.g., Williams v. Hilton Group, PLC, 93 Fed. Appx. 384, 386-387 (3d Cir. 2004) (concluding that where defendants induced plaintiffs into committing to buying gaming assets for a certain price on an exclusive basis while secretly marketing properties to other buyers, the gravamen of the fraud in the inducement claim sounded in contract and was barred by the gist of the action doctrine); DeLage Landen Fin. Servs., Inc. v. Barton Nelson, Inc., No. CIV.A.08-530, 2008 WL 4791891, at *6-7 (E.D. Pa. Nov. 4, 2008) (dismissing fraudulent inducement claim where the alleged pre-contractual misrepresentations were directly addressed by the written contract); Tier1 Innovation, LLC v. Expert Tech. Group, LP, No. CIV.A.06-4622, 2007 WL 1377664, at *4 (E.D. Pa. May 8, 2007) (dismissing allegations of fraud in the inducement and negligent misrepresentation on grounds that they were both "inextricably intertwined" with the alleged failure to perform under the contract, as the claims pertained to representations regarding party's expertise and ability to perform its duties under the agreement); Penn City Invs., Inc., 2003 WL 22844210, at *3-5 (dismissing, on summary judgment, fraudulent inducement claim based on pre-contractual discussions regarding specific duties that were directly addressed by the written contract).

This jurisprudence thus requires the Court to determine whether Plaintiff's claims for

perfidious dealing/deceit and civil conspiracy allege fraudulent inducement outside the scope of

contract or whether the underlying substance of each claim is inextricably intertwined with the

contractual duties outlined by the terms of the contract.  The Court considers each cause of action

individually.

### 1.   Perfidious Dealing (Deceit)

In both The Knit With I and The Knit With II, Plaintiff sets forth a claim for "Perfidious

Trade Practices (Deceit) Under the Common Law of Unfair Competition."  Specifically, this

cause of action alleges the following:

> 64.   The wholesale sale of mislabeled products, purchased by a commercial
> buyer for resale to consumers is the type of perfidious dealing which the
> law of deceit, a form of action for unfair competition, is intended to
> correct.

> 65.   As a matter of law, the sale of mis-labeled wool products is a deceptive
> and unfair trade practice.  *See, United States v. Woody Fashions, Inc.*, 190
> F. Supp. 709 (S.D. NY, 1961).  Moreover, even the inadvertent sale of
> mis-labeled textile products by a wholesale distributor is a deceptive and
> unfair trade practice.  *See, In Re Taylor-Friedsam Co., Inc.*, 69 F.T.C. 483,
> 1966 FTC LEXIS 44 (FTC, 1966).

> 66.   Mislabeling handknitting wool products or yarn, intended for resale to
> consumers is a deceptive and unfair trade practice as established by
> Congress and so declared by the WOOL PRODUCTS LABELING ACT of 1938,
> *codified at* 15 U.S.C. § 68a.

> 67.   Moreover, the TRADEMARK ACT of 1946, at § 45, defines false
> advertising, actionable pursuant to 15 U.S.C. § 43(a)(1)(B) to be a
> deceptive practice and a form of unfair competition.

> 68.   By reference to ¶ 60, which is incorporated herein as if fully set forth and

20

at length below, the Defendants' deceit has resulted in harms to and the
injury of Plaintiff's business for which the common law action of
perfidious dealing provides a remedy.

69.     Defendants introduction into the commerce of the United States of at least
three, if not more, falsely advertised and mis-labeled wool products as
prohibited by the trade regulation laws of the United States, is an
especially insidious form of perfidious dealing and demonstrates such
wanton, reckless or willful disregard of the rights of others as to entitle
Plaintiff to the award of punitive damages.

(Compl., The Knit With II ¶¶ 64-69.)[10]  In short, Plaintiff alleges that the KFI Defendants

fraudulently misrepresented the cashmere content of their yarns with an intent to induce Plaintiff

into purchasing this yarn.

The determinative issue thus becomes whether such a claim sounds in either tort, as a

claim of fraudulent inducement, or contract, as a claim of fraudulent performance.  As noted

above, "[t]o determine whether the plaintiff has sufficiently alleged a tort, as opposed to a

contract claim, Pennsylvania courts look to see whether the 'gist,' or gravamen, of the alleged

conduct sounds in contract or tort."  U.S. Small Bus. Admin. v. Progress Bank, No. CIV.A.03-

3461, 2004 WL 2980412, at *7 (E.D. Pa. Dec. 22, 2004).  In making this determination, courts

have considered "whether (1) the contract is collateral to, rather than intertwined with, the

tortious conduct; (2) the alleged conduct concerned the performance of the contract; or (3) the

parties' obligations are defined by the terms of the contract or the larger social policies embodied

in the law of torts."  Id.; see also Carcaise v. Cemex, Inc., 200 Fed. Appx. 116, 126 (3d Cir.

