**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KNITTING FEVER, INC., | : | |
| DESIGNER YARNS, LTD., | : | |
| FILATURA PETTINATA V.V.G. DI | : | |
| STEFANO VACCARI & C., SION | : | NO. 08-4221 |
| ELALOUF, DIANE ELALOUF, JEFFREY | : | |
| J. DENECKE, JR., JAY OPPERMAN, and | : | |
| DEBBIE BLISS, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EISAKU NORO & CO., LTD., | : | |
| KNITTING FEVER, INC., | : | |
| SION ELALOUF, DIANE ELALOUF, | : | NO. 08-4775 |
| and JAY OPPERMAN, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S.J.                                                                                          July 13, 2010


Currently pending before the Court are several Motions to Dismiss for Insufficient

Service filed by Defendants Filatura Pettinata V.V.G. Di Stefano Vaccari & C. ("Filatura"),

Designer Yarns, Inc. ("Designer Yarns"), and Debbie Bliss (collectively "Moving Defendants").

Also at issue are the Motions to Set Aside Defaults by Defendants Designer Yarns and Debbie Bliss. For the reasons which follow, the Motions to Dismiss are granted in part and denied in part, the service upon the three Moving Defendants is quashed, and Plaintiff is given sixty days from the date of this Memorandum and accompanying Order to effect proper service on the Moving Defendants. Further, the motions to Set Aside the Defaults are granted and the Defaults entered against Defendants Designer Yarns and Debbie Bliss are vacated.

## I. FACTUAL AND PROCEDURAL HISTORY

The factual background of this case is one familiar to both the parties and the Court and has been reiterated in several of this Court's prior opinions.[1] This matter arises between Plaintiff, The Knit With ("The Knit"), a small, family-owned and operated business retailing specialty yarns and accessories to consumers, Defendant Knitting Fever, Inc. ("KFI"), a New York corporation that manufactures and distributes specialty yarns, and Defendants Filatura, Debbie Bliss, and Designer Yarns, all of whom design and manufacture speciality yarns. At the core of the dispute is Plaintiff's claim that KFI sold designer knitting yarns to The Knit, representing that the yarns contained a percentage of cashmere, which they allegedly did not.

Plaintiff initiated litigation against KFI, its officers/directors, Filatura, Designer Yarns, and Debbie Bliss, alleging that, as a consequence of the false labeling of three of the six Cashmerino yarns at issue, its business and commercial interests were harmed. (Compl., The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221 (E.D. Pa. Sep. 2, 2008) ("The Knit With

---

[1] The facts were fully summarized in two December 2008 decisions and, in lieu of repeating them here, the Court incorporates them by reference. See The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008); The Knit With v. Eisaku Noro, No. CIV.A. 08-4775, 2008 WL 5273582, at *1-3 (E.D. Pa. Dec. 18, 2008).

I").)  The Complaint set forth several causes of action, including:  (1) breach of the express

warranty of merchantability; (2) breach of the implied warranty of merchantability; (3) false

advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) injury to business and property

pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962;

(5) conspiracy to cause injury to business and property pursuant to RICO; (6) perfidious trade

practices (deceit) under the common law of unfair competition; and (7) piercing the corporate

veil.  (Id. ¶¶ 82-150.)  Defendants Knitting Fever, Inc., Sion Elalouf, Diane Elalouf, Jeffrey

Denecke, and Jay Opperman (collectively, the "KFI Defendants") moved, on September 24,

2008, to dismiss the third, fourth, and fifth counts.

On October 6, 2008, prior to the resolution of this motion to dismiss, Plaintiff initiated a

second litigation against the KFI Defendants, also including as Defendants the Japanese

manufacturers of the remaining three Cashmerino yarns at issue.  (Compl., The Knit With v.

Eisaku Noro & Co., Ltd., No. CIV.A.08-4775 (E.D. Pa. Oct. 6, 2008) ("The Knit With II").)  The

Complaint in that case set forth the following causes of action:  (1) breach of express warranty of

merchantability of goods for resale to consumers; (2) breach of implied warranty of

merchantability of goods for resale to consumers; (3) explicitly false advertising pursuant to the

Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) perfidious trade practices and common law unfair

competition; (5) civil conspiracy; and (6) piercing the corporate veil.  The KFI Defendants filed

another motion to dismiss with respect to The Knit With II.  (Id. ¶¶ 35-82.)

On December 18, 2008, this Court, in The Knit With I, granted the motion to dismiss the

Lanham Act claim on standing grounds, but declined to dismiss the RICO claims.  The Knit With

v. Knitting Fever, Inc., No. CIV.A.08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008).

The following day, the Court also dismissed the Lanham Act claim in The Knit With II.  The Knit With v. Eisaku Noro and Co., Ltd., No. CIV.A.08-4775, 2008 WL 5273582 (E.D. Pa. Dec. 19, 2008).  By way of Order dated December 23, 2008, the Court consolidated both actions under the first civil action number.

Following the KFI Defendants' submission of their Answer, Plaintiff moved, on January 22, 2009, to dismiss all counterclaims and strike all affirmative defenses.  The Court struck the KFI Defendants' fifth affirmative defense, but denied the motion in all other respects.  Thereafter, via a Motion for Judgment on the Pleadings, filed on July 15, 2009, the KFI Defendants sought to dismiss Plaintiff's RICO, deceit, and conspiracy claims.   The Court declined to dismiss the RICO claims, but granted judgment on the pleadings on both the deceit and conspiracy claims.  The sole remaining claims are the RICO and breach of warranty actions.

Throughout this entire course of events, Defendants Filatura, Debbie Bliss, and Designer Yarns never entered appearances.  Therefore, on May 10, 2010, Plaintiff moved for defaults against all of these entities.  Defendant Filatura countered, on May 12, 2010, with a Motion to Dismiss the case against it for insufficient service.  That same day, the Clerk of this Court entered defaults against Defendants Debbie Bliss and Designer Yarns.  On May 14, 2010, these two latter Defendants moved to reopen the defaults against them and also filed Motions to Dismiss for insufficient service identical in nature to the one filed by Filatura.  The Court now turns to the merits of these Motions.

