IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KNITTING FEVER, INC., | : | |
| DESIGNER YARNS, LTD., | : | |
| FILATURA PETTINATA V.V.G. DI | : | |
| STEFANO VACCARI & C., SION | : | NO. 08-4221 |
| ELALOUF, DIANE ELOUF, JEFFREY J. | : | |
| DENECKE, JR., JAY OPPERMAN, and | : | |
| DEBBIE BLISS, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EISAKU NORO & CO., LTD., | : | |
| KNITTING FEVER, INC., | : | |
| SION ELALOUF, DIANE ELALOUF, | : | NO. 08-4775 |
| and JAY OPPERMAN, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                                                September 27, 2010

Currently pending before the Court is Plaintiff The Knit With's Motion for Summary Judgment as to Defendant Knitting Fever, Inc.'s Counterclaim. For the reasons which follow, the Motion is granted in part and denied in part.

I.      **FACTUAL AND PROCEDURAL HISTORY**

The factual background of this case is one familiar to both the parties and the Court, and has been reiterated in several of this Court's prior opinions.[1]  This matter arises between Plaintiff, The Knit With ("TKW"), a small, family-owned and operated business retailing specialty yarns and accessories to consumers, and Defendant Knitting Fever, Inc. ("KFI"), a New York corporation that manufactures and distributes specialty yarns.  At the heart of the dispute is Plaintiff's claim that KFI sold designer knitting yarns to TKW, representing that the yarns contained a percentage of cashmere, which they allegedly did not.

Plaintiff initiated litigation on September 2, 2008, against KFI, its officers/directors, and several foreign yarn manufacturers, alleging that, as a consequence of the false labeling of three of the six Cashmerino yarns at issue, its business and commercial interests were harmed.  (Compl., The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221 (E.D. Pa. Sep. 2, 2008) ("The Knit With I").)  The Complaint set forth several causes of action, including:  (1) breach of the express warranty of merchantability; (2) breach of the implied warranty of merchantability; (3) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) injury to business and property pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962; (5) conspiracy to cause injury to business and property pursuant to RICO; (6) perfidious trade practices (deceit) under the common law of unfair competition; and (7) piercing the corporate veil.  (Id. ¶¶ 82-150.)  Defendants moved, on September 24, 2008, to dismiss the third, fourth, and fifth counts.

On October 6, 2008, prior to the resolution of this motion to dismiss, Plaintiff initiated a second litigation against KFI, also including as Defendants the Japanese manufacturers of the

---

[1]  The facts were fully summarized in two December 2008 decisions and, in lieu of repeating them here, the Court incorporates them by reference.  See The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008); The Knit With v. Eisaku Noro, No. CIV.A.08-4775, 2008 WL 5273582, at *1-3 (E.D. Pa. Dec. 18, 2008).

remaining three Cashmerino yarns at issue. (Compl., The Knit With v. Eisaku Noro & Co., Ltd., No. CIV.A.08-4775 (E.D. Pa. Oct. 6, 2008) ("The Knit With II").) The Complaint in that case set forth the following causes of action: (1) breach of express warranty of merchantability of goods for resale to consumers; (2) breach of implied warranty of merchantability of goods for resale to consumers; (3) explicitly false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) perfidious trade practices and common law unfair competition; (5) civil conspiracy; and (6) piercing the corporate veil. Defendants filed another motion to dismiss. (Id. ¶¶ 35-82.)

On December 18, 2008, this Court, in The Knit With I, granted the motion to dismiss the Lanham Act claim on standing grounds, but declined to dismiss the RICO claims. The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008). The following day, the Court also dismissed the Lanham Act claim in The Knit With II. The Knit With v. Eisaku Noro & Co., Ltd., No. CIV.A.08-4775, 2008 WL 5273582 (E.D. Pa. Dec. 19, 2008). By way of Order dated December 23, 2008, both actions were consolidated under the first civil action number.

Following the submission of an Answer on behalf of KFI and its principals (the "KFI Defendants") and Counterclaim on behalf of KFI, multiple dispositive motions ensued. On April 8, 2009, the Court granted Plaintiff's Motion to Strike as to Defendants' fifth affirmative defense of assumption of risk, but declined to strike any other affirmative defenses or dismiss any of Defendant KFI's Counterclaims. Thereafter, on October 20, 2009, the Court granted the KFI Defendants' Motion for Judgment on the Pleadings as to Plaintiff's claims of perfidious dealing and civil conspiracy. Finally, on September 23, 2010, the Court denied the KFI Defendants' Motion for Summary Judgment based on a real party in interest objection under Federal Rule of Civil Procedure 17.

