IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| THE KNIT WITH, | : | |
|---|---|---|
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KNITTING FEVER, INC., | : | |
| DESIGNER YARNS, LTD., | : | |
| FILATURA PETTINATA V.V.G. DI | : | |
| STEFANO VACCARI & C., SION | : | NO. 08-4221 |
| ELALOUF, DIANE ELALOUF, JEFFREY | : | |
| J. DENECKE, JR., JAY OPPERMAN, and | : | |
| DEBBIE BLISS, | : | |
| | : | |
| Defendants. | : | |

| THE KNIT WITH, | : | |
|---|---|---|
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EISAKU NORO & CO., LTD., | : | |
| KNITTING FEVER, INC., | : | |
| SION ELALOUF, DIANE ELALOUF, | : | NO. 08-4775 |
| and JAY OPPERMAN, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S.J.                                                                             December    , 2010

      Currently pending before the Court is the Motion of Defendant Debbie Bliss to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the following reasons, the Motion is

---

[1] The Motion was originally brought under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). In light of the Court's September 27, 2010 Memorandum and Order, however, Defendant Bliss has withdrawn her Motion to Dismiss under Rule 12(b)(1). (Def. Bliss Reply

granted and the Complaint against Defendant Debbie Bliss is dismissed in its entirety.

I.       FACTUAL AND PROCEDURAL HISTORY

The factual background of this case is one familiar to both the parties and the Court, and has been reiterated in several of this Court's prior opinions.[2] This matter arises between Plaintiff, The Knit With ("TKW"), a small, family-owned and operated business retailing specialty yarns and accessories to consumers, and Defendant Knitting Fever, Inc. ("KFI"), a New York corporation that manufactures and distributes specialty yarns. At the heart of the dispute is Plaintiff's claim that KFI sold designer knitting yarns to TKW, representing that the yarns contained a percentage of cashmere, which they allegedly did not.

Plaintiff initiated litigation on September 2, 2008, against KFI, its officers/directors, and several foreign entities, including Defendant Debbie Bliss, under whose name two of the subject yarns were branded and marketed. The litigation alleged that, as a consequence of the false labeling as to the wool content of three Cashmerino yarns, its business and commercial interests were harmed. (Compl., The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221 (E.D. Pa. Sep. 2, 2008) ("The Knit With I").) The Complaint set forth several causes of action, including: (1) breach of the express warranty of merchantability; (2) breach of the implied warranty of merchantability; (3) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) injury to business and property pursuant to the Racketeer Influenced and Corrupt Organization

---

Br. 1.)

[2] The facts were fully summarized in two December 2008 decisions and, in lieu of repeating them here, the Court incorporates them by reference. See The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008); The Knit With v. Eisaku Noro, No. CIV.A.08-4775, 2008 WL 5273582, at *1-3 (E.D. Pa. Dec. 18, 2008).

Act ("RICO"), 18 U.S.C. § 1962; (5) conspiracy to cause injury to business and property pursuant to RICO; (6) perfidious trade practices (deceit) under the common law of unfair competition; and (7) piercing the corporate veil. (Id. ¶¶ 82-150.) Defendants moved, on September 24, 2008, to dismiss the third, fourth, and fifth counts.

On October 6, 2008, prior to the resolution of this motion to dismiss, Plaintiff initiated a second litigation against KFI, also including as Defendants the Japanese manufacturers of three additional Cashmerino yarns. (Compl., The Knit With v. Eisaku Noro & Co., Ltd., No. CIV.A.08-4775 (E.D. Pa. Oct. 6, 2008) ("The Knit With II").) The Complaint in that case set forth the following causes of action: (1) breach of express warranty of merchantability of goods for resale to consumers; (2) breach of implied warranty of merchantability of goods for resale to consumers; (3) explicitly false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) perfidious trade practices and common law unfair competition; (5) civil conspiracy; and (6) piercing the corporate veil. Defendants filed another motion to dismiss. (Id. ¶¶ 35-82.)