---

[10]  The cause of action for perfidious trade practices in The Knit With I is identical save
for the numbering of the paragraphs and the absence of the second sentence and citation in
paragraph 65.

2006).

As a general rule, "[d]amage to a product itself is most naturally understood as a warranty claim." East River S.S. Corp. v. Transamerica Delval, Inc., 476 U.S. 858, 872 (1986). "Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'" Id. (citing J. White and R. Summers, UNIFORM COMMERCIAL CODE 406 (2d ed. 1980)). Thus, in cases alleging "insufficient product value" – i.e., that a product fails to meet expectations – the recovery of such product value is "precisely the purpose of express and implied warranties." Id.

Numerous cases have applied this principle to bar a tort claim for failed commercial expectations under the gist of the action doctrine. For example, in Werner Kammann Maschinenfabrik, GmbH v. May Levy Autograph, Inc., No. CIV.A.01-1083, 2002 WL 126634 (E.D. Pa. Jan. 31, 2002), the third-party complaint alleged that the third-party plaintiff purchased a furnace through a distributor based upon the third-party defendant's express representation that the heating elements of the furnace were enclosed, which was required to eliminate the risk of contamination to the materials being fired. Id. at *2. The furnace supplied, however, failed to have such enclosure, and the third-party defendant failed and refused to help rectify the problem, resulting in damages. Id. Third-party plaintiff brought four causes of action: (1) breach of contract; (2) breach of warranty; (3) fraudulent misrepresentation; and (4) negligent misrepresentation. Id. Third-party defendant sought dismissal of the third and fourth causes of action under the gist of the action doctrine. Id. at *6. The court granted the motion, holding that, "[t]he express statement that the heating elements would be enclosed was part of the contract, and third-party plaintiffs have, as discussed, alleged breaches of the contract and that specific

22

express warranty." Id.  Thus, it found that "the misrepresentation claims are completely

intertwined with those contractual claims, and the contract claim is not collateral to the tort

claims.  The duties allegedly breached were created and grounded in the contract itself. A mere

allegation of fraud and negligence is insufficient to create a distinct tort remedy." Id. at *6.

    Similarly, in Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc., 123 F. Supp. 2d

826 (E.D. Pa. 2000), a suit arose out of a licensing agreement under which defendant was to

provide computer software to assist plaintiff's wholesale business.  Id. at 827.  The relationship

between the parties deteriorated when the software failed to function as defendant represented it

would.  The plaintiff claimed that the software never performed as promised, that defendant

failed to fix the problems despite numerous requests from plaintiff, and that plaintiff eventually

had to obtain software from another company.  Id.  Defendant sought dismissal of plaintiff's

fraud claim, arguing that it was a breach of contract claim in disguise and should be dismissed

under the gist of the action doctrine.  Id. at 833.  The court agreed, holding that "[t]he bottom line

in this case is that [plaintiff] signed an agreement with [defendant] to buy software that worked,

and the software (allegedly) did not work."  Id.  Finding the contract and tort duties intertwined,

the court noted that, "[t]he duties that plaintiff alleges defendant breached were created by and

grounded in the licensing agreement. . . . The fraud claim merely alleges that [defendant] kept

promising [plaintiff] that the software would work and that [defendant] would fulfill its end of

the bargain under the agreement."  Id. at 833-34.  "Thus, '[t]he only difference between the tort

and the contract claims is temporal, not substantive.'"  Id. at 834 (quoting Haymond v. Lundy,

Civ. A. Nos. 99-5015, 99-5048, 2000 WL 804432 at *8 (E.D. Pa. June 22, 2000)).  Because the

court determined that "the agreement is at the heart of plaintiff's ongoing fraud claim," it deemed

plaintiff's fraud action "unmistakably contractual, not tortious."  <u>Id.</u> at 834.