## II.    THE MOTIONS TO DISMISS

### A.    Standard of Review

The Federal Rules of Civil Procedure allow a Court to dismiss an action for

"insufficiency of service of process." FED. R. CIV. P. 12(b)(5). In a Rule 12(b)(5) motion, "the party making the service has the burden of demonstrating validity when an objection to the service is made." Suegart v. U.S. Customs Serv., 180 F.R.D. 276, 278 (E.D. Pa. 1998). "In addressing such motions, '[t]he courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant[s].'" Grand Entm't Group, Ltd. v. Star Media Sales, Inc., No. CIV.A.86-5763, 1993 WL 437699, at *2 (E.D. Pa. Oct. 21, 1993) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE PROCEDURE § 1354 at 288 (2d ed. 1990)).

Nevertheless, the United States Court of Appeals for the Third Circuit has held that "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should at most, quash service, leaving the plaintiff[] free to effect proper service." Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992). "Where service is insufficient, the Court must extend the deadline where good cause is present, and may, at its discretion, extend the deadline regardless, even if good cause is not present." Salaam v. Merlin, No. CIV.A.08-1248, 2009 WL 2230925, at *3 (D.N.J. Jul. 22, 2009) (citing Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1312 (3d Cir.1995)). Good cause exists where there is a "demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995) (quotations omitted). Some of the factors courts examine in determining whether good cause exists include: (1) the reasonableness of the plaintiffs' efforts to serve, (2) the prejudice that may befall a defendant as a consequence of untimely service, and (3) whether plaintiffs moved for an

enlargement of time to serve.  Id. (citing the three factors but noting that the "absence of prejudice alone can never constitute good cause to excuse late service").  In addition, the burden of establishing good cause rests with the plaintiff.  Parker v. John Doe # 1, No. CIV.A.02-7215, 2003 WL 21294962, at *2 (E.D. Pa. Jan. 21, 2003).

### B.    Merits of the Motions to Dismiss

The crux of the pending Motions turns on the propriety of the service of process on Defendants Filatura, Debbie Bliss, and Designer Yarns.  Plaintiff, in this case, filed this action on September 2, 2008.  The following day, Plaintiff's counsel, James Casale, retained the services of FedEx, an international courier, to serve the Complaint and Summons on Filatura.  (Decl. of James Casale in Resp. to Def. Filatura's Mot. to Dismiss ("Casale Decl. for Filatura") ¶ 2, June 1, 2010.)  A few days later, he received a document from FedEx confirming that it accomplished such service on September 5, 2008, by delivering the Summons and Complaint to Filatura's offices at 11 Via Gianasso in Benna, Italy.  (Id. ¶ 3.)  The document further indicated that S. Vaccari, Filatura's employee, signed for the delivery.  (Id.)

As to Defendant Designer Yarns, Attorney Casale also retained the services of FedEx to serve the Summons and Complaint on Designer Yarns in Keighley, England.  (Decl. of James Casale in Resp. to Def. Designer Yarns's Mot. to Dismiss ("Casale Decl. for Designer Yarns"), ¶ 2, June 1, 2010.)  On September 5, 2008, he received confirmation of the delivery of these documents by accessing FedEx's website and inputting the tracking number.  (Id. ¶ 3.)

Finally, as to Defendant Debbie Bliss, Attorney Casale similarly sent the Summons and Complaint to Ms. Bliss via FedEx Air Waybill and, on September 5, 2008, received a proof-of-delivery from FedEx.  (Decl. of James Casale in Resp. to Def. Debbie Bliss's Mot. to Dismiss

("Casale Decl. for Debbie Bliss"), ¶¶ 2-3, June 1, 2010.)

The three Moving Defendants now contend that such service was improper and seek dismissal of the Complaint against them. In support of their claim, Defendants raise three points. First, they contend that, notwithstanding Plaintiff's claims to the contrary, they have not waived their right to object to service. Second, they assert that the Hague Convention does not permit for international service by registered mail. Finally, they argue that, even if the Hague Convention allows use of the mail for service, nothing within the Federal Rules of Civil Procedure permits a private attorney to accomplish international service of process by registered mail. The Court addresses each point individually.

### 1.     Whether Defendants Have Waived Their Right to Object to Service

Plaintiff first seeks dismissal of all Defendants' Motions because they failed to timely challenge the sufficiency of the service, thereby waiving their right to object to service. Specifically, Plaintiff avers that all three Defendants received actual notice of the action nearly two years ago, yet chose not to respond to the Summons and Complaint. Thus, through their inaction, Plaintiff claims that Defendant's current objections must be denied as untimely.

Plaintiff's argument is misplaced. The Third Circuit has expressly noted that, "[a] district court's power to assert *in personam* authority over parties defendant is dependent not only on compliance with due process but also on compliance with the technicalities of Rule 4." Grand Entm't, 988 F.2d at 492. "Notice to a defendant that he has been sued does not cure defective service, and an appearance for the limited purpose of objecting to service does not waive the technicalities of the rule governing service." Id.; see also Henry v. Cooper Univ. Hosp., No. CIV.A.07-2402, 2008 WL 4371764, at *2 (D.N.J. Sep. 17, 2008). In other words, even if a

defendant has notice of a lawsuit against it, such notice neither validates an otherwise defective service nor waives the defendant's right to object to that service.  Id.; see also West v. Terry Bicycles, Inc., 230 F.3d 1382, at *2 (5th Cir. 2000).  "Without proper service, the court does not obtain personal jurisdiction over a defendant, and the case may not proceed to judgment."  Lin v. Pa. Machine Works, Inc., No. CIV.A.97-5407, 1998 WL 111788, at *3 (E.D. Pa. Mar. 3, 1998) (citing Ayres v. Jacobs & Crumplar, P.C., 99 F.3d 565, 568 (3d Cir. 1996)); see also Kloth v. S. Christian Univ., 494 F. Supp. 2d 273, 275 n.3 (D. Del. 2007) ("If service of process is insufficient to confer jurisdiction of the person, a defendant does not waive this defense by failing to raise it in a motion or pleading within the time required for answer, since the court has no power over the defendant."), aff'd, 320 Fed. Appx. 113 (3d Cir. 2008).

In this case, Defendants do not dispute that they actually received copies of the Summons and the Complaint.  Rather, they argue that the method of service was defective.  The mere fact that two years elapsed before they raised such objections – their first legal filing in this action – is irrelevant.  As such, the Court rejects Plaintiff's argument that Defendants' challenges to the sufficiency of service are untimely and waived.

## 2.  Whether Service of Process by Mail is Permitted Under the Hague Convention

Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure.  The Rule specifically notes, in part, that an individual or corporation may be served at a place not within any judicial district of the United States, "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  FED. R. CIV. P. 4(f)(1); see also

Fed. R. Civ. P. 4(h) (indicating that a foreign corporation may be served in the manner described in 4(f) except for personal delivery).