Presently at issue before the Court is Plaintiff TKW's June 17, 2010 Motion for Summary

Judgment on KFI's Counterclaims. Defendant KFI responded to this Motion on July 13, 2010 and Plaintiff filed a Reply Brief on July 27, 2010.

**II.    STANDARD OF REVIEW ON A MOTION FOR SUMMARY JUDGMENT**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden

4

by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the nonmovant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

### III. DISCUSSION

#### A. Facts Relevant to the Pending Motion

The core of Defendants' Counterclaim focuses on a September 4, 2008 press release issued in connection with the commencement of the present action. Specifically, James Casale – who is both Plaintiff's counsel and a co-owner of TKW – prepared a press release entitled "Knitting Fever, Inc. Sued for False Advertising of Cashmere Yarns" (the "press release"). (Defs.' Opp'n Mot. Summ. J., Ex. 2.) This press release summarized TKW's Complaint and included multiple quoted statements taken from an implied interview with James Casale. On September 4, 2008, Mr. Casale, acting under the guise of a public relations firm called "Communications Specialists," sent both the press release and a copy of the Complaint to a group of at least thirteen individuals. (Defs.' Opp'n Mot. Summ. J., Ex. 1, Decl. of Sion Elalouf ¶¶ 4-5 & Ex. A, July 12, 2010 ("Elalouf Decl.").)

One recipient of the press release and Complaint wrote about it extensively on her internet

5

blog entitled www.girlfromauntie.com. (Def.'s Opp. Mot. Summ. J., Ex. 3, Decl. of Joshua Slavitt ¶¶ 3-4 & Ex. A, July 12, 2010 ("Slavitt Decl.").) In the blog, the author remarked that she "received an e-mail from a PR agency [called "Communications Specialists"] with an interesting subject line." Id. Ex. A. Following the blogger's long and detailed summary of both the press release and the attached Complaint, several readers submitted on-line responses that made negative comments about KFI.

In light of these events, Defendant KFI brought the present Counterclaim against Plaintiff, alleging that the press release gave rise to claims of defamation (Count I), commercial disparagement (Count II), and tortious interference with existing (Count III) and prospective (Count IV) contractual relations. The Court now turns to the merits of these claims.

**B.      Legal Analysis**

Via the present motion, Plaintiff seeks dismissal of all of Defendant KFI's Counterclaims under the guise of three arguments. First, it asserts that the claims of defamation and tortious interference cannot overcome the conditional privilege that attaches to the challenged communication.[2] Second, it avers that Defendant's defamation claim must fail because the sole statement at issue is nothing more than nonactionable opinion. Finally, Plaintiff contends that the claim of commercial disparagement/trade libel should be dismissed because KFI has failed to produce admissible evidence in support of the essential elements of this claim. The Court addresses each argument individually.

**1.      Whether a Conditional Privilege Attaches to the Press Release**

Plaintiff TKW first asserts that the September 2008 news release was conditionally

---

[2] Plaintiff also argues that to the extent Defendant brings suit on statements made prior to January of 2008, its claim is barred by the one-year statute of limitations codified at 42 PA. CONS. STAT. § 5523. Defendant's Response brief, however, does not identify any statement other than the press release of September 4, 2008.

privileged, thereby requiring dismissal of KFI's claims of defamation and tortious interference with prospective and existing business relations. Upon consideration of the pertinent jurisprudence, the Court must disagree.

Under Pennsylvania law, a *prima facie* case of defamation requires a showing of seven elements: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 PA. CONS. STAT. § 8353; see also Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 431-32 (E.D. Pa. 2006). As to a claim for tortious interference with contracts, Pennsylvania law mandates proof of the following: (1) existence of a contractual relation between the claimant and a third party; (2) purposeful action on the part of the defendant specifically intended to harm the existing relation; (3) the absence of a privilege or justification for doing so; and (4) actual legal damage as a result of defendant's conduct. Devon Robotics v. Deviedma, No. CIV.A.09-3552, 2009 WL 4362822, at *7 (E.D. Pa. Nov. 30, 2009) (citing to Third Circuit and Pennsylvania cases). Finally, a claim of tortious interference with prospective contractual relations requires, in addition to the above elements, a showing of a reasonable likelihood that a contemplated contract would have materialized absent the defendant's interference. Id. at *7 (citing Glenn v. Point Park Coll., 272 A.2d 895, 898-99 (Pa. 1971)).