On December 18, 2008, this Court, in The Knit With I, granted the motion to dismiss the Lanham Act claim on standing grounds, but declined to dismiss the RICO claims. The Knit With v. Knitting Fever, Inc., No. CIV.A.08-4221, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008). The following day, the Court also dismissed the Lanham Act claim in The Knit With II. The Knit With v. Eisaku Noro & Co., Ltd., No. CIV.A.08-4775, 2008 WL 5273582 (E.D. Pa. Dec. 19, 2008). By way of Order dated December 23, 2008, both actions were consolidated under the first civil action number.

Following the submission of an Answer on behalf of KFI and its principals (the "KFI

3

Defendants") and counterclaim on behalf of KFI, multiple dispositive motions ensued. On April 8, 2009, the Court granted Plaintiff's Motion to Strike as to Defendants' fifth affirmative defense of assumption of risk, but declined to strike any other affirmative defenses or dismiss any of Defendant KFI's counterclaims. Thereafter, on October 20, 2009, the Court granted the KFI Defendants' Motion for Judgment on the Pleadings as to Plaintiff's claims of perfidious dealing and civil conspiracy. On September 27, 2010, the Court denied the KFI Defendants' Motion for Summary Judgment based on a real party in interest objection under Federal Rule of Civil Procedure 17. Finally, on September 28, 2010, the Court granted Plaintiff's Motion for Summary Judgment as to Defendants' commercial disparagement counterclaim, but denied it as to Defendants' remaining counterclaims.

On August 25, 2010, Defendant Bliss, having only recently received proper service of process, filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court now turns to the merits of this Motion.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

4

Following the basic precepts of Twombly, the Supreme Court, in the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. The Supreme Court explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (citing Twombly, 550 U.S. at 556-57).

Expanding on the Twombly/Iqbal standards, the United States Court of Appeals for the Third Circuit succinctly summarized the two-prong analysis to be undertaken by district courts during a Rule 12(b)(6) review:

> [A]fter *Iqbal,* when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal

> elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal,* where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted).

Notwithstanding the foregoing, nothing in Twombly, Iqbal, or Fowler has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). Federal Rule of Civil Procedure 8 still requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002); see also Mayer v. Belichick, 605 F.3d 223, 229-30 (3d Cir. 2010).

## III. DISCUSSION

Defendant Bliss's Motion asserts that Plaintiff has failed to state a RICO conspiracy

claim against her. As set forth in detail below, the Court agrees.

Under 18 U.S.C. § 1962(d), it is unlawful for any person to conspire to violate subsections (a), (b), or (c) of RICO. 18 U.S.C. § 1962(d). The United States Supreme Court, in Salinas v. United States, 522 U.S. 52 (1997), stated that the essential elements of a § 1962(d) conspiracy include: (1) knowledge of the corrupt enterprise's activities and (2) agreement to facilitate those activities. Id. at 66. Because there is no requirement of some overt act or specific act, the RICO conspiracy provision is even more comprehensive than the general conspiracy offense. Salinas, 522 U.S. at 63. Thus, "a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001); see also Salinas, 522 U.S. at 64 ("If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators."); Dongelewicz v. PNC Bank Nat'l Ass'n, 104 Fed. Appx. 811, 818 (3d Cir. 2004) (adopting Smith standard). "In certain circumstances, a defendant may be held liable under § 1962(d) even where its own actions would not amount to a substantive RICO violation." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 372 (3d Cir. 2010) (citing cases). Nonetheless, "[u]nderlying a § 1962(d) claim is the requirement that plaintiff must show that defendants agreed to the commission of a 'pattern of racketeering.'" Breslin v. Brainard, No. CIV.A.01-7269, 2003 WL 22351297, at *13 (E.D. Pa. Oct. 14, 2003) (quoting Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990)), aff'd, 128 Fed. Appx. 237 (3d Cir. 2005). The Third Circuit has emphasized that those who innocently provide services will not incur § 1962(d) liability; rather "liability will only arise from services which were purposefully and knowingly directed at

7

facilitating a criminal pattern of racketeering activity." Smith, 247 F.3d at 538 n.11.