Finally, in <u>Wheeler v. Beard</u>, No. CIV.A.03-4826, 2005 WL 1217191 (E.D. Pa. May 19, 2005), the court considered the defendants' motion to dismiss plaintiffs' claims of fraud and negligent misrepresentation based on the sale of defective and/or non-conforming goods.  <u>Id.</u> at *8.  The court noted that "[t]he duties asserted by plaintiffs here – duties involving the provision of goods and services that are free from defects and otherwise in conformity with consumer expectations – arise exclusively from sales contracts into which plaintiffs entered with [the defendants]."  <u>Id.</u> at *9.  As such, the plaintiffs' tort claims were "rooted entirely in allegations that they did not get what they bargained for when they agreed to purchase particular goods and services."  Because the court found that "[t]he breaches of duty they allege are thus breaches of *contractual* duties," it dismissed these claims under the gist of the action doctrine.  <u>Id.</u>

Likewise, in the case at bar, the plain language of the Complaint confirms that the core of Plaintiff's perfidious dealing/deceit claim arises solely from the parties' contract for the sale of goods.  As in <u>Caudill</u> and <u>Wheeler</u>, the "bottom line" is that Plaintiff contracted to buy several yarns that the KFI Defendants represented to contain a certain percentage of cashmere, and the yarns allegedly did not contain that cashmere.  Plaintiff's rights and entitlements with respect to this purported breach are defined entirely by the contract for the sale of these particular goods and not by the larger social policies embodied by the law of torts.  In other words, the contract is not merely collateral to Plaintiff's claim for deceit or perfidious trade practices, it is the basis for it.  The allegations of the deceit claim are merely part and parcel of the broader breach of contract that occurred.  Under such circumstances, Plaintiff's claim for deceit sounds entirely in contract and, thus, is barred by the gist of the action doctrine.

24

Plaintiff presents multiple and varied arguments to the contrary, none of which persuade this Court otherwise.  First, Plaintiff contends that the deceit claim is, at its core, a fraudulent inducement claim, which is not subject to dismissal under the gist of the action doctrine. Specifically, Plaintiff argues that it purchased the various yarns at issue based on Defendants' representations, made outside the contract, that the various yarns contained a certain cashmere content, and that Defendants wrongfully assume that Plaintiff would have purchased the mislabeled yarns at issue regardless of Defendants' representations.  (Pl.'s Resp. Mot. Judg. Pleadings 28-29.)

This argument misapprehends the core of the KFI Defendants' Motion.  The KFI Defendants by no means suggest that Plaintiff purchased these yarns without regard to their cashmere content.  Rather, they contend that the representations regarding the yarns' fibers – representations which undoubtedly induced Plaintiff to enter into the contract – were ultimately incorporated into the contract itself.  As such, the representations and the contractual duties were inextricably intertwined.  Any failure by Defendants to provide yarns that met with the specifications defined by their earlier representations thus constituted not fraud in the inducement, but rather fraud in the performance.[11]

---

[11]   Plaintiff asserts the KFI Defendants incorrectly attempt to argue that "any failure of the six handknitting yarns at issue to live-up to representations made concerning the qualities and characteristics of these products, *sine qua non*, precludes Plaintiff's unfair competition and civil conspiracy claims."  (Pl.'s Resp. Mot. Judg. Pleadings 31.)  Attempting to rebut Defendants' purported argument, Plaintiff cites to TruePosition, Inc. v. Sunon, Inc, No. CIV.A.05-3023, 2006 WL 1451496 (E.D. Pa. May 25, 2006), for the proposition that its tort claims may exist outside the breach of contract action.

Aside from the fact that the KFI Defendants make no such argument, TruePosition is inapposite.  In that case, the defendant sold to plaintiff a large quantity of small equipment fans, which started failing a year and a half after installation and use in plaintiff's machines.  Id. at *1-

Second, Plaintiff contends that the gist of the action doctrine can only function in the presence of an express contract, the terms of which are before the Court.  (Pl's Resp. Mot. Judg. Pleadings 33.)  It asserts that no express contractual document exists between the parties, thereby precluding application of the gist of the action doctrine.  (Id. at 34.)  Contrary to Plaintiff's argument, however, it is well-settled that the mere absence of a particular document specifying the precise terms of sale does not deprive the parties of a contractual relationship.  Adani Exports Ltd. V. AMCI Export Co., No. CIV.A.05-304, 2007 WL 4298525, at *14 (W.D. Pa. Dec. 4, 2007).  Under Title 13, section 2204(a) of the Pennsylvania Consolidated Statutes Annotated, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognized the existence of such contract."  13 PA. CONS. STAT. § 2204(a).  When a seller fills a buyer's orders and forwards corresponding invoices, a commercial sales contract is formed between the parties.  Perkasie Indus. Corp. v.