Neither party disputes that both Italy and England – the resident countries of the three Moving Defendants – are signatories to the Hague Convention.[2]  Accordingly, service abroad on a foreign corporation is governed by the terms of the Hague Convention.[3]  See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 288 (3d Cir. 1981).  That Convention specifically defines the means of service permitted by providing that each party to the Convention shall designate a Central Authority to receive requests for service coming from other contracting States.  See Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters [hereinafter Hague Convention] art. 2, *Entered into Force for the United States,* Feb. 10, 1969, 20 U.S.T. 361, 658 U.N.T.S. 163.  The Convention further states that the documents shall be forwarded to the Central Authority of the State receiving the process, which will then serve the document itself or arrange to have it served by an appropriate agency, either:  (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.  Id. arts. 3, 5; see also Mitchell v.

---

[2]  The Hague Convention was entered into force between the United States and France on October 6, 1974. The Convention is also in force in Barbados, Cyprus, Czechoslovakia, Denmark, Finland, the Federal Republic of Germany, Israel, Italy, Luxemburg, the Netherlands, Norway, Portugal, Singapore, Sweden, and the United Kingdom. Office of the Legal Adviser, United States Dept. of State, Treaties in Force 261-262 (1986).  Societe Nationale Industrielle Aerospatiale v. U.S. District Court for S. District of Iowa, 482 U.S. 522, 524 n.1 (1987).

[3]  As a ratified treaty, the Convention is the supreme law of the land, and has controlling effect. See U.S. Const. Art. VI, cl. 2.

Theriault, 516 F. Supp. 2d 450, 452-53 (M.D. Pa. 2007). In addition, Article 10(a) goes on to indicate that "[p]rovided the State of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad." Id. art. 10(a).

The parties' dispute regarding service focuses precisely on the meaning of Article 10(a) and whether its reference to "send[ing]" judicial documents permits *service* on a party by regular mail. Defendant Filatura contends that the plain language of the Hague Convention distinguishes between "service" by mail and the "sending" of subsequent judicial documents by postal means. To that end, it argues that Article 10(a) does not authorize international mail service. Plaintiff, on the other hand, asserts that Article 10(a) expressly authorizes service by mail.

The parties' disagreement highlights a well-recognized ambiguity in the law and reflects an unresolved controversy pending among the circuit courts of appeal. Two schools of thought currently prevail. The first approach – and the one advocated by Plaintiff – asserts that Article 10(a) contemplates and authorizes service of process by mail. Ackermann v. Levine, 788 F.2d 830, 839 (2d Cir. 1986). The Second Circuit, in Ackermann v. Levine, concluded that the use of the word "send" in Article 10(a), as opposed to "service" or "served" in Articles two through six "must be attributed to careless drafting." Id. (quoting 1 BRUNO A. RISTAU, INTERNATIONAL JUDICIAL ASSISTANCE (CIVIL AND COMMERCIAL) § 4-28, at 165-67 (1984)). The Ninth Circuit has concurred in this approach, reasoning that "the meaning of 'send' in Article 10(a) includes 'serve'." Brockmeyer v. May, 383 F.3d 798, 802 (9th Cir. 2004). It went on to reference "the essentially unanimous view of other member countries of the Hague Convention" that Article 10(a) allows service by mail. Id. (citing Case C-412/97, E.D. Srl. v. Italo Fenocchio, 1999

E.C.R. I-3845, [2000] C.M.L.R. 855 (Court of Justice of the European Communities) ("Article 10(a) of [the Hague Convention] allows service by post."); <u>Integral Energy & Envtl. Eng'g Ltd. v. Schenker of Canada Ltd.</u>, (2001) 295 A.R. 233, 2001 WL 454163 (Alberta Queens Bench) ("Article 10(a) of the Hague Convention provides that if the state of destination does not object, judicial documents may be served by postal channels"), <u>rev'd on other grounds</u>, (2002) 293 A.R. 327; <u>R. v. Re Recognition of an Italian Judgment</u>, [2002] I.L.Pr. 15, 2000 WL 33541696 (Thessaloniki Court of Appeal, Greece) ("It should be noted that the possibility of serving judicial documents in civil and commercial cases through postal channel . . . is envisaged in Article 10(a) of the Hague Convention.")).

The second interpretation – that espoused by Moving Defendants – asserts that "sending a copy of a summons and complaint by registered mail to a defendant in a foreign country is not a method of service of process permitted by the Hague Convention." <u>Bankston v. Toyota Motor Corp.</u>, 889 F.2d 172, 174 (8th Cir. 1989). The Eighth Circuit, in <u>Bankston</u>, reasoned that by using the word "service" in Articles two through six of the Convention and subsections (b) and (c) of Article 10 – discussing service of judicial documents through judicial officers and officials – the drafter's use of the phrase "send judicial documents" in Article 10(a) was a deliberate reference to something other than service. <u>Id.</u> at 173-74. It concluded that Article 10(a) "merely provides a method for sending subsequent documents after service of process has been obtained by means of the central authority." <u>Id.</u> The Fifth Circuit has concurred with this interpretation, holding that "because the drafters purposely elected to use forms of the word 'service' throughout the Hague Convention, while confining use of the word 'send' to article 10(a), we will not presume that the drafters intended to give the same meaning to 'send' that they intended

to give to 'service.'" <u>Nuovo Pignone, SpA v. STORMAN ASIA M/V</u>, 310 F.3d 374, 384 (5th Cir. 2002).