Plaintiff's Motion for Summary Judgment now focuses on the common element of privilege and asserts that its actions are protected by Pennsylvania's "fair report" privilege. "The [fair report] privilege is premised 'upon the theory that it is in the public interest that information be made available as to what takes place in public affairs.'" Hudak v. Times Pub. Co., Inc., 534 F. Supp. 2d

7

546, 559 (W.D. Pa. 2008) (quoting Sciandra v. Lynett, 187 A.2d 586, 588 (Pa. 1963)). "It holds that a news source has a qualified privilege to make a fair and accurate report of official governmental reports or proceedings if the publication is not made solely for the purpose of causing harm to the subject of the report." Id. "So long as the account presents a fair and accurate summary of the proceedings, the law abandons the assumption that the reporter adopts the defamatory remarks as his own." Medico v. Time, Inc., 643 F.2d 134, 137-38 (3d Cir. 1981) (footnotes omitted). Nonetheless, this privilege is qualified or conditional, not absolute. The immunity "is forfeited if the publisher steps out of the scope of the privilege or abuses the 'occasion.' This can be done by exaggerated additions, or embellishments to the account. . . . [or] if the defamatory material is published solely for the purpose of causing harm to the person defamed." Sciandra, 187 A.2d at 589. In other words, "[t]he defendant abuses the fair report privilege if the article carries a materially greater 'sting' than a precisely accurate retelling of the public proceeding itself." Weber v. Lancaster Newspapers, Inc., 878 A.2d 63, 72 (Pa. Super. Ct. 2005).

Many Pennsylvania courts have turned to the Second Restatement's interpretation of this privilege for further guidance on its application.[3] Comment c to section 611 of the Restatement (Second) of Torts notes that although the privilege is "commonly exercised by newspapers,

---

[3] Section 611 of the Restatement (Second) of Torts reiterates the common law rule that:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

RESTATEMENT (SECOND) TORTS § 611. "Although the Pennsylvania Supreme Court has never officially adopted § 611 of the Second Restatement, it long ago adopted the earlier version set forth in the First Restatement, see Sciandra, 187 A.2d at 588-89, and many Pennsylvania courts have assumed that the Supreme Court would adopt, in some fashion, the more recent version of § 611." Hudak, 534 F. Supp. 2d at 568 (citing Pennsylvania cases).

broadcasting stations and others who are in the business of reporting news to the public[,] [i]t is not . . . limited to these publishers. It extends to any person who makes an oral, written or printed report to pass on the information that is available to the general public."[4] RESTATEMENT (SECOND) TORTS § 611, cmt. c. Notably, however, this same comment places a caveat on the extension of the privilege, as follows:

> A person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated. This is true whether the original publication was privileged or not. Nor may he confer the privilege upon a third person, even a member of the communications media, by making the original statement under a collusive arrangement with that person for the purpose of conferring the privilege upon him.

Id.

In the present matter, Plaintiff's actions fall squarely within this caveat. Had TKW simply filed the Complaint, which was then reported on by outside members of the press, any defamatory statements contained in that Complaint would not be actionable. See Binder v. Triangle Publ'n, Inc., 275 A.2d 53, 56 (Pa. 1971) ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."). Moreover, were TKW merely the author and disseminator of a press release, which did nothing more than accurately summarize the contents of a third-party Complaint filed in federal court, the fair report privilege would apply. See Weber, 878 A.2d at 72 (holding that the fair report privilege extends to

---

[4] Defendant cites to the case of Fanelle v. Lojack Corp., No. CIV.A.99-4292, 2000 WL 1801270 (E.D. Pa. Dec. 7, 2000), wherein the court held that, "[t]he fair report privilege is 'a privilege for *the press* to report accounts of official proceedings or reports even when these contain defamatory statements.'" Id. at *6 (quoting Medico, 643 F.2d at 138). The court, in that case, declined to extend the privilege to a non-media defendant. Id. However, given the absence of any Pennsylvania Supreme Court case expressly limiting the privilege to media defendants, and in light of the adoption of the Restatement (Second) of Torts § 611 by many Pennsylvania courts, this Court proceeds under the principle, set forth in comment c of the Second Restatement, that the fair report privilege may be extended to private defendants.