In light of such legal tenets, proper pleading of a conspiracy under § 1962(d) requires a plaintiff to "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989), abrogated on other grounds, Beck v. Prupris, 529 U.S. 494 (2000); see also Meeks-Owens v. Indymac Bank, F.S.B., 557 F. Supp. 2d 566, 573 (M.D. Pa. 2008) (reaffirming Shearin's elements of a § 1962(d) conspiracy). "Additional elements include agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity." Shearin, 885 F.2d at 1166-67. Notably, the supportive factual allegations "must be sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy." Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989) (internal quotations and citations omitted). It is not enough for a complaint to simply make "conclusory allegations of concerted action but [be] devoid of facts actually reflecting joint action."[3] Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998); see also District 1199P Health & Welfare Plan v. Janssen, L.P., Nos. CIV.A.06-3044, 07-2224, 07-2608, 07-2860, 2008 WL 5413105, at *15-16 (D.N.J. Dec. 23, 2008). Moreover, "mere inferences from the complaint are inadequate to establish the necessary factual basis." Rose, 871 F.2d at 366. "Plaintiff must allege facts to show that each Defendant objectively manifested an agreement to participate, directly or indirectly, in the affairs

---

[3] Notably, this analysis need not rise to the level of particularity required by Federal Rule of Civil Procedure 9(b) for allegations of fraud; rather it is governed by the more liberal pleading standards of Rule 8. Rose, 871 F.2d at 366; Emcore Corp. v. PricewaterhouseCoopers LLP, 102 F. Supp. 2d 237, 264 (D.N.J. 2000).

8

of a RICO enterprise through the commission of two or more predicate acts." Smith v. Jones, Gregg, Creehan & Gerace, LLP, No. CIV.A.08-365, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008). As such, "[b]are allegations of conspiracy described in general terms may be dismissed." Id.

The Complaint, in this case, alleges the existence of conspiracy between Defendants KFI, Sion Elalouf, and Designer Yarns, as follows:

> 60. Upon information and belief – to effect 'damage control' and to continue 'pulling the wool over' the trade concerning the cashmere content of the Cashmerinos – Mr. Elalouf and Designer Yarns agreed, after May 26, 2006 and certainly before June 20, to claim the Cashmerinos, since 2001, *always* contained the requisite quantity of cashmere (or, conversely, to cover-up the absence of any cashmere content in the Debbie Bliss Cashmerino since 2001).

(Compl. ¶ 60.) Ms. Bliss's purported participation in this conspiracy is described in only three paragraphs of and one exhibit to the Complaint:

> 11. Defendant Debbie Jane (Mrs. Barry W.) Bliss, a subject of the United Kingdom residing at 9 Folkestone Road, Walthamstow, London, UNITED KINGDOM, E17 9SD, is an internationally acclaimed knitwear designer and author who, prior to November, 2001 operated a business engaged in the retail sale of handknitting yarns, at 365 St. John Road, Islington, London, among other locations. In late 1999 or by June, 2000 Mrs. Bliss desired to create, under her own label and brandname, a range of value-price yarns for sale in her business – for which purpose Mrs. Bliss became aware of Pettinata V.V.G., KFI and Sion Elalouf. Resulting from these relationships, in early 2001, Mrs. Bliss agreed to license her name to Designer Yarns, Ltd. For the development and marketing of a series or range of yarns branded under her name with Mrs. Bliss reserving responsibility to assure the quality of and to maintain standards for the handknitting yarns branded with her name. Mrs. Bliss' designer status in the handknitting yarn trade began in the 1980's with the publication of a series of tradebooks which gained a wide and sustained appeal among handknitting consumers in the US. Since 2001, Mrs. Bliss has regularly traveled to the US for the express purpose of promoting commercial sales