---

2.  Along with its contract claims, plaintiff alleged fraudulent inducement and negligent misrepresentation on the ground that, in order to induce plaintiff to enter into the contract, defendant produced a 2003 Life Test Report showing that the fans had a life span of between ten and twenty-eight years.  Id. at *1.  Rejecting defendant's efforts to dismiss these claims under the gist of the action doctrine, the court found that the misrepresentations at issue did "not pertain to the question of whether the fans performed as promised," and thus were not subsumed in the contract.  Id. at *3.  Rather, they pertained only to the statements in the 2003 Life Test Report that the fans were actually tested and the test results showed a particular life span.  Id.  As the Test Report was not subsumed in the contract, it could not be barred by the gist of the action doctrine.  Id.

   To the contrary, the misrepresentations at issue in this case pertain precisely to the question of whether the yarns "performed" – i.e., contained the proper quantities of cashmere – as promised.  Although the alleged misrepresentations induced Plaintiff to enter the contract, it remains well-established that "promises made to induce a party to enter into a contract that eventually become part of the contract itself cannot be the basis for a fraud-in-the-inducement claim under the gist of the action doctrine." Freedom Props., 2007 WL 2254422, at * 6.  For Plaintiff to now suggest that the cashmere content of the yarns at issue were not part of the basis of the bargain contradicts the very allegations of its own Complaints.

26

<u>Adv. Transformer, Inc.</u>, No. CIV.A.90-9309, 1993 WL 183982, at *1 (E.D. Pa. May 13, 1993).
In this case, Defendants filled Plaintiff's order for various specified yarns and then forwarded
corresponding invoices, thereby creating a contractual relationship for the sale of goods.[12]
(Compl., <u>The Knit I</u>, ¶¶ 41-42 & Ex. 6 (invoices for KFI's sales to The Knit With.)

   Third, Plaintiff argues that, even assuming the existence of a contractual relationship, the
Court must look to the terms of the contract to determine whether or not the representations
regarding the percentages of various constituent fibers were subsumed within the contractual
terms.  (Pl.'s Sur-reply Br. 10.)  Without reviewing such contract terms, the Court cannot
ascertain whether the Defendants "agreed to supply yarns named *cashmerino* irrespective of the
cashmere content of the same or [Plainitff] agreed to expressly assume the risk that yarns
furnished by KFI would not be spun with the labeled quantities of cashmere."  (Pl.'s Resp. Mot.
Judg. Pleadings 34.)  Because a court may not, on a motion for judgment on the pleadings, look
at documents outside the record, such as invoices, Plaintiff claims that dismissal under gist of the
action doctrine is not appropriate at this time.  (Pl.'s Sur-reply Br. 10.)

   This assertion, however, fails to recognize that Plaintiff's own allegations in its
Complaint – allegations which this Court must accept as true – define the crucial terms of the
contract and reveal that the representations regarding the fiber content of the yarns were indeed
subsumed within the terms of the contract.  Primarily, Plaintiff concedes that the KFI Defendants
repeatedly characterized the Cashmereno DK and Debbie Bliss lines of yarn as containing a
certain percentage of cashmere, as follows:

---

   [12]  Indeed, both parties admit to the presence of a contract for the sale of goods.  (Compl.,
<u>The Knit I</u>, ¶¶ 85-86, 88; Answer, <u>The Knit I</u>, ¶¶ 85-86, 88.)

37.    Even before formal release of the Cashmerino yarns at the June 9-11, 2001 US trade show for yarn trade, Jay Opperman – as an independent sales representative for KFI – introduced Plaintiff to a new product, K.F.I. Cashmerenos DK, described as and purported to be a premium, handknitting yarn created exclusively for KFI and represented to be spun of 55% merino wool, 33% microfiber and 12% cashmere.  Upon the representations made, Plaintiff purchased the Cashmerenos DK for resale and in the course of time added 45.5 kilos of the product to its inventory. . . .

38.     At the June 9-11, 2001 trade show held in Columbus, OH, the new Debbie Bliss line – including Cashmerino Aran, also purported to be spun of 55% merino wool, 33% microfiber and 12% cashmere – was debuted by KFI and sensationally received by the trade.  The perceived consumer desire for 'designer' yarn products, natural fibers and the known commercial success of Mrs. Bliss' knitting designs . . . led Plaintiff to commit to purchase the Debbie Bliss line including Cashmerino Aran also for Autumn, 2001 delivery.  In the course of time Cashmerino Aran was received from KFI and added to Plaintiff's inventory.

39.    Between August, 2001 and continuing through Autumn, 2005, at least two times each year, KFI used the United States Mail to issue Plaintiff – along with as many as 2,000 other specialty yarn retailers – price/product lists identifying the KFI and Debbie Bliss Cashmerino products as spun of a fibre content consisting of 55% merino wool, 33% microfibre and 12% cashmere. . . .