The Third Circuit has yet to take a position on this issue. As a result, district courts within the Third Circuit have similarly reached conflicting decisions on the appropriate interpretation. The District of New Jersey has consistently held that Article 10(a) authorizes service of process by registered mail so long as the receiving country has not filed an objection to that method of service, reasoning that the plain meaning of the statute, the rulings from foreign countries, and the interpretations by the United States government all bolster this interpretation. <u>Rogers v. Kashara</u>, No. CIV.A.06-2033, 2006 WL 6312904, at *3-4 (D.N.J. Oct. 16, 2006); <u>Eli Lilly & Co. v. Roussel Corp.</u>, 23 F. Supp. 2d 460, 473 (D.N.J. 1998); <u>Trump Taj Mahal Assoc. v. Hotel Serv., Inc.</u>, 183 F.R.D. 173, 176-79 (D.N.J. 1998). This same position was adopted by the Middle District of Pennsylvania, the District of Delaware, and the District of the Virgin Islands. <u>Mitchell v. Theriault</u>, 516 F. Supp. 2d 450, 455 (M.D. Pa. 2007); <u>Tinsley v. ING Group</u>, No. CIV.A.05-808, 2006 WL 533375, at *1 (D. Del. Mar. 3, 2006); <u>Harvey v. Sav-U-Car Rental</u>, No. CIV.A.07-115, 2008 WL 4394670, at *1 (D.V.I. Sep. 22, 2008). The Eastern District of Pennsylvania, however, has remained divided. Several cases have agreed with the Fifth and Eighth Circuits and held that Article 10(a) does not authorize service of process through mail. <u>Gallagher v. Mazda Motor of Am., Inc.</u>, 781 F. Supp. 1079, 1082 (E.D. Pa. 1992); <u>Raffa v. Nissan Motor Co.</u>, 141 F.R.D. 45, 46 (E.D. Pa. 1991). In at least one case, however, the Eastern District of Pennsylvania concluded that "service by mail is not barred under the Hague Convention [and] . . . is precluded only where the signatories to the Hague Convention have

12

objected to mail service under Article 10."[4]  McCarron v. British Telecomm., No. CIV.A.00-6123, 2001 WL 632927, at *2 (E.D. Pa. June 6, 2001).

Notwithstanding this judicial dispute, the drafters of the Hague Convention and recognized commentators on its interpretation appear to have unanimously adopted the view that Article 10(a) permits service by mail.  In 1977, a special commission of representatives from the signatory states met to discuss the operation of the Hague Convention and reported that,

> [i]t was determined that most of the States made no objection to the service of judicial documents coming from abroad directly by mail in their territory.  For those States who objected to this channel, a distinction was made between use of the postal channel as the sole method of service and service through the postal channel which was complementary to another means of effecting service.

Report on the Work of the Special Commission on the Operation of the Convention, 17 I.L.M. 319 (Mar. 1978), quoted in, Eli Lily and Co., 23 F. Supp. 2d at 472-73.  In the Practical Handbook on the Operation of the Hague Convention, the Hague Conference on Private International Law discussed the drafting and negotiating history of Article 10(a) and concluded

---

[4]  District Courts outside the Third Circuit have been similarly conflicted.  Multiple courts have found that Article 10(a) does not authorize service by certified mail, but rather refers only to the ability "send" subsequent judicial documents by mail, after service has already been made.  See, e.g., Moore v. Irving Materials Inc., No. CIV.A.05-184, 2007 WL 2081095, at *5 (W.D. Ky. 2007); Alternative Delivery Solutions, Inc. v. R.R. Donnelly & Sons Co., No. CIV.A.05-172, 2005 WL 1862631, at *2 (W.D. Tex. 2005); Cupp v. Alberto-Culver USA, Inc., 308 F. Supp. 2d 873, 880 (D. Tenn. 2004); ARCO Elec. Control Ltd. v. CORE Int'l, 794 F. Supp. 1144, 1147 (S.D. Fl. 1992); In re Mak Petroleum, Inc., 424 B.R. 912, 918-19 (Bankr. M.D. Fl. 2010).  On the other hand, multiple courts have determined that Article 10(a)'s language permits service by mail.  See, e.g., Zelasko v. Comerio, No. CIV.A.08-366, 2008 WL 2755463, at *2 (S.D. Ill. July 14, 2008); Rae Group, Inc. v. AIESEC Int'l, No. CIV.A.09-10364, 2008 WL 4642849, at *3 (E.D. Mich. Oct. 20, 2008); Koss Corp. v. Pilot Air Freight Corp., 242 F.R.D. 514, 516-17 (E.D. Wis. 2007); Sibley v. Alcan, Inc., 400 F. Supp. 2d 1051, 1054 (N.D. Oh. 2005); R. Griggs Group Ltd. v. Filanto Spa, 920 F. Supp. 1100, 1104-05 (D. Nev. 1996); G.A. Modefine, S.A. v. Burlington Coat Factory Warehouse, Corp., 164 F.R.D. 24, 25-26 (S.D.N.Y. 1995); Melia v. Les Grands Chais de France, 135 F.R.D. 28, 36 (D.R.I. 1991).

that the "implicit understanding of the delegates at the 1977 Special Commission meeting and indeed of the legal literature of the Hague Convention and its predecessor treaties" was that Article 10(a) allows service of process by mail.  Hague Convention on Private International Law, PRACTICAL HANDBOOK ON THE OPERATION OF THE HAGUE CONVENTION OF 15 NOVEMBER, 1965 ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS, Nov. 15, 1965, 20 U.S.T.S. 163, at 43-45 (2d. Ed. 1992).  Additionally, Bruno Ristau, who served as the United States representative to the Special Commission and has been identified as the leading commentator on the Hague Convention, explained that the delegates to the original Convention intended "send" to include service of process and that "Article 10(a) provides that, unless a contracting state has by its declaration expressly prohibited, service of foreign judicial documents may be effected within its territory by mail."  1 RISTAU (1993) §4-3-5(2), at 148-49.  Finally, the United States Department of State has interpreted Article 10(a) to permit international service by mail so long as a country has not specifically objected to that provision.[5]  Service of Legal Documents Abroad, http://travel.his.com/law/ judicial/ judicial_680.html#mail (last visited July 6, 2010); see also Letter from Alan J. Kreczko, U.S. Dep't of State Deputy Legal Advisor, to the Admin Office of the U.S. Courts (March 14, 1991), quoted in U.S. Dep't of State Op. Regarding the Bankston Case, 30 I.L.M. 260 (1991) ("the decision of the Court of Appeals in Bankston is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country.").

---

[5]  "Although not dispositive, courts often give great weight to treaty interpretations made by the Executive Branch."  Griggs, 920 F. Supp. at 1106 (citing RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 326(2) (1986)).

In short, although the issue is far from settled, a larger number of courts within the Third

Circuit, a majority of the courts outside the Third Circuit, the drafters of the Hague Convention,

the United States Government, and other signatory countries have all adopted the position that

Article 10(a) permits international service by mail. Swayed by this weight of authority, the

reasoning espoused by the Second and Ninth Circuits, and a plain reading of Article 10(a), this

Court concurs that service of process by mail is not prohibited by the Hague Convention.