court pleadings, such as a complaint); First Lehigh Bank v. Cowen, 700 A.2d 498, 502 (Pa. Super. Ct. 1997) ("[U]nder Pennsylvania law, the fair comment privilege does apply to reports of pleadings even in the absence of judicial actions upon the pleadings."). TKW, however, stepped far out of the scope of the privilege by not only authoring the Complaint, but then writing a press release about that Complaint, which included extensive – and arguably defamatory – commentary by TKW's co-owner about Defendant KFI, and ultimately disseminating that press release to outside individuals. Under these circumstances, TKW was not making a report "to pass on the information that is available to the general public," RESTATEMENT (SECOND) TORTS § 611, cmt. c, but rather to spread TKW's own allegations about KFI. To now extend the fair report privilege to such a scenario would allow individuals to make defamatory statements in judicial filings, write and disseminate press reports about those filings, provide additional defamatory commentary in such reports, and then avoid all liability for those statements under the claim of privilege. Given the illogic of such a position, the Court declines to find Plaintiff's statements protected by the fair report privilege.[5]

### 2. Whether the Press Release is a Non-actionable Statement of Opinion

In an alternative, albeit cursory, argument, Plaintiff asserts that the statements contained in the press release are nothing more than non-actionable expressions of opinion. Under Pennsylvania law, only statements of fact, rather than mere expressions of opinion, are actionable as defamation. Mzamane v. Winfrey, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010) (citations omitted). For an opinion to be deemed capable of defamatory meaning, it must "reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001) (quotation omitted); see also RESTATEMENT (SECOND) OF TORTS § 566 ("A

---

[5] Plaintiff provides a string cite of cases, none of which offer this Court any basis to broadly expand the fair report privilege to include the present scenario and several of which do not even deal with the fair report privilege.

defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."). In other words, "a statement of pure opinion commenting on an individual's conduct, character or qualifications and stating the facts upon which that opinion is based is not actionable while an opinion implying undisclosed facts, known as a 'mixed opinion,' may constitute actionable defamation." Rishell v. R.R. Donnelley & Sons, No. CIV.A.06-4782, 2007 WL 1545622, at *2 (E.D. Pa. May 24, 2007).

Clearly, several of James Casale's statements in the press release constitute "mixed opinion." By way of example:

- After describing the basis of the Complaint, the press release includes Casale's statement that, "Here, you have a small, neighborhood yarn shop, really a non-business, taking on a company which is perhaps the market leader in the US handknitting trade which dominates that trade through links to yarn manufacturers throughout the world and is run by a man who prides himself as being known as the most powerful man, internationally, in that market. The mouse is set against the elephant. Fortunately, the mouse has the facts, and the truth, on its side."

- Describing the RICO claim against KFI, Casale states in the press release that, "I won't speculate that this is a deliberate scheme. . . . In the three cashmerino products, the facts to be presented to the court indicate the absence of cashmere and the presence of a greater quantity of another fiber. Other facts to be laid before the court indicate a number of other things both before and after the development of the Debbie Bliss brand of cashmerino yarns."

(Def.'s Opp'n Mot. Summ. J., Ex. 2.) As such statements unequivocally imply the existence of undisclosed facts, the Court rejects Plaintiff's Motion for Summary Judgment on Defendant's defamation claim.

### 3. Whether KFI Can Survive Summary Judgment on Its Commercial Disparagement Claim

Finally, Plaintiff seeks summary judgment on KFI's commercial disparagement claim on the ground that Defendant fails to produce evidence of the falsity of any allegedly disparaging statement concerning the six KFI-distributed hand-knitting yarns recalled by TKW. This Court agrees and dismisses this claim.

"A commercial disparagement action is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of its goods have reduced their marketability." Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 579 (E.D. Pa. 1999). The Third Circuit has distinguished between defamation and commercial disparagement claims, noting that a claim for defamation lies where the defamatory statement "imputes to the corporation fraud, deceit, dishonesty, or reprehensible conduct," while a claim for commercial disparagement lies where "the publication on its face is directed against the goods or products of a corporate vendor." U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 924 (3d Cir. 1988) (quotations omitted); see also Electro Med. Equip. Ltd. v. Hamilton Med. AG, No. CIV.A.99-579, 2000 WL 675716, at *2 (E.D. Pa. May 24, 2000). To sustain a claim for commercial disparagement in Pennsylvania, a plaintiff must prove that: "(i) the statement is false; (ii) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (iii) pecuniary loss does in fact result; and (iv) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity." McNulty v. Citadel Broad. Co., 58 Fed. Appx. 556, 556 (3d Cir. 2003) (citing Neurotron, Inc. v. Med. Servs. Ass'n of Pa., Inc., 254 F.3d 444 (3d Cir. 2001)). "Unlike a defamation action, a plaintiff claiming commercial disparagement must prove actual pecuniary loss." SNA, Inc. v. Array, 51 F. Supp. 2d 554, 565

(E.D. Pa. 1999).