9

> of yarns branded with her name; she has attended trade shows for the handknitting market and visited yarn shops for the purpose of spiking consumer demand for yarn products labeled with the Debbie Bliss name. At times relevant to this Complaint, and certainly since September 2006, Mrs. Bliss has participated in and facilitated the racketeering scheme which has injured Plaintiff's business.
>
> 72. To solidify the Elalouf-Designer claim the Cashmerinos *always* contained the requisite quantity of cashmere, on or about September 26, KFI caused to be distributed by the United States Mail to specialty yarn retailers an open letter ostensibly authored by Debbie Bliss expressing:
>
>    a.) her sadness and distress from rumors the Cashmerinos are spun with no cashmere; and
>
>    b.) her 'complete confidence' the yarns are spun with the labeled cashmere content.
>
> 129. On or before September 26, 2006, Mrs. Bliss, in reckless disregard of the truth, agreed to join the conspiracy alleged in ¶ 60 by preparing a letter:
>
>    a.) stating her satisfaction that testing performed on the Cashmerino products since June 20, 2006 "confirms the presence of cashmere in the yarn" – while Mrs. Bliss knew or should have known that reports of fiber analysis on yarns produced after May 26, 2006 hardly support the presence of cashmere in yarns produced prior to the dyelot (batch) actually analyzed, . . .
>
>    b.) offering her sadness and distress that her own integrity in meeting her responsibility to "maintain the very highest standards and ensure the quality of products" branded with her name would be questioned – while Mrs. Bliss knew or should have known her acts since 1999 to maintain standards and assure the quality were insufficient or irrelevant to specifying the fiber content and labeling of those same yarn products.

(Compl. ¶¶ 11, 72, 129.) Defending its claim against Ms. Bliss, Plaintiff now asserts that these three paragraphs, together with the September 26, 2006 letter, satisfy its pleading burden to impose liability upon Bliss "for her contribution to the cover-up of the *Cashmerinos'* absent cashmere." (Pl.'s Resp. Bliss Mot. Dismiss 8.)

The Court, however, finds such allegations insufficient to state a claim against Defendant

Bliss for participation in a RICO conspiracy pursuant to 18 U.S.C. § 1962(d). Paragraph 11 merely sets forth Ms. Bliss's background and describes how she came to design yarns and ultimately license her brand of yarns to Defendant Designer Yarns. The paragraph ends with the conclusory allegation that, "[a]t times relevant to this Complaint, and certainly since September 2006, Mrs. Bliss has participated in and facilitated the racketeering scheme which has injured Plaintiff's business." (Compl. ¶ 11.) This statement is nothing more than a legal conclusion, which, under Rule 12(b)(6) standards, is not entitled to any deference or consideration by this Court. See Fowler, 578 F.3d at 210 (noting that legal conclusions may be disregarded by the court on a motion to dismiss).

Paragraphs 72 and 129, together with Exhibit 16 to the Complaint, fare no better in pleading Ms. Bliss's liability for a RICO conspiracy. These paragraphs assert that Bliss evidenced her participation in the conspiracy by authoring an open letter to the yarn retailer community stating, in pertinent part, as follows:

> Dear Retailer,
>
> . . .
>
> By now you are probably well aware of the rumours in our industry questioning the existence of cashmere in the Debbie Bliss Cashmerino ranges. I am saddened and distressed that my integrity and that of my colleagues has been called into question in this way. I am fully aware that associating my name with a brand comes with a huge responsibility to maintain the very highest standards and ensure the quality of the products. I have complete confidence in the honesty of all the parties from the mills that acquire and spin the fibers, to the distributors and agents who have all worked so hard to make the brand so successful.
>
> The directors of Designer Yarns, my worldwide distributors, have been in the yarn business for many years, and together with the manufacturer, operate ethically and with the utmost professionalism. In response to the claims, they have initiated the most stringent state of the art tests, including DNA, every one of which confirms

>the presence of cashmere in the yarn.
>
>. . .
>
>Debbie Bliss

(Compl. Ex. 16.) Paragraph 72 of the Complaint then states only that Defendant KFI "caused" the letter to be distributed to yarn retailers through the United States Mail. (Compl. ¶ 72.)