* * *

85.    Defendants Opperman, in his individual capacity, and Sion Elalouf, at various times since 2001 – when offering for sale the handknitting yarns at issue – represented each to be spun with a quantity of cashmere consistent with the labeling affixed to those products.

86.    By written statements in price lists, specification sheets, product labeling, product catalogues and promotional support and by general communications to the handknitting trade, at various times since 2001 and through at least July, 2006 KFI repeated and thereby adopted the representations initially made to Plaintiff by Defendants Opperman and Elalouf.

28

(Compl., <u>The Knit With I</u>, ¶¶ 37-39, 85-86 (citations to evidence omitted).)  Moreover, Plaintiff

unequivocally admitted that it contracted with KFI for the sale of various yarns containing this

represented amount of cashmere, and that the prior representations by KFI officials were

subsumed into the contract for sale.

> 40.    In 2003, Plaintiff committed to buy a line extension of the Debbie Bliss
>        Cashmerino range, Cashmerino Baby, also purported to be spun of the
>        same proportionate fibre content and composition.  In the course of time,
>        Cashmerino Baby was received from KFI and added to Plaintiff's
>        inventory. . . .
>
> 41.    Between August, 2001 and continuing through Autumn, 2005 . . . Plaintiff
>        purchased from KFI, for resale to handknitting consumers, an equivalent
>        total of 1,210 balls . . . of the Debbie Bliss Cashmerino yarns; in this same
>        period, Plaintiff sourced an equivalent 910 balls . . . of K.F.I Cashmerinos
>        DK. . . .
>
> * * *
>
> 88.    ***At time of contract, Plaintiff purchased and sought delivery of
>        handknitting yarns spun with 12% cashmere – products which Plaintiff
>        did not receive from Defendants.***

(<u>Id.</u> ¶¶ 40-41, 88 (emphasis added) (citations to evidence omitted).)  Given these clear allegations

conceding that a contract existed, that Plaintiff placed orders for certain goods, and that it

received nonconforming goods from KFI, any failure of the yarns to contain the represented

amount of cashmere violated the clear terms of the contract and constituted a breach of express

warranty.[13]

    Fourth, Plaintiff contends that Defendants inconsistently deny any failure to perform their

---

    [13]  The KFI Defendants' Answer admits that Plaintiff contracted to buy yarns containing
the represented amount of cashmere, but simply denies that the yarns at issue failed to contain
this cashmere.  (Answer, <u>The Knit I</u>, ¶¶ 40, 88.)

contract to supply Plaintiff cashmerino yarns containing 12% cashmere, while simultaneously seeking judgment based upon a breach in performance.  (Pl.'s Resp. Mot. Judg. Pleadings 31-32.) The Court, however, does not find these arguments incompatible.  The KFI Defendants simply contend that to the extent they have committed any wrongdoing – a fact which they deny – that wrongdoing sounds in contract, not tort.  Nothing in the gist of the action doctrine requires that the party seeking to invoke the doctrine confess to the breach; it only requires that contractual privity exist.  Levert v. Phila. Int'l Records, No. CIV.A.04-1489, 2005 WL 2271862, at *3 (E.D. Pa. Sep. 16, 2005).  As the parties, in this case, concede the existence of a contract for the sale of various yarns containing twelve percent cashmere, the gist of the action applies to bar claims intertwined with the promises of performance made in connection with the sale.

Finally, Plaintiff argues, without citation to supporting legal authority, that its tort action invokes generally-applicable, socially-imposed duties that relate to all supplying merchants and are independent of the parties' contract for the sale of goods.  Plaintiff reasons that "[b]ecause the duty to not engage in perfidious dealing arises as a matter of social law generally applicable to all, the 'gist of the action' doctrine does not bar [The Knit's] action for perfidious dealing." (Pl.'s Resp. Mot. Judg. Pleadings 36.)  This argument, however, is unavailing.  As noted previously, the elements of perfidious dealing/deceit mirror those of common law fraud in Pennsylvania.  Connolly, 2006 WL 3355184, at *12.  Where fraud claims are inextricably intertwined with the terms of the contract, they may not stand independently.  eToll, 811 A.2d at 19.  Under the circumstances of this case, Plaintiff would have had no injury, and thus no

30

standing,[14] absent the contract, to pursue a claim for deceit against Defendants for any

misrepresentations they made to knitting retailers concerning the fiber content of their yarns.  As

no separate or independent event outside the alleged contractual breach gave rise to Plaintiff's

deceit claim, the gist of the action doctrine bars such a claim.[15]

---

[14]   Plaintiff cites the Restatement (Third) of Unfair Competition section 1 for the propositions that "[a]n action for perfidious dealing may be maintained where a commercial seller supplies – to a plaintiff merchant for the plaintiff's resale to customers – goods which are prohibited from sale" and that "deceitful trade practices [are] actionable as unfair competition; deceitful trade practices are practices defined by law as such.  (Pl's Resp. Mot. Judg. Pleadings 36.)