### 3. Whether Plaintiff's Use of Registered Mail to Serve Defendants in Italy and England is Affirmatively Authorized by the Federal Rules of Civil Procedure

This conclusion, however, does not end the Court's inquiry. As the Ninth Circuit

remarked, "Article 10(a) does not itself affirmatively authorize international mail service. It

merely provides that the Convention 'shall not interfere with' the 'freedom' to use postal

channels if the 'State of destination' does not object to their use." Brockmeyer, 383 F.3d at 803-

04. Accordingly, for service by mail to be effective, there are two requirements. First, the

receiving country must not have objected to Article 10(a). In this case, both Italy and England

are signatories to the Hague Convention. Zelasko, 2008 WL 2755463, at *2; McCarron, 2001

WL 632927, at *1; see also Hague Convention, 20 U.S.T. 361 (listing signatories). Neither

country has objected to Article 10(a) of the Convention. See G.A. Modefine, 164 F.R.D. at 25

(Italy has not registered objections to Article 10); see EOI Corp. v. Medical Mktg., 172 F.R.D.

133, 142 (D.N.J. 1997) (United Kingdom did not object to Article 10(a)).

Second, "[e]ven though a contracting state may not object . . . it is still necessary that the

law of the state where the action is pending authorize the particular method of service

employed." Brockmeyer, 383 F.3d at 804 (citing 1 RISTAU (2000) § 4-3-5, at 205). Quoting the

Rapporteur of the Convention's explanation of Article 10(a), the Ninth Circuit Court of Appeals

emphasized, "[i]t should be stressed that in permitting the utilization of postal channels, . . . the

draft convention did not intend to pass on the validity of this mode of transmission under the law

of the forum state:  in order for the postal channel to be utilized, it is necessary that it be

authorized by the law of the forum state."  Id. (quoting 1 RISTAU (2000) § 4-3-5, at 205).  It went

on to reason that:

> we must look outside the Hague Convention for affirmative authorization of the
> international mail service. . . .  Any affirmative authorization of service by
> international mail, and any requirements as to how that service is to be
> accomplished, must come from the law of the forum in which the suit is filed.

Id. at 804; see also Ballard v. Tyco Int'l, Ltd., No. CIV.A.04-1336, 2005 WL 1863492, at *4

(D.N.H. Aug. 4, 2005) (notwithstanding Article 10(a)'s allowance of service by mail,

"affirmative authorization of service of process by mail, and any requirements as to how that

service must be accomplished, must come from the law of the forum in which the suit is filed.").

"In other words, here, the affirmative authorization must come from the law of the United

States."  Mitchell, 516 F. Supp. 2d at 455.

In the United States, Federal Rule of Civil Procedure 4(f) governs service of process upon

individuals in a foreign country.[6]  FED. R. CIV. P. 4(f).  The Rule provides for service upon an

individual in a foreign country, as follows:

> Unless federal law provides otherwise, an individual – other than a minor, an
> incompetent person, or a person whose waiver has been filed – may be served at a

---

[6]  Plaintiff cites to the Pennsylvania long-arm statute, 42 Pa.C.S. § 5323(a), as authorizing service
by mail.  (Pl.'s Resp. Mot. Dismiss 5, n.3.)  As noted above, however, the affirmative
authorization must come from "the law of the forum in which the suit is filed."  Brockmeyer, 383
F.3d at 804.  As this suit was filed in the United States District Court for the Eastern District of
Pennsylvania, the Federal Rules of Civil Procedure apply.

place not within any judicial district of the United States:

(1)     by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2)     if there is no internationally agreed means, or if an international agreement allows but does not specify other mans, by a method that is reasonably calculated to give notice:

    (A)     as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

    (B)     as the foreign authority directs in response to a letter rogatory or letter of request; or

    (C)     unless prohibited by the foreign country's law, by:

        (I)     delivering a copy of the summons and of the complaint to the individual personally; or

        (ii)     using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3)     by other means no prohibited by international agreement, as the court orders.

Id. Rule 4(h) goes on to note that a corporation, partnership, or association may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(I)." FED. R. CIV. P. 4(h)(2). Having already found that registered mail is not affirmatively authorized by the Hague Convention for purposes of Rule 4(f)(1), this Court now looks to the methods of service enumerated in Rule 4(f)(2).

      The United States District Court for the Middle District of Pennsylvania, in the case of Mitchell v. Theriault, supra, engaged in a thorough analysis of the federal law governing

international service of process by mail and identified three provisions of Rule 4(f) that could potentially authorize serving an international defendant by use of registered mail: Rule 4(f)(2)(C)(ii); Rule 4(f)(3); and Rule 4(f)(2)(A). 516 F. Supp. 2d at 456. Following the lead of our sister court, this Court individually considers each of these provisions.

### a. Rule 4(f)(2)(C)(ii)

"The only explicit, affirmative authorization for service by international mail in U.S. law is found in Federal Rule of Civil Procedure 4(f)(2)(C)(ii)." Id. This section states, in part, that service is permitted by "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." FED. R. CIV. P. 4(f)(2)(C)(ii).[7]

This section, however, is clearly inapplicable in the present case. Undoubtedly, Plaintiff could have requested that the Clerk of this Court use the mail to send a copy of the Summons and Complaint to the three Moving Defendants, thereby effectuating proper service. That, however, did not occur. Instead, Plaintiff made a single attempt to serve Defendant Filatura by mailing the Summons and copy of the Complaint to Filatura's offices in Bienna, Italy. Although James Casale, Plaintiff's counsel, avers that he has a signed receipt for the service of the Complaint and Summons on Defendant Filatura, he admits that he himself caused the mailing and did not go through the Clerk of this Court. (Casale Decl. for Filatura ¶¶ 2-3.) Similarly, as to both Designer Yarns and Debbie Bliss, Attorney Casale also used FedEx to personally mail the Summons and Complaint to Designer Yarns in Keighley, England and to Debbie Bliss in Walt Hamstow,

---

[7] Notably, the language of these Rules has changed between the issuance of the Mitchell decision in October 2007, and the service of the Summons and Complaint in this case in September 2008. The substance of the Rules, however, is identical for purposes of the issues before the Court.

London, England. (Casale Decl. for Designer Yarns ¶ 2; Casale Decl. for Debbie Bliss ¶¶ 2-3.) Since, by its plain terms, Rule 4(f)(2)(C)(ii) requires that the Clerk of Court perform the mailing, this section does not apply.