Upon review of the briefs and exhibits submitted by both parties, the Court finds that Defendant KFI has failed to meet its summary judgment burden to produce sufficient evidence of the falsity of the allegedly disparaging statements. As both parties agree, all of the statements at issue were contained in the September 2008 news announcement. The sole potential commercial disparagement in that press release took the form of statements addressing the results of fiber analyses performed on KFI-distributed cashmere yarns held in TKW's inventory and suggesting that the subject yarns were spun with less than the labeled quantity of cashmere. KFI, however, has not produced the report of any fiber analysis that was performed on any of the six subject yarns prior to June 1, 2006 (when KFI first learned of the rumored absence of cashmere in any KFI-distributed cashmere yarn), demonstrating the presence of the labeled quantity of cashmere and rendering the challenged statements untrue.[6] (Pl.'s Mot. Summ. J., Ex. 1, interrogatory no. 18.) This absence of evidence to support an essential element of Defendant KFI's commercial disparagement claim warrants the grant of summary judgment in favor of Plaintiff. See Celotex, 477 U.S. at 322 (holding that summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

In its Response to Plaintiff's Motion, Defendant makes a single – albeit misguided – attempt to create a genuine issue of fact with respect to this claim. Specifically, it argues that:

---

[6] In its Motion, Plaintiff anticipated that KFI would oppose summary judgment by referencing reports of fiber analyses performed after KFI became aware of the rumored absence of cashmere in the KFI-distributed yarns, after TKW's initial July fiber analyses of the Cashmerino and Noro yarns, and as late as January 2007, on yarns purported to be drawn from different dyelots than those supplied to retailers. (Pl.'s Mem. Supp. Mot. Summ. J. 13 n.10.) Defendant, however, submitted no such evidence to this Court.

> [t]hroughout the Press Release, Plaintiff asserts that The Knit With – the current Pennsylvania partnership between James and Dawn Casale – incurred damages and losses as a result of purchases of the yarns at issue in this case. Yet there is no evidence of record that establishes that the current partnership operating as The Knit With is the true successor to the prior form of The Knit With to whom KFI sold the yarns at issue in this case – namely, the sole proprietorship of Marguerite Casale.

(Def.'s Opp'n Mot. Summ. J. 7-8.)

This argument falters under the simple fact that these statements, in and of themselves, do not constitute commercial disparagement. Pursuant to Pennsylvania law, the challenged publication, on its face, must be "directed against the goods or products of a corporate vendor." U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 924 (3d Cir. 1988) (internal quotations omitted); see also Municipal Revenue Serv., Inc. v. Xspand, Inc., 700 F. Supp. 2d 692, 706-07 (M.D. Pa. 2010); Centennial Sch. Dist. v. Independence Blue Cross, 885 F. Supp. 683, 688 (E.D. Pa. 1994). Any purportedly false statement by Plaintiff that it is the successor-in-interest to the prior form of TKW that bought the yarns from KFI has no disparaging effect whatsoever on KFI, either as an entity or on the goods and services it provided.[7] Accordingly, no reasonable juror could find that such statements entitle KFI to recovery.

In short, Defendant has failed to meet its burden on summary judgment of producing sufficient evidence for a jury to return a verdict in its favor on the commercial disparagement claim. Although the September 2008 press release contained negative statements about the yarns supplied by KFI, Defendant has not produced even a scintilla of evidence that such statements are false. Moreover, any allegedly false statements by Plaintiff as to its corporate form or its status as the successor in interest to the TKW entity that purchased goods from KFI do not, under elementary

---

[7] Notably, this Court's Memorandum and Order of September 23, 2010 found a genuine issue of material fact as to whether Plaintiff was the successor-in-interest to the original form of TKW.

principles of Pennsylvania law, give rise to any claim of commercial disparagement. As such, the Court grants summary judgment in favor of Plaintiff on this count of the Counterclaim.[8]

IV.     **CONCLUSION**

For all of the foregoing reasons, the Court grants Plaintiff's Motion for Summary Judgment as to Defendant KFI's cause of action for commercial disparagement contained within Count II of the Counterclaim, but denies the Motion on all other grounds. An appropriate order follows.

---

[8] Given this conclusion, the Court declines to address Plaintiff's alternative argument that KFI has failed to produce any evidence of the damages is suffered as a result of the release of the September 2008 news announcement.