Noticeably absent from Plaintiff's sixty-page Complaint are any specific allegations regarding Bliss's agreement to join any alleged conspiracy to facilitate or operate a RICO enterprise. Plaintiff does not intimate that Bliss could have independently known of any purported absence of cashmere.[4] Moreover, the letter was an "open letter" to all yarn retailers; nothing in the Complaint suggests that Sion Elalouf, KFI, or Designer Yarns requested that Bliss write this letter. Further, the Complaint is devoid of any accusation either that Bliss and another Defendant worked together to create the letter or that any Defendant provided Bliss information for specific inclusion in the letter. Finally, the Complaint offers no implication that Bliss gave this letter directly to KFI for purposes of distributing it to yarn retailers. Indeed, despite the

---

[4] In its Response, Plaintiff argues that "[t]he finding of the complete absence of any cashmere in the *Cashmerinos* demonstrates the obvious and complete failure [of Bliss] to fulfill her affirmative duty to 'maintain the very highest standards and ensure the quality of the products.'" (Pl.'s Resp. Bliss Mot. Dismiss 9-10.) Plaintiff, however, cites to no legal source for this alleged "affirmative duty." Rather, it merely quotes from Bliss's own letter wherein she makes the broad remark that she is "fully aware that associating my name with a brand comes with a huge responsibility to maintain the very highest standards and ensure the quality of the products." (Compl. Ex. 16.) Certainly, Bliss cannot create her own legal duty simply by proposing it in a letter. Moreover, Plaintiff concedes that "without expert fiber analysis, it is virtually impossible to confirm the presence of cashmere in a spun yarn." (Compl. ¶ 34(b).) Finally, Plaintiff's citation to Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812 (3d Cir. 2006), in no way supports the proposition that Bliss had a legal duty to conduct expert fiber analyses on yarns branded with her name or that her failure to conduct such tests evidences an agreement to participate in the alleged conspiracy.

intricate detail of the Complaint and the lengthy descriptions of communications among all of the other Defendants as to the rumored absence of cashmere, the Complaint is markedly lacking in any particularized factual allegation of any conversations, letters, communications, discussions between Bliss and any other Defendant from which the Court can draw a reasonable allegation that Bliss knew that her act of writing a letter defending her name was part of any pattern of racketeering activity. Plaintiff's allegation that Bliss "agreed to join the conspiracy . . . by preparing a letter" simply does not adequately allege facts to show that she "objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise." Jones, Gregg, Creehan & Gerace, LLP, 2008 WL 5129916, at *7; see also District 1199P Health and Welfare Plan, 2008 WL 5413105, at *15 (dismissing RICO conspiracy claim where plaintiff failed to show how all of the alleged conspirators knew that their acts were part of a pattern of racketeering activity); Emil v. Singleton, No. CIV.A.09-664, 2010 WL 3221842, at *11 (M.D. Pa. July 6, 2010) (finding that plaintiff's failure to make specific allegations that defendants agreed to commit any predicate offenses under RICO was fatal to RICO conspiracy claim).

In short, the Court declines to make the untenable leap that Defendant Bliss's authoring of a letter – defending a line of yarns to which her name was attached and expressing her dismay at the allegations lodged against those yarns – demonstrates the plausibility of her agreeing to participate in a pattern of racketeering activity to cover up an alleged absence of cashmere in those yarns. Taking all of the allegations of the Complaint as true, Plaintiff has offered only the "sheer possibility" Bliss acted unlawfully while stopping short of stating a plausible claim for relief. Accordingly, the Motion to Dismiss is granted and the Complaint shall be dismissed as against Defendant Debbie Bliss.