   The Restatement says no such thing.  The precise text of this section is as follows:

One who causes harm to the commercial relations of another by engaging in a business or trade *is not subject to liability to the other for such harm unless*:
(a) the harm results from acts or practices of the actor actionable by the other under the rules of this Restatement relating to:
   (1) deceptive marketing, as specified in Chapter Two;
   (2) infringement of trademarks and other indicia of identification, as specified in Chapter Three;
   (3) appropriation of intangible trade values including trade secrets and the right of publicity, as specified in Chapter Four;
   or from other acts or practices of the actor *determined to be actionable as an unfair method of competition*, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public; or

(b) the acts or practices of the actor are actionable by the other under federal or state statutes, international agreements, or general principles of common law apart from those considered in this Restatement.

REST. (THIRD) UNFAIR COMPETITION § 1 (1995) (emphasis added).  Nothing in this section grants standing to a merchant retailer to pursue a deceit claim simply due to the supplier's failure to sell the goods promised in a contract.  Moreover, this section purports to deal with *competitive* harm, not merely *commercial* harm.  Id.  As discussed at length in this Court's December 18, 2008 Memorandum and Order in this case, Plaintiff has failed to show that it suffered any competitive harm from Defendants' actions.  The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221, 2008 WL 5381349, at *17 (E.D. Pa. Dec. 11, 2008).

[15]   In its Response, Plaintiff claims that its perfidious dealing claim identifies the Wool Products Labeling Act as prohibiting the sale of mis-labeled or inaccurately labeled wool

In sum, the Court deems the allegations of Plaintiff's perfidious dealing/deceit claim to arise solely out of the contract between the parties.  As the gist of the action doctrine precludes Plaintiff from recasting ordinary breach of contract claims into tort claims, the perfidious dealing/deceit cause of action must be dismissed.[16]

---

products.  Because this law imposes a duty on those who introduce wool products into commerce to accurately label the fiber content of their products, Plaintiff asserts that the perfidious dealing cause of action is separate from the contract claim.  (Pl.'s Resp. Mot. Judg. Pleadings 36.)

This claim has no legal foundation.  The Wool Products Labeling Act, 15 U.S.C. § 68, *et seq.* (1990), imposes a duty on a manufacturer or distributor of wool products to label those products in accordance with the requirements of the statute.  Id. § 68c.  The statute, however, explicitly provides that its provisions "shall be enforced by the Federal Trade Commission under rules, regulations, and procedure provided for in the Federal Trade Commission Act."  Id. § 68d.  There is no private right of action to enforce these provisions and thus cannot be an independent source of duties that would grant Plaintiff standing to pursue its tort claims absent a contract creating privity between the two parties.  Warren Corp. v. Goldwert Textile Sales, Inc., 581 F. Supp. 897, 899 (S.D.N.Y. 1984).

[16] Although not necessary to the decision in this matter, the Court recognizes that Plaintiff's deceit claim is similarly barred by the economic loss doctrine.  It is well-established in this Circuit that the economic loss doctrine prohibits such claims, including intentional torts, when economic losses are incurred from breach of contractual obligations.  Werwinski, 286 F.3d at 671.  As set forth above, the deceit claim in this case is completely interwoven with the breach of contract action and seeks only economic losses arising from that breach.  Such economic losses, absent other physical injury or property damage, simply may not be recovered in tort.  Mikola v. Penn Lyon Homes, Inc., No. CIV.A.07-612, 2008 WL 2357688, at *6 (M.D. Pa. Jun. 4, 2008).  While Plaintiff cites the Pennsylvania Supreme Court decision of Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270 (Pa. 2005) for the proposition that claims of negligent or intentional misrepresentation are not automatically barred merely because tort claims accompany a contract action, (Pl.'s Resp. Mot. Judg. Pleadings 41-42), the Third Circuit has expressly limited that case to the narrow instances where a commercial plaintiff seeks recourse against a supplier of information – i.e., a business that provides services or information knowing they will be relied upon by third parties in their business decisions – with whom the plaintiff has no contractual relationship.  Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008); see also  Am. Store Props., Inc. v. Spotts, Stevens & McCoy, __ F. Supp. 2d __, 2009 WL 2513437, at *7 (E.D. Pa. Aug. 13, 2009).