### b. Rule 4(f)(3)

Alternatively, Rule 4(f)(3) allows service "by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(3). This is "a catch-all provision that enables the court on ex parte motion to devise a method of service responsive to the unique facts of the case." FED. R. CIV. P. 4(f)(3) advisory committee's notes. To use this provision, a plaintiff "must obtain prior court approval for the alternate method of serving process." Brockmeyer, 383 F.3d at 806. Plaintiff, in this case, however, does not claim that it has obtained court approval for its chosen type of service. As such, this provision is similarly inapplicable.

### c. Rule 4(f)(2)(A)

The final potential source of authority for international service by mail is Federal Rule of Civil Procedure 4(f)(2)(A), which allows service "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." FED. R. CIV. P. 4(f)(2)(A). The Ninth Circuit has read this provision as not authorizing service by international mail due, in part, to "the common understanding of Rule 4(f)(2)(A) is that it is limited to personal service," and because of the "the explicit mention of international registered mail in Rule 4(f)(2)(C)(ii) . . . and the absence of any such mention in Rule 4(f)(2)(A)." Brockmeyer, 383 F. 3d at 806. Nonetheless, both the Ninth Circuit in Brockmeyer and the Eleventh Circuit in the case of Prewitt Enters. v. OPEC, 353 F.3d 916, 925 (11th Cir. 2003) resolved the issue by looking to the law of the receiving country. See Mitchell, 516 F. Supp. 2d at 456 (discussing

Brockmeyer and Hewitt).  Therefore, this Court must examine the laws of both Italy and

England.

### i.     <u>Italy</u>

The United States Department of State lists the following as the conditions of service of

process in Italy:

> Italy is a party to the Hague Convention on the Service Abroad of Judicial and
> Extra Judicial Documents in Civil and Commercial Matters. Persons requesting
> service of process of U.S. documents in Italy should transmit the USM-94 form or
> the new interactive Service Convention form available from the Hague
> Conference web page.  The request form should be completed in duplicate and
> submitted with two sets of the documents, including translations, to be served
> directly to the Italian Central Authority . . . .  The person executing the request
> form should be either an attorney or clerk of court.  The applicant should include
> attorney at law or clerk of court title on the identity and address of applicant and
> signature/stamp fields.  The Italian Central Authority has informed the Hague
> Conference for Private International Law that all documents forwarded to them
> for service under the provisions of the Convention must be in duplicate and must
> be written in or translated into Italian. . . . ***The Italian Central Authority has***
> ***informed the Hague Conference for Private International Law that only***
> ***judicial officers working for the Italian courts may serve documents in Italy***
> ***(Article 10 (b and c)). Private attorneys or individuals are not authorized to***
> ***effect service in Italy. International service of process by registered mail is***
> ***allowed in Italy, but this method will only record delivery to an address and not***
> ***to a person***. . . .

Italy Judicial Assistance, http://travel.his.com/law/judicial/judicial_653.html#service (Last

visited July 7, 2010) (emphasis added).

Reading this language in conjunction with Rule 4(f), Plaintiff's service by mail on

Defendant Filatura by mail was improper.  Proper service under Rule 4(f)(2)(A) looks to service

"as prescribed by the foreign country's law ***for service in that country in an action in its courts***

***of general jurisdiction***."  FED. R. CIV. P. 4(f)(2)(A) (emphasis added).  Under Italian law, service

within Italy for an action in an Italian court is not permitted when performed by a private attorney

using a private mail service, but rather must be done by a proper judicial officer.[8]  Since Attorney

Casale effected service on his own through a private international courier,[9] Rule 4(f)(2)(A) does

not validate Plaintiff's service of process on Defendant Filatura.[10]

### ii.    England

According to the United States Department of State,

---

[8]  The cases cited by Plaintiff are inapposite.  In <u>Griggs</u>, <u>supra</u>, the court declined to dismiss an action against an Italian corporation for insufficiency of service only on the grounds that Article 10(a) of the Hague Convention provides for such mail service.  920 F. Supp. at 1107-08.  As noted above, however, the weight of authority holds only that Article 10(a) does not foreclose international service by mail, not that it expressly provides for such service.  <u>See</u> <u>Brockmeyer</u>, 383 F.3d at 803-04. The express language of the Article states "the present Convention *shall not interfere* with the freedom to send judicial documents, by postal channels, directly to persons abroad."  Hague Convention art. 10(a).  In accord with this language, the Third Circuit has held that the Hague Convention "does not provide independent authorization for service of process in a foreign country.  The treaty merely provides a mechanism by which a plaintiff authorized to serve process under the laws of its country can effect service that will give appropriate notice to the party being served and will not be objectionable to the country in which that party is served." <u>DeJames v. Magnificence Carriers, Inc.</u>, 654 F.2d 280, 288 (3d Cir. 1981).

Despite this jurisprudence, the <u>Griggs</u> court only acknowledged that service by registered mail is not objectionable to Italy, while failing to address the crucial second question of whether, under the Federal Rules of Civil Procedure, a private attorney is affirmatively permitted to use international registered mail to serve an Italian defendant.  <u>Griggs</u>, 920 F. Supp. at 1107.  The same holds true for Plaintiff's other cited cases.  <u>Eli Lilly</u>, 23 F. Supp. 2d at 471-73; <u>Robins v. Max Mara U.S.A., Inc.</u>, 923 F. Supp. 460, 469 (S.D.N.Y. 1996); <u>G.A. Modefine</u>, 164 F.R.D. at 25-26.  Given this oversight, these cases have no bearing on the present matter.

[9]  Moreover, at least one court has held that, assuming Article 10(a) permits service to an Italian citizen by direct mail, "such service must include translated documents."  <u>Lobo v. Celebrity Cruises, Inc.</u>, 667 F. Supp. 2d 1324 (S.D. Fl.) (service by employee of foreign corporation by registered mail on Italian union was improper under Hague Convention where employee did not provide translated documents.), <u>appeal dismissed</u>, 2009 WL 6353884 (11th Cir. 2009).  Attorney Casale does not aver that the Summons and Complaint served on Defendant Filatura were translated into Italian.

[10]  Plaintiff argues that Filatura does not dispute that it received notice of the Summons and Complaint and that one of its employees signed for the delivery.  As noted above, however, the Third Circuit has expressly held that "notice, though necessary, is not sufficient to effect service."  <u>Grand Entm't</u>, 988 F.2d at 492.