2.    **Civil Conspiracy**

The second tort claim at issue is Plaintiff's civil conspiracy count, set forth in The Knit

With II Complaint as follows:

71.    At a date presently unknown to Plaintiff and uniquely available only to
Defendants but certainly by August, 1997, Defendants Sion and Diane
Elalouf and Jay Opperman combined their talents with a common purpose
of marketing handknitting yarns inaccurately labeled and mis-labeled to
indicate a cashmere content significantly greater than the actual quantity of
cashmere spun into the yarns.

72.    Beginning in August, 1997, Defendants caused to be shipped to Plaintiff
handknitting yarns with a mis-labeled cashmere content – a circumstance,
both within the custom of the yarn trade and when measured against
commercial reasonableness, not ascertainable to Plaintiff until the 2006
rumor of the zero cashmere content revealed that other handknitting yarns
sold by Defendant were in fact mis-labeled.

73.    As specified in ¶ 60, which by reference is incorporated herein as if fully
set forth in detail below, Plaintiff has suffered actual legal damages as a
consequence of Defendants conspiracy.

74.    Defendants actions have been effected with an intent to injure Plaintiff or
in reckless disregard of the possibility of injury.

(Compl., The Knit With II, ¶¶ 71-74.)

To make out a claim for common law civil conspiracy under Pennsylvania law, a plaintiff

must allege: "(1) a combination of two or more persons acting with a common purpose to do an

unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act

done in pursuance of the common purpose; and (3) actual legal damage." Chantilly Farms, Inc.

v. W. Pikeland Twp., No. CIV.A.00-3903, 2001 WL 290645, at *12 (E.D. Pa. Mar. 23, 2001)

(quoting Smith v. Wagner, 588 A.2d 1308, 1311-12 (Pa. Super. Ct. 1991)). "Proof of malice, i.e.,

an intent to injure, is an essential proof of a conspiracy." Skipworth by Williams v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997) (quotation omitted).  The element of malice requires a showing that "the sole purpose of the conspiracy is to cause harm to the party who has been injured." Becker v. Chicago Title Ins. Co., No. CIV.A.03-2292, 2004 WL 228672, at *13 (E.D. Pa. Feb. 4, 2000) (citing Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979)).

Unlike Plaintiff's claim for deceit, a cause of action for civil conspiracy requires a distinct underlying tort as a predicate to liability.  In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999); Kist v. Fatula, No. CIV.A.06-67, 2007 WL 240721, at *9 (W.D. Pa. Aug. 17, 2007).  "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means of establishing vicarious liability for the underlying tort." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000) (quotation omitted).  Thus, "if the underlying tort is found not to exist, the related claim for civil conspiracy to commit that tort necessarily fails." Kist, 2007 WL 2404721, at *9.

Given these principles, the Court must grant the KFI Defendants' Motion on this claim. The only other tort claim in the two Complaints is the perfidious trade practices/deceit count. Since that claim is no longer viable and Plaintiff has not set forth any other tort underlying the civil conspiracy claim, this cause of action must likewise be dismissed.

## E.   Whether the Gist of the Action or Economic Loss Doctrines Apply to the Individual Defendants

In a final effort to avoid dismissal of its tort claims, Plaintiff contends that the gist of the action and economic loss doctrines cannot be invoked to bar the tort claims asserted against

Defendants Sion and Diane Elalouf and Jay Opperman (collectively, the "Individual Defendants"). It reasons that the sales contracts at issue were entered into between Plaintiff and KFI, with no privity of contract between Plaintiff and any of the individual defendants.

As noted above, the gist of the action doctrine prohibits claims where the duties essentially flow from an agreement between the parties. Bealer v. Mut. Fire, Marine and Inland Ins. Co., No. Civ. A. 04-5195, 2005 WL 1819971, *4 (E.D. Pa. Aug.1, 2005), aff'd, 242 Fed. Appx. 802 (3d Cir. 2007), cert. denied, 128 S. Ct. 1260 (2008). As a logical inference then, a party who was not in contractual privity with the plaintiff cannot invoke the gist of the action doctrine to foreclose tort claims against him or her. See, e.g., Centimark Corp v. Pegnato & Pegnato Roof Mgmt., Inc., No. CIV. A.05-708, 2008 WL 1995305, at *13-14 (W.D. Pa. May 6, 2008) (holding that individual defendants could not invoke the gist of the action doctrine to bar conversion claim against them individually because they, as individuals, were not party to the contract with plaintiff); Levert, 2005 WL 2271862, at *3 (noting that the fact that the defendant was not in a contract with the plaintiff bars both plaintiff's breach of contract claims against him, as well as defendant's invocation of the gist of the action doctrine to bar the tort claims); Fleet Nat'l Bank v. Boyle, No. CIV.A.04-277, 2005 WL 2455673, at *11 (E.D. Pa. Sep. 12, 2005) (noting that defendants had failed to cite to any authority for the notion that they, as non-parties to the contract at issue, could invoke the gist of the action doctrine to bar the tort claims against them); Penn City Invs., Inc. v. Soltech, No. CIV.A.01-5542, 2003 WL 22844210, at *3 (E.D. Pa. Nov. 25, 2003).