> To obtain personal service in the U.K. under the Convention, the documents to be served should be appended to the Convention request form (See form following the Convention text). A preprinted request form is available from the U.S. Marshals Service. Ask for form No. USM 94. The British Central Authorities require that the court in the United States be the applicant for service under the Convention. Therefore, the court must be shown as the applicant and the requesting authority on the USM 94 and the clerk of court must sign the form. There is no fee required. Send form and documents (in duplicate) to the appropriate central authority.
>
> . . .
>
> American Consular Officers are prohibited from serving judicial documents in civil cases. (22 C.F.R 92.85)  However, the U.K. allows service of process by agent through solicitors and process servers.
>
> . . .
>
> The U.K. has not declared that it objects to Article 10(a) of the Hague Service Convention. Therefore, service by international registered mail is permitted.

Judicial Assistance United Kingdom, http://travel.his.com/law/judicial/judicial_671.html (last visited July 7, 2010).  Although the State Department's description indicates England's lack of objection to Article 10(a), it says nothing as to whether service of process by mail is expressly authorized for an action pending in the English court system, as is necessary for the operation of Rule 4(f)(2)(A).

In Brockmeyer, the Ninth Circuit specifically considered the issue of whether the requisite affirmative authorization for service of process by mail on an English defendant could be found in Rule 4(f)(2)(A).  It noted that the purpose of this rule was to provide an alternative method of service "that is likely to create least objection in the place of service."  Brockmeyer, 383 F.3d at 808 (quotations omitted).  It went on to discuss an exchange of correspondence between the British Embassy and the United States Department of State, wherein the British government indicated that it understood Rule 4(f) "not to permit service by ordinary, international first class mail against a defendant in England."  Id.  The court concluded that

"[f]rom the exchange, it is clear that an interpretation of Rule 4(f)(2)(A) permitting service of process on an English defendant by ordinary first class mail sent from the United States is not 'likely to create least objection in the place of service.' Rather, this exchange shows us that such an interpretation is likely to create a substantial objection." Id.

In case analogous to the one at bar, American plaintiffs sued several defendants in connection with a stock transaction, including one defendant who was a citizen of the United Kingdom. Ballard v. Tyco Intern., Ltd., No. CIV.A.04-1336, 2005 WL 1863492, at *1 (D.N.H. Aug. 4, 2005). Plaintiffs attempted to serve that defendant, among other ways, by mailing a copy of the summons and complaint to his place of business. Id. The court adopted the approach of the Second and Ninth Circuits as to Article 10(a) and found that "the reference in Article 10(a) of the Hague Convention to a participating state's 'freedom to send judicial documents' by mail includes documents such as summonses that are used to initiate a lawsuit." Id. at *4. The court went on to recognize the proposition that, "[i]t does not necessarily follow, however, that [the defendant's] challenge to plaintiffs' attempt to serve him by mail fails simply because Article 10(a) does not bar such service. . . . [A]ffirmative authorization of service of process by mail, and any requirements as to how that service must be accomplished, must come from the law of the forum in which the suit is filed." Id. It remarked that Rule 4(f)(2)(C)(ii) authorizes service abroad by mail for which a signed receipt is required, when such mail is addressed and mailed by the clerk of the federal district court in which the suit is filed. Id. Because there was no evidence that plaintiffs complied with these requirements, the court found that plaintiffs' attempt to serve the British defendant by mail was ineffective. Id. Further, it found that Plaintiffs had advanced no argument that they effected service by means used in the United Kingdom for service in an

action in its courts of general jurisdiction under Federal Rule of Civil Procedure 4(f)(2)(A).[11]  Id.

Plaintiff here faces the identical problem.  Undoubtedly, England has not objected to Article 10(a) and thus permits international service of process by mail.  Plaintiff, however, has failed to show that it has complied with Federal Rule of Civil Procedure 4(f)(2)(C)(ii) requiring that the such mailing be done by the Clerk of this Court.  Similarly, as the Ninth Circuit has previously reasoned – and Plaintiff has not otherwise demonstrated – England does not permit service by mail on an English defendant in an action filed its own courts.

### d.    Conclusion as to Propriety of Plaintiff's Service of Process on the Moving Defendants

In short, assuming that service of process by mail to defendants in Italy and England is permissible under the Hague Convention, Plaintiff has failed to demonstrate that his method of service is affirmatively authorized under the Federal Rules of Civil Procedure.  Plaintiff could have, under the express provisions of the Hague Convention, forwarded the documents to the Central Authority designated by country for service on the Defendants.  Alternatively, Plaintiff could have, under Rule 4(f)(2)(c)(ii), served the Summons and Complaint by having the Clerk of

_____

[11]  The Court acknowledges Plaintiff's citation to multiple cases that have found that a simple mailing of a summons and complaint by registered mail to a defendant in England constitutes proper service.  (Pl.'s Resp. Def. Designer Yarns Mot. Dismiss 6 (citing McCarron, 2001 WL 632927, at *2; Caytas v. Maruszak, No. CIV.A.06-985, 2009 WL 666768, at *3 (S.D.N.Y. Mar. 6, 2009); Wong v. Partygaming Ltd., No. CIV.A.06-2376, 2008 WL 1995369, at *3 (N.D. Oh. Mar. 6, 2008); Thomas & Thomas Rodmakers, Inc. v. Sharpe's, Inc., No. CIV.A.06-421, 2007 WL 1057382, at *4 (S.D. Oh. Apr. 5, 2007); and In re Harnischfeger Indus., Inc., 288 B.R. 79, 86 (Bankr. D. Del. 2003).)  As with the cases cited in support of service by mail on an Italian defendant, these cases are inapposite in that they simply assume that Article 10(a) expressly authorizes service by mail, without finding an affirmative authorization for such service under United States law.

this Court mail them to the Moving Defendants. Finally, Plaintiff could have sought approval from this Court for services by other means not prohibited by international agreement. Having opted to use none of these methods, however, Plaintiff has not properly served any of the Moving Defendants.

4.     **Whether the Court Should Dismiss the Complaint Against Moving Defendants or Extend Plaintiff's Time to Serve**

The sole question remaining, then, is what consequences Plaintiff's failures have on this action. Federal Rule of Civil Procedure 4(m) requires that a defendant be served within 120 days after the complaint is filed. FED. R. CIV. P. 4(m). Notably, however, this section does not apply to service in a foreign country under Rule 4(f) or 4(j)(1). Id. Plaintiff urges that the claims against Moving Defendants should not be dismissed and that it should be permitted to re-serve the Summons and Complaint, particularly since the statutes of limitations on Plaintiff's claims against these Defendants have not yet expired. Moving Defendants respond that, even though the 120-day time limit does not apply, the time to effectuate service is not unlimited and courts must consider the reasonableness of Plaintiff's efforts together with the prejudice to Defendants resulting from any delay.