Nonetheless, two obstacles prevent Plaintiff from reaping the benefits of this rule. First, as to Defendants Sion and Diane Elalouf (the "Elalouf Defendants"), Plaintiff's argument is

35

belied by its piercing the corporate veil count.  In both Complaints, Plaintiff alleges that KFI and its related entities are effectively "alter egos" of Sion and Diane Elalouf and were used by them to insulate profits gained through their perfidious dealing, deceptive trade practices and racketeering acts.  (Compl., The Knit With I., ¶¶ 143-150; Compl., The Knit With II, ¶ 75-82.) Thus, if Plaintiff is successful in piercing the corporate veil, the Elalouf Defendants may be held liable in breach of contract notwithstanding their lack of privity of contract.  If not, then all of the wrongful representations forming the basis of the perfidious trade practices/deceit claim would technically have been made by Defendant KFI, through its corporate officers, thereby barring Plaintiff from maintaining such a cause of action against the Individual Defendants.  See Mikola v. Penn Lyon Homes, Inc., No. CIV.A.07-612, 2008 WL 2357688, at *7 (M.D. Pa. Jun. 4, 2008) (applying gist of the action doctrine to individual defendant who were not in contractual privity with plaintiff in light of plaintiff's request in its complaint to pierce the corporate veil).

Second, assuming the gist of the action doctrine would not be applicable, the economic loss doctrine still precludes Plaintiff from recovering in tort against the Individual Defendants. "[T]he economic loss doctrine has . . . been applied in cases where the economic losses were allegedly caused by a defect in a product, perhaps causing damage to the product itself but causing no damage to person or property."  Pa. State Employees Credit Union v. Fifth Third Bank, 398 F. Supp. 2d 317, 329 (M.D. Pa. 2005) (citing East River, 476 U.S. 858), reconsid. granted on other grounds, 2006 WL 1724574 (M.D. Pa. Jun. 16, 2006).  "In the products-liability context, the rule is applied because economic losses can be protected against by contract or warranty, with warranty protecting a manufacturer against unlimited liability in tort for 'persons downstream' from the initial transaction."  Id. (citing East River, 476 U.S. at 871-875).  As such,

36

"[p]arties are thus left to whatever contractual remedies they bargained for and if they did not bargain for recovery of economic damages, they are not permitted to do so in tort." Id.; see also Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008) (affirming district court's dismissal of tort claims under economic loss doctrine despite the fact that the defendants were not in privity of contract with plaintiff); Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, __ F. Supp. 2d __, 2009 WL 2513437, at *7 (E.D. Pa. Aug. 13, 2009) (rejecting plaintiff's argument that economic loss doctrine does not apply where the parties were not in privity of contract); Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1278, 1280 (M.D. Pa. 1990) (holding that contractual privity is not necessary for application of economic loss doctrine and finding that plaintiff's "inability to recover in contract or warranty due to the lack of privity, although unfortunate, does not change the fact that Palco's remedies in this matter are limited by law.").

In this case, Plaintiff, a commercial entity, could have contracted with the Individual Defendants in order to hold such Defendants liable for their representations that became part of the sales contract.  Plaintiff chose to contract only with KFI and to bind KFI, a corporate entity, to the representations of its principals.  Plaintiff may not now use a tort action to end-run corporate limitations on liability.  Accordingly, the Court rejects Plaintiff's argument and dismisses the tort actions against the individual Defendants.

IV.     CONCLUSION

In short, the true nature of the dispute between the parties arises out of their contract for the sale of handknitting yarns that should, but purportedly did not, contain a certain percentage of

37

cashmere.  As such, with the exception of Plaintiff's RICO causes of action, both the gist of the action doctrine and the economic loss doctrine cabin Plaintiff's permissible claims to those sounding in contract.  The Court, therefore, dismisses Counts 5 and 6 of <u>The Knit With I</u> and Counts 4 and 5 of <u>The Knit With II</u>.

An appropriate order follows.