It is relatively well-settled that "although the Rule 4(m)'s 120-day time limit does not apply to service on a foreign corporation, that does not mean that the time to effectuate service is unlimited." U.S. ex rel. Thomas v. Siemens AG, No. CIV.A.09-4414, 2010 WL 1688582, at *14 (E.D. Pa. Apr. 23, 2010). "Instead, courts have determined timeliness and sufficiency of service by employing a 'flexible due diligence' standard, which considers the reasonableness of the plaintiff's effort and the prejudice to the defendant resulting from any delay." Id. (citing cases).

Under this standard, "a court may still dismiss a case for failure to serve a foreign defendant within a reasonable time." In re Bulk (Extruded) Graphite Prods. Antitrust Litig., No. CIV.A., 02-6030, 2006 WL 1084093, at *3 (D.N.J. Apr. 24, 2006).

Nonetheless, "[d]ismissal of a complaint is inappropriate . . . when there exists a reasonable prospect that service may yet be obtained, and 'in such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service.'" Moberg v. 33T LLC, 666 F. Supp. 2d 415, 425-26 (D. Del. 2009) (quoting Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992)). This Court retains great discretion in determining whether to extend time for proper service, even in the absence of a showing of good cause. Petrucelli v. Bohringer & Ratzinger, GmbH, 46 F.3d 1298, 1305 (3d Cir. 1995). In the case of a foreign defendant where the 120-day time limit does not apply, the Court has the authority to impose a reasonable time limit for accomplishing service of process. Mitchell, 516 F. Supp. 2d at 458.

This case was filed on September 2, 2008 and, as such, has been pending for close to two years. In that time, the case has progressed significantly against the KFI Defendants. Moving Defendants clearly had a basis to believe that they had not been properly served and, thus, had no reason to participate. The Court, however, remains cognizant of the vagaries inherent in the interpretation of the Hague Convention and proper methods of international service of process. Plaintiff undoubtedly had good cause to believe that the service on the Moving Defendants was proper and effective, particularly in light of the fact that there is significant jurisprudence condoning that method of service on defendants in England and Italy. To grant the Motions to Dismiss on the grounds of invalid service of process would ignore this confusing area of the law and unduly penalize Plaintiff.

In light of the circumstances in this case, the Court finds that Plaintiff is entitled to another opportunity to serve the Moving Defendants. To that end, a time limit is appropriate to ensure that the case advances in a reasonably timely manner. Accordingly, the Court will deny the Motions to Dismiss without prejudice, quash the service upon the Moving Defendants, and give Plaintiff sixty (60) days from the date of this Order to accomplish proper service of process upon the Moving Defendants.

## III.     MOTIONS TO SET ASIDE DEFAULTS

Having found that service of process on Defendants Designer Yarns and Debbie Bliss was improper, the Court must now address the validity of the Defaults entered against these two Defendants. Defendants argue that the Defaults must be set aside because Plaintiff will not be prejudiced, Defendants have meritorious defenses to Plaintiff's claims, and Defendants' failure to plead is not due to culpable conduct in light of the lack of proper service. Plaintiff, on the other hand, contends that Defendants rely upon conclusory statements and general denials while presenting no facts to warrant setting aside the Defaults.

Federal Rule of Civil Procedure 55(c) provides for relief from the entry of default, as follows: "[t]he court may set aside the entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." FED. R. CIV. P. 55(c). The standard for setting aside a default is less stringent than for setting aside a default judgment. Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir. 1982) ("Less substantial grounds may be adequate for setting aside a default. . . ."). As a general matter, the Third Circuit disfavors defaults. Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir.1988).

Where a defendant has not been properly served with process, the Court's discretion under Rule 55 is significantly cabined due to its lack of personal jurisdiction over that defendant. Lampe v. Xouth, Inc., 952 F.2d 697, 700-01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case."); D'Onofrio v. Il Mattino, 430 F. Supp. 2d 431, 438 (E.D. Pa. 2006); O'Donnell v. Shalayev, No. CIV.A.01-4721, 2004 WL 2958698, at *7 (D.N.J. Dec. 22, 2004). "A default judgment rendered by a court which lacked personal jurisdiction over the defendant is void." O'Donnell, 2004 WL 2958698, at *7 (citing Pennoyer v. Neff, 95 U.S. 714, 725-727 (1877)); see also Grand Entm't, 988 F.2d at 493 ("Because [plaintiff] failed to serve the Spanish defendants in compliance with either federal, Pennsylvania or Spanish law, the district court lacked jurisdiction to enter any judgment against them."). Thus, where there has been improper service of process on a defendant, any default entered against that defendant must be set aside. See Grand Entm't, 988 F.2d at 493; see also Gold Kist, Inc. v. Laurinberg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1995) ("A default judgment entered when there has been no proper service of the complaint is, *a fortiori,* void, and should be set aside."); Petrucelli, 46 F.3d at 1304 (holding that it would have been error as a matter of law if default judgment was entered against defendant who was not served with summons and complaint within 120 days of complaint's filing); D'Onofrio, 430 F. Supp. 2d at 438 ("Without proper service of process, any default judgment entered against a party is void for lack of personal jurisdiction.").

In the present case, the Court has found that Plaintiff's service of process on Defendants Designer Yarns and Debbie Bliss was improper. Given that these Defendants were never

properly served, the Court lacked jurisdiction to enter any default against them.[12]  Accordingly,

the Court sets aside the Defaults entered against Defendants Designer Yarns and Debbie Bliss.

An appropriate Order follows.

---

[12]  The parties acknowledge that, in general, a district court ruling on a motion to set aside a default under F.R.C.P. 55(c) must consider three factors:  (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct.  <u>Gold Kist</u>, 756 F.2d at 19 (citing cases).  In this case, however, it is unnecessary for the Court to analyze the factors because they apply only if the district court originally had authority to enter the default.  <u>Id.</u>  If the default was improperly entered, such as where service of process had never been properly effected against the defaulting defendant, the Court must, as a matter of law, set it aside.  <u>Id.</u>