**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KNITTING FEVER, INC., | : | |
| DESIGNER YARNS, LTD., | : | |
| FILATURA PETTINATA V.V.G. DI | : | |
| STEFANO VACCARI & C., SION | : | NO.  08-4221 |
| ELALOUF, DIANE ELOUF, JEFFREY J. | : | |
| DENECKE, JR., JAY OPPERMAN, and | : | |
| DEBBIE BLISS, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| THE KNIT WITH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EISAKU NORO & CO., LTD., | : | |
| KNITTING FEVER, INC., | : | |
| SION ELALOUF, DIANE ELALOUF, | : | NO.  08-4775 |
| and JAY OPPERMAN, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S.J.                                                      August 8, 2012

Currently pending before the Court are Plaintiff The Knit With's ("TKW") Motion for

Summary Judgment on the Counterclaims of Knitting Fever, Inc. and Defendant Knitting Fever,

Inc.'s ("KFI") Motion for Summary Judgment on its Counterclaim for Defamation.  For the

following reasons, both Motions are denied.

I.     **FACTUAL AND PROCEDURAL HISTORY**

After almost four years of litigation and hundreds of docket entries, the factual

background of this case is almost rote to both the parties and the Court, and has been reiterated in

several of this Court's prior opinions.[1]  This matter arises between Plaintiff, TKW, a small,

family-owned and operated business retailing specialty yarns and accessories to consumers, and

multiple Defendants, including:  (a) KFI, a New York corporation that imports and distributes

specialty yarns; (b) KFI's officers and directors, including Sion Elalouf, Diane Elalouf, Jay

Opperman, and Jeffrey J. Denecke, Jr.; and (c) Filatura Pettinata V.V.G. Di Stefano Vaccari & C.

("Filatura"), Debbie Bliss, Designer Yarns, Inc. ("Designer Yarns"), and Eisaku Noro & Co.,

Ltd., all of whom are non-U.S. entities that design, manufacture, and/or distribute speciality

yarns.  At the core of the dispute is Plaintiff's claim that KFI sold designer knitting yarns to

TKW, misrepresenting the amount of cashmere in the yarns, and that this practice was part and

parcel of a larger racketeering conspiracy.

Following extensive motion practice by both parties, the Court has either dismissed or

granted summary judgment on the entirety of Plaintiff's Complaint.  The sole claims remaining

in this action are KFI's counterclaims for defamation and tortious interference with existing and

prospective contracts.  Plaintiff originally moved for summary judgment on these counterclaims

in June 2010.  Via a September 10, 2010 Memorandum and Order, the Court found that the

defamation and tortious interference claims survived Plaintiff's initial challenges.

On March 30, 2012, Plaintiff filed a second Motion for Summary Judgment on the

---

[1]  See The Knit With v. Knitting Fever, Inc., No. Civ.A.08-4221, 2008 WL 5381349, at
*1–6 (E.D. Pa. Dec. 18, 2008); The Knit With v. Eisaku Noro, No. Civ.A.08-4775, 2008 WL
5273582, at *1–3 (E.D. Pa. Dec. 18, 2008); The Knit With v. Knitting Fever, Inc., Nos.
Civ.A.08-4221 & 08-4775, 2011 WL 891871, at *1–2 (E.D. Pa. Mar. 10, 2011).

Remaining Counterclaims and Defendant KFI filed a Cross-motion for Summary Judgment on only the Defamation Counterclaim.  Responses, reply briefs, and sur-reply briefs were filed on April 16, 2012, May 21, 2012, and May 31, 2012, respectively.  The Motions are now ripe for judicial consideration.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

3

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586.  "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.  Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

Notably, "[t]he rule is no different where there are cross-motions for summary judgment." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).  As stated by the Third Circuit, "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination of whether genuine issues of material fact exist." Id. (quoting Rains v. Cascade Indus., Inc., 401 F.2d 241, 245 (3d Cir. 1968)).

4

**III.    DISCUSSION**

At issue in the present case is the viability of Defendant KFI's counterclaims for defamation and tortious interference.  Plaintiff contends that it is entitled to judgment on both causes of action because KFI cannot establish all elements necessary to support such claims. Defendant responds that Plaintiff's arguments are meritless and that summary judgment should be entered in its favor on the defamation counterclaim.  The Court considers the defamation counterclaim and the tortious interference counterclaim individually.

**A.    Defamation**

The core of Defendant's counterclaim focuses on a September 4, 2008 press release issued in connection with the commencement of the present action.  Specifically, James Casale— who is both Plaintiff's counsel and a co-owner of TKW—prepared a press release entitled "Knitting Fever, Inc. Sued for False Advertising of Cashmere Yarns" (the "Press Release"). (Def.'s Mot. Summ. J. Defamation Countercl. ("Def.'s Mot."), Ex. 1.)  This Press Release summarized TKW's Complaint and included multiple quoted statements taken from an interview Mr. Casale conducted with himself.  On September 4, 2008, Mr. Casale, acting under the guise of a public relations firm called "Communications Specialists," sent both the Press Release and a copy of the Complaint to a group of at least thirteen individuals.  (Id.; see also The Knit With v. Knitting Fever, Inc., No. Civ.A.08-4221, Docket No. 168, Ex. 1, Decl. of Sion Elalouf ¶¶ 4–5 & Ex. A, July 12, 2010 ("Elalouf Decl.").)  This Press Release made several comments regarding KFI's alleged racketeering activity on which Defendant now bases its cause of action:

- "The lawsuit also alleges Knitting Fever, Inc. is a racketeering or corrupt enterprise and KFI's regular way of doing business is by engaging in racketeering activity."

- "The lawsuit alleges that Knitting Fever's president, Sion Elalouf, has

5

engaged in a pattern of racketeering activity and manages Knitting Fever, Inc. as a racketeering enterprise.  The lawsuit claims the individual defendants conspired with Elalouf to cover-up the absence of cashmere in the Cashmerino products.  The lawsuit accuses the defendants of reaping illegal profits from the sale of mis-labeled wool products distributed to yarn shops which, in turn, inadvertently sell the improperly spun or improperly labeled yarns to handknitting consumers."

•       "[A RICO claim] applies to any circumstance where there is an 'organized' pattern of illicit activity involving certain discrete illegal acts and when the racketeering enterprise results in harm to another's business or property. . . . [T]he elements of a racketeering charge appear to be present but a judge will decide whether that is actually so."

•       "'I won't speculate that this is a deliberate scheme,' Casale added.  'In the three cashmerino products, the facts to be presented to the court indicate the absence of cashmere and the presence of a greater quantity of another fiber. Other facts to be laid before the court indicate a number of other things both before and after the development of the Debbie Bliss brand of cashmerino yarns.  It is for the court to conclude whether all these facts, taken together indicate a course of deliberate conduct.'"

•       "[The Knit With will show] Mr. Elalouf both has engaged in a pattern of racketeering acts and his regular way of managing his business is as a racketeering enterprise."

(Def.'s Mot., Ex. 1.)[2]

One recipient of the Press Release and Complaint wrote about it extensively on her

---

[2]   In its Reply Brief in support of its Motion for Summary Judgment, KFI cites to several other defamatory statements in other press releases issued by James Casale on behalf of The Knit With.  (Def.'s Reply Br. 3.)  These statements were not made part of its original Motion for Summary Judgment.  In fact, Defendant's original brief explicitly remarks that "KFI's defamation counterclaim focuses on a press release issued in connection with the commencement of the present action" and then goes on to discuss the aforementioned Press Release.  (Def.'s Mem. Supp. Mot. Summ. J. Defamation Counterclaim ("Def.'s Mem.") 3.)  To the extent Defendant's Reply Brief attempts to now base its Summary Judgment Motion on additional statements, the Motion is denied.  Sproull v. Golden Gate Nat'l Senior Care, LLC, No. Civ.A.08–1107, 2010 WL 339858, at *3 (W.D. Pa. Jan. 22, 2010) ("[T]he reply brief generally cannot be used to expand the issues presented for adjudication beyond those raised in the moving papers.").

internet blog entitled *www.girlfromauntie.com*.  (The Knit With v. Knitting Fever, Inc., No. Civ.A.08-4221, Docket No. 168, Ex. 3, Decl. of Joshua Slavitt ("Slavitt Decl.") ¶¶ 3–4 & Ex. A, July 12, 2010.)  In the blog, the author remarked that she "received an e-mail from a PR agency [called "Communications Specialists"] with an interesting subject line."  (Id., Ex. A.)  Following the blogger's long and detailed summary of both the Press Release and the attached Complaint, several readers submitted online responses that made negative comments about KFI.  (Id.) Defendant now asserts that these events unequivocally establish Plaintiff's liability for defamation.

In Pennsylvania, the burden of proof for a common law defamation action is set forth by statute:

(a) *Burden of plaintiff.*—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. § 8343(a); Porter v. Joy Realty, Inc., 872 A.2d 846, 849 (Pa. Super. Ct. 2005). Whether a communication is capable of bearing a defamatory meaning is a question for the Court.  Smith v. IMG Worldwide, Inc., 437 F. Supp. 2d 297, 307 (E.D. Pa. 2006); see also Agriss v. Roadway Express, Inc., 483 A.2d 456, 461 (Pa. Super. 1984).  Put differently, "under Pennsylvania law, the Court acts as a gatekeeper to determine whether the statements are incapable of defamatory meaning in deciding whether any basis exists to proceed to trial." Mzamane v. Winfrey, 693 F. Supp. 2d 442, 480 (E.D. Pa. 2010).  If the cause of action is viable,

the Pennsylvania statute also offers three potential affirmative defenses to defamation claims, which the defendant to the action bears the burden of proving: (1) the truth of the defamatory communication; (2) the privileged character of the publication; or (3) that the subject matter was of public concern.  See 42 Pa. Cons. Stat. § 8343(b); Fanelle v. Lojack Corp., No. Civ.A.99-4292, 2000 WL 1801270, at *2 (E.D. Pa. Dec. 7, 2000).

In the present case, this Court previously found—and the parties now appear to agree—that the statements were in fact defamatory and were understood by the recipients as such.[3]  See The Knit With v. Knitting Fever, Inc., Nos. Civ.A.08-4221 & 08-4775, 2010 WL 3792200, at *6 (E.D. Pa. Sept. 28, 2010).  Plaintiff, however, now offers several new arguments in support of its position that Defendant's defamation counterclaim cannot prevail.  First, it claims that Defendant cannot prove the element of publication.  Second, it asserts that Defendant has not adduced evidence of actual harm resulting from the defamatory comments.  Third, it avers that Defendant has not proven negligence.  Finally, Plaintiff contends that, even if all of the elements of a cause of action exist, the statements at issue were truthful, thus providing an absolute affirmative defense to an allegation of defamation.  The Court individually considers each of these arguments in the joint contexts of Plaintiff's Motion for Summary Judgment and Defendant's Cross-motion for Summary Judgment.[4]

---

[3]  "A publication is defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession."  Agriss, 483 A.2d at 461.  Plaintiff makes no effort in its briefing to argue that the statements in the Press Release were not defamatory.

[4]  The Court need not discuss elements (1), (3), (4), (5), and (7) set forth in 42 Pa.C.S. § 8343(a).  In the September 10, 2010 Opinion, the Court already found that the statements at issue were capable of defamatory meaning and were not simply non-actionable opinion.  Moreover, neither party disputes that the statements were directed toward Defendant KFI and that the recipients of those statements understood the defamatory meaning as intended to be applied to

1.     **Publication**

"[I]n order for defamation to occur in the form of either libel or slander, the defamatory statement must be published or communicated to a third person.  Elia v. Erie Ins. Exch., 634 A.2d 657, 660 (Pa. Super. 1993) (citing Gaetano v. Sharon Herald Co., 231 A.2d 753, 755 (Pa. 1967)).  This element simply requires a showing of distribution to others.  Fanelle, 2000 WL 1801270, at *4.  As explained by the Pennsylvania Supreme Court, "regardless of where the defamatory statement is written or printed, no cause of action for libel arises until there is a publication of the defamatory matter, which is 'its communication intentionally or by a negligent act to one other than the person defamed.'"  Gaetano, 231 A.2d at 755.

Plaintiff argues that KFI cannot demonstrate publication because its evidence shows no more than the origin of the 2008 statements.  (Pl.'s Sur-Reply Br. Opp'n Def.'s Mot. Summ. J. Counterclaims ("Pl.'s Sur-reply") 4.)  It goes on to contend that, because KFI has failed to identify any witness other than Mr. Elalouf who will testify at trial to establish "publication" of the 2008 news announcement, there is no evidence of publication.  Id.

Plaintiff's argument is completely unfounded.  In its Response to Plaintiff's original Motion to Dismiss Counterclaims, dated July 13, 2010, Defendant attached, as an exhibit, an e-mail showing that a copy of both the Press Release and the Complaint was sent to at least thirteen email recipients, including several media outlets.  (The Knit With v. Knitting Fever, Inc., No. Civ.A.08-4221, Docket No. 168, Ex. 1.)  James Casale also admitted that he sent this Press Release to multiple media sources.  (Def.'s Mot., Ex. 2, Dep. of James Casale ("Casale Dep."), 302:19–304:3, Jan. 20, 2012.)  In addition, an Affidavit from Defendant's counsel, Joshua

---

KFI.  Finally, in the September 10, 2010 Opinion, the Court conclusively determined that the statements were not entitled to any conditional privilege.

Slavitt, avers that he downloaded a copy of a web blog regarding the Press Release, with readers' comments, from a website known as *www.girlfromauntie.com*.  (Id., Ex. 3, Decl. of Joshua Slavitt ("Slavitt Decl.") ¶ 3, Ex. A., July 12, 2010.)  The author of the blog expressly stated that "[s]o apparently, I am a primo target for press releases when somebody in the craft yarn industry sues someone else."  (Slavitt Decl., Ex. A.)  Likewise, Defendant has produced various website blogs wherein the authors comment that they received copies of the press report.  (Def.'s Mot., Exs. 3–5.)  Those blogs are followed by extensive reader remarks commenting on the Press Release.  (Id.)  Given such evidence, the Court finds no genuine issue as to the fact that the Press Release was, in fact, "published" within the meaning of the defamation statute.

### 2.    Special or Actual Harm

Plaintiff next argues that KFI has come forward with no evidence to establish that it was actually damaged by Plaintiff's 2008 Press Release.  It asserts that "[i]n discovery, KFI has produced no facts so much as suggesting any statement in the 2008 press release damaged KFI's reputation in the yarn trade."  (Pl.'s Mem. Supp. Mot. Summ. J. Countercl. ("Pl.'s Mem.") 6.)  It goes on to claim that, because Defendant can identify no trade participant willing to testify that the news announcement had any effect upon KFI's ability to conduct business and has not submitted any affidavits substantiating harm to reputation, the counterclaim for defamation must fail.

Plaintiff's argument is again mistaken.  "Under Pennsylvania law, communications containing 'words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct,' are considered defamatory *per se*."  Mediaworks, Inc. v. Lasky, No. Civ.A.99-1290, 1999 WL 695585, at *7 (E.D. Pa. Aug. 26, 1999).  "A statement is defamatory *per se* as an accusation of business misconduct if it 'ascribes to another conduct,

characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business.'" Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999) (quoting Clemente v. Espinosa, 749 F. Supp. 672, 677–78 (E.D. Pa. 1990) (further quotation omitted). "Whether the allegedly defamatory statements are defamatory *per se* is a question for the court." Mediaworks, 1999 WL 695585, at *7.

"A defamation *per se* plaintiff need not prove 'special damages,' i.e., monetary or out-of-pocket loss." Franklin Prescriptions, Inc. v. New York Times Co., 424 F.3d 336, 343 (3d Cir. 2005). "Instead, a plaintiff need only prove 'general damages,' i.e., 'proof that one's reputation was actually affected by the slander, or that she suffered personal humiliation, or both.'" Id. (quoting Walker v. Grand Cent. Sanitation, Inc., 634 A.2d 237, 242 (Pa. Super. Ct. 1993)). The Pennsylvania Superior Court has explicitly adopted Section 621 of the Restatement (Second) of Torts in requiring only a showing of general damages in defamation *per se* cases. Synygy, 51 F. Supp. 2d at 581–82 (citing Walker, 634 A.2d at 244). The court reasoned,

> Requiring the plaintiff to prove general damages in cases of slander per se accommodates the plaintiff's interest in recovering for damage to reputation without specifically identifying a pecuniary loss as well as the court's interest in maintaining some type of control over the amount a jury should be entitled to compensate an injured person. On one hand, a slander per se plaintiff is relieved of the burden to actually prove pecuniary loss as the result of the defamation; yet on the other hand, a jury will have some basis upon which to compensate her.

Walker, 634 A.2d at 244.

In the present matter, the Court finds—and Plaintiff does not dispute[5]—that the

---

[5] In its opening brief on its Motion for Summary Judgment, Plaintiff argues that KFI has failed to causally link claimed damages for lost sales to TKW's 2008 statements. (Pl.'s Mem. 7.) In its Reply Brief, however, it appears to concede that because defamation *per se* is at issue, KFI need not link any of its actual pecuniary damages to the alleged defamation. (Pl.'s Reply Br.

statements at issue unequivocally constitute defamation *per se*, as they directly impute business misconduct and would be readily understood by a reader as doing so.  Instead, Plaintiff now contends that to sustain its claim, Defendant must adduce, at minimum, some evidence of general damages resulting from TKW's statements.  It then baldly asserts that KFI has failed to do so, arguing that "[a]t bottom, KFI's claim of reputation harm rests upon a presumption laid upon a presumption but no evidence."  (Pl.'s Sur-reply 5.)  It concludes that because KFI has failed to submit any affidavits from any trade participants substantiating harm to reputation, the counterclaim cannot succeed.

Again, Plaintiff's cursory and conclusory argument is unfounded.  Defendant's Motion for Summary Judgment attaches numerous blog entries posted by readers in response to the press release from The Knit With.  Indeed, immediately after a blog on *www.ravelry.com*, which republished TKW's Press Release, the following comments appeared:

- "As a few people have said before, if the label says 'Cashmere' whatever % there should BE Cashmere whatever %.  There was a report in Canada about fish being 'mislabeled'.  What was labeled as sole was in fact talapia [sic] which is much cheaper.  If I'm not getting what I am paying for, ie: what's on the label, then it's just plain FRAUD."

- "That's pretty sad . . . we've all been cheated."

- "It makes me wonder about other yarns I use and the truth in their fibre content."

- "I'm starting to wonder if this isn't standard procedure over at KFI . . . Not being able to trust the content on a yarn label is no small issue and it will cause suspicion in consumers for all the companies."

- "I believe that mis-labelling [sic] the yarn . . . is one of the worst crimes to be perpetrated in yarn-land."

- "[T]he profits from the inflated yarn prices went directly to KFI.  They're the real bad guys here."

---

Supp. Mot. Summ. J. ("Pl.'s Reply") 3–5.)

> • "You paid for a product that you thought had cashmere, and you were deceived. That sucks."

(Def.'s Mot., Ex. 3.) Certainly, such remarks evidence the reaction of other persons in the community to the alleged defamatory statements and demonstrate that, in the minds of many consumers, KFI is no longer a trustworthy company. Such evidence is sufficient to prove actual reputational harm.[6] Accordingly, the Court rejects this portion of Plaintiff's argument.

### 3. Negligence

Plaintiff next argues that "the KFI counterclaims fail for a lack of evidence to show, at a minimum, negligence in TKW's 2008 press release statements." (Pl.'s Mem. 6.) Under 42 Pa.C.S. § 8344,

> In all civil actions for libel, no damages shall be recovered unless it is established to the satisfaction of the jury, under the direction of the court as in other cases, that the publication has been maliciously *or negligently made*, but where malice or negligence appears such damages may be awarded as the jury shall deem proper.

---

[6] Plaintiff argues that such blog entries are inadmissible because KFI has neither provided an affidavit from each of the commenting individuals nor established that such individuals will be available to testify at trial. This is in error. KFI has provided an affidavit from defense counsel, Joshua Slavitt, who averred that he printed out the blog entries from the particular websites. (Slavitt Decl. ¶¶ 3–4.) Under Federal Rule of Evidence 901, Mr. Slavitt's printing of these blog entries for the purpose of showing evidence of KFI's reputational damage, together with his affidavit, is sufficient to authenticate the printouts. See Saadi v. Maroun, No. Civ.A.071-976, 2009 WL 3736121, at *4 (M.D. Fla. Nov. 4, 2009) (finding admissible website printouts used to prove that derogatory statements had been published on the internet when the individual who printed the postings was able to authenticate the evidence by either testifying at trial or through an affidavit.); see also Firehouse Rest. Grp., Inc. v. Scurmont LLC, No. Civ.A.09-618, 2011 WL 3555704, at *4 (D.S.C. Aug. 11, 2011) (finding that a witness declaration in combination with a document's circumstantial indicia of authenticity (*i.e.*, the date and web address that appear on them) would support a reasonable juror in the belief that internet printouts are what the declarant says they are). Moreover, such blog entries are not hearsay because they are not being admitted for the truth of the matter asserted therein, *i.e.* that Defendant has actually conducted racketeering activity, but rather to show the effect that Plaintiff's statements have had upon the recipients. Fed. R. Evid. 801(c).

42 Pa. Cons. Stat. § 8344 (emphasis added). The general rule is that "if the plaintiff is a private figure, the First Amendment only forbids a state to impose liability without fault. Thus, a plaintiff is required to at least show negligence on the part of defendant in order to succeed on the merits of his/her case."[7] Franklin Prescriptions, 267 F. Supp. 2d at 436; see also Harrell v.

---

[7] In its Reply Brief in support of its Motion for Summary Judgment, Plaintiff raises, for the first time, the contention that the lawsuit is a matter of public concern and Sion Elalouf is a public figure, meaning that KFI must show actual malice in order to recover. This point fails on several grounds. As a primary matter, Plaintiff, having not raised this argument in its original Motion for Summary Judgment on the Counterclaims or its original Response to Defendant's Motion for Summary Judgment on the Defamation Counterclaim, has waived this point. See United States v. Martin, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues."); Sproull v. Golden Gate Nat'l Senior Care, LLC, No. Civ.A.08–1107, 2010 WL 339858, at *3 (W.D. Pa. Jan. 22, 2010) ("[T]he reply brief generally cannot be used to expand the issues presented for adjudication beyond those raised in the moving papers.").

Even putting waiver aside, however, this argument is obviously incorrect. Under Pennsylvania law, "[t]he First Amendment provides heightened protected for libel defendants when the plaintiff is a public official or public figure." Weber v. Lancaster Newspapers, Inc., 878 A.2d 63, 75 (Pa. Super. Ct. 2005). If the party bringing the claim is a public official or a public figure, the burden shifts to the plaintiff to show "that the defendant either knew that the statement was false, or made the statement with reckless disregard of its falsity." Id.

In this case, Plaintiff argues—rather unconvincingly—that Defendant Sion Elalouf is a public figure. Mr. Elalouf, however, is not the party bringing the defamation claim; rather Defendant KFI is the plaintiff in the defamation counterclaim. Clearly, KFI does not have such "pervasive fame or notoriety" such that it is a public figure for "all purposes and in all contexts." Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974). Nor can Plaintiff credibly establish that KFI has "voluntarily thrust [itself] into" a particular public controversy and thereby become a public figure with respect to the limited range of issues surrounding the controversy. U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 938 (3d Cir. 1990). Indeed, other than being sued, being made the subject of press releases by Plaintiff, and issuing an internet response, KFI has not voluntarily thrust itself into any public eye. See Franklin Prescriptions, 267 F. Supp. 2d at 436–37 (finding that a pharmacy that advertised over the internet was not a limited public figures in a controversy surrounding the internet's ability to make drugs more readily available and affordable); Computer Aid, Inc. v. Hewlett-Packard Co., 56 F. Supp. 2d 526, 536–37 (E.D. Pa. 1999) (finding that a large company that issued a press release about a public merger and then issued a public response to a litigation did not thrust itself into a public controversy).

Rite Aid Corp., No. Civ.A.98-1732, 1998 WL 964217, at *1–2 (E.D. Pa. Oct. 19, 1998). This

negligence standard, however, is a relatively low hurdle and does not mandate any showing of

intent to defame. Franklin Prescriptions, 267 F. Supp. 2d at 441.

Plaintiff's argument is premised on the position that it had more than sufficient evidence

that the yarns were properly labeled to undermine any finding that it negligently reported that the

yarns were mislabeled. (Pl.'s Mem. 7.) This argument is mistaken, however, because the

defamatory statements at issue go well beyond simply accusing KFI of supplying mislabeled

yarns. Rather, they suggest that KFI has been operating as a racketeering or corrupt enterprise.

To the extent Plaintiff is unable to produce conclusive evidence of KFI's racketeering activity at

the time it published the defamatory statements, the Court must find that the negligence element

is satisfied.

## 4.   **Truth**

In a final effort to obtain a grant of summary judgment in its favor on KFI's defamation

counterclaim or, alternatively, defeat KFI's Motion for Summary Judgment, Plaintiff raises the

affirmative defense of truth. "It is well established that truth is an absolute defense to

defamation." Fanelle, 79 F. Supp. 2d at 562 (citing Schnabel v. Meredith, 107 A.2d 860 (Pa.

1954)). The burden of proof of the truth falls on the party making the defamatory

communication. Moore v. Vislosky, 240 F. App'x 457, 463 (3d Cir. 2007).

Plaintiff's truth argument is two-fold. First, it again asserts that it has conclusively

proven that the yarns at issue were mislabeled, meaning that any alleged defamatory statements

about the cashmere content of the yarns are true. This point, however, is a red herring. Although

Defendant has vigorously disputed the accuracy of Plaintiff's remarks with respect to the

cashmere content of its yarns, it has not claimed that any remarks about fiber content were defamatory in nature.  Rather, assuming *arguendo* the truth of the statements as to the labeling of the yarn, Defendant challenges only the allegations that it was acting as a racketeering enterprise. Accordingly, any truth of the statements regarding labeling is irrelevant.

Second, Plaintiff argues that its statements regarding KFI's racketeering activities are true.  Unlike the Plaintiff's previous argument, this point, together with evidence of record, gives the Court some pause.  Proper analysis begins with inquiry into the definitions of each of the terms used in the various statements.  The defamatory statements at issue claim that Sion Elalouf[8] "manages Knitting Fever, Inc. as a racketeering enterprise"; that the defendants are "reaping illegal profits from the sale of mis-labeled wool products distributed to yarn shops"; that "the elements of a racketeering charge appear to be present"; that this was a "deliberate scheme" by KFI; and that "Mr. Elalouf both has engaged in a pattern of racketeering acts and his regular way of managing his business in as a racketeering enterprise."  (Def.'s Mot., Ex. 1.) "Racketeering activity" is defined by RICO as any of a host of enumerated crimes, including mail or wire fraud.  18 U.S.C. § 1961(1).  An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity."  Id. § 1961(4).  Finally, "pattern" is defined as the commission of at least two acts of "racketeering activity" within a ten-year period.  Id. § 1961(5).

Given such definitions, the appropriate inquiry, then, is whether Plaintiff has created a genuine issue of material fact on the existence of racketeering activity by KFI.  On the one hand, faced with Plaintiff's scant, circumstantial evidence, which has obviously—in many

---

[8]  To the extent the statements impugn only Sion Elalouf rather than KFI, they are not actionable since only KFI is a party to the counterclaim.

respects—been taken out of context, the Court is tempted to outwardly reject Plaintiff's poor efforts at establishing the truth of its 2008 Press Release and grant summary judgment in favor of Defendant on the defamation counterclaim.  On the other hand, however, the Court's authority to act is cabined by the standard set forth in Federal Rule of Civil Procedure 56, which requires that all reasonable inferences be drawn in favor of Plaintiff as the non-moving party.[9]  <u>Matsushita Elec.</u>, 475 U.S. at 587.  Assuming, for purposes of these Cross-motions only, that Plaintiff will be able to prove that the yarns at issue were mislabeled,[10] the repeated knowing distribution of these yarns, in violation of the Wool Products Labeling Act and through the use of the mails or wires, could constitute racketeering activity.  To that end, Plaintiff has offered evidence—albeit evidence that is barely sufficient to skate past the "mere scintilla" standard—allowing the reasonable inference that KFI's principal agents, including Sion Elalouf, Jay Opperman, and Jeffrey Denecke, knew or at least suspected that the yarns were mislabeled but nonetheless, through use of the wires, continued to distribute them.  For example:

- In an e-mail to Jay Opperman dated July 10, 2006, yarn designer Debbie Bliss writes, "David [from Designer Yarns] tells me that Sion had cashsoft tested and said that there was no cashmere in it so I assume that this is the backlash."  (Pl.'s Resp. Opp'n Mot. Summ. J. Counterclaims, Ex. 1.)  Opperman responds that "the results of the Cash Soft *are identical to* Cashmereno."  (<u>Id.</u> (emphasis added).)

- An e-mail from David of Designer Yarns, dated October 23, 2006, to Sion Elalouf states, "I had this [unknown] tested as a matter of interest.  We have never had one as low as this!"  Elalouf responds, "You realize we can't do anything with this.  I had all 5 Coats products tested here and had zero result.  We need to establish our products have the correct amount of cashmere."  (<u>Id.</u>

_____

[9]  The Court finds no basis for granting Plaintiff's Motion for Summary Judgment on this claim and, thus, considers this argument solely in the context of Defendant's Motion for Summary Judgment.

[10]  Notably, Plaintiff has brought a separate Motion for Summary Judgment on the fiber content of the yarns, which is addressed via separate order.

Ex. 2.)

- A test report supplied to KFI, specifically Sion Elalouf, on January 26, 2006, shows that upon testing of several of the yarns at issue, "the labeling is different as compared to the recommended fiber content labeling and would be considered to fail due to the differences being out of the accepted deviation range (+/- 3%). (Id. Ex. 3.)

- A letter from yarn manufacturer Filatura Pettinata V.V.G. ("Filatura"), dated July 10, 2006, reveals that fiber analyses of the yarns at issue show some discrepancy of percentage between cashmere and acrylic, which could be a result of various factors. The letter goes on to suggest, as one possibility that they "continue so as done so far, if we think that the risks are not too big." (Id. Ex. 4.)

- An e-mail from Sion Elalouf to David Watts of Designer Yarns, dated July 12, 2006, wherein he states that he received the report from Filatura and it showed only 1 to 2% cashmere. (Id. Ex. 6.) The e-mail goes on to state that "We need the product to contain the fiber listed in close enough quantity not to create an issue for us ever again. We do not need to improve the quality of the product or the quality of the fiber, but we need to be sure that the product contains what is listed and what we are paying for. This is a serious matter. We do not want to stop the product, just to make it honest!" (Id.)

- An exchange of e-mails in February 2007 evidences the producers of the Noro yarns at issue, Sion Elalouf, and John Cashell of Designer Yarns discussing how to handle the apparent problems with the cashmere content of the yarns not matching their labels. (Id. Ex. 7.)

- An e-mail from Eric Yates from KFI Accounting to a yarn shop representative states that it "doesn't surprise us that your test showed no cashmere," but justifies that discrepancy based on the fact that the yarn was manufactured and sold "before the law setting forth the current standards went into effect," thus making her test "irrelevant." (Id. Ex. 9.)

Taken separately, none of these pieces of evidence would provide any basis on which Plaintiff's affirmative defense could to proceed. Considered cumulatively, however, a reasonable jury may conceivably infer that, as of the time of the 2008 Press Release, KFI had discovered that its yarns were potentially mislabeled, yet purposely continued to re-sell them. Should a jury so find, Defendant's cause of action for defamation would necessarily fail.

In an effort to diffuse this evidence, Defendant relies on several faulty assumptions.

18

Primarily, Defendant presumes that the Court's recent grant of its Motion for Summary Judgment on Plaintiff's RICO claims compels a finding that it is entitled to summary judgment on its counterclaim for defamation.  This Court's Memorandum of July 19, 2012, however, rested entirely on a finding that Plaintiff lacked statutory standing to pursue the RICO claims in light of its failure to establish actual, concrete loss proximately caused by any purported racketeering acts.[11]  At no point in that Memorandum did the Court opine on the substantive merits of the RICO claim.  In turn, the grant of summary judgment on the RICO claims cannot be construed as a judicial finding that the defamatory statements were untrue.

Moreover, Defendant argues that "'evidence' of KFI's state of knowledge in 2006 [as to an alleged discrepancy in fiber content], years after any of The Knit With's purchases of the yarns at issue, has nothing whatsoever to do with the falsity of The Knit With's defamatory statements suggesting that KFI was the vehicle for a racketeering conspiracy to intentionally defraud consumers prior to 2005."  (Def.'s Reply Br. 4 n.3.)  In so arguing, however, Defendant conflates the proof necessary for Plaintiff to succeed on its RICO claims with the proof necessary for Plaintiff to establish that the defamatory statements were true.  While the Complaint in this case alleges that KFI's racketeering activity injured TKW prior to 2005,[12] the alleged defamatory statements more broadly suggest that KFI is generally operated as a racketeering enterprise without any particular time limitations.  Accordingly, although evidence regarding KFI's

---

[11]  In all fairness, Defendant was not privy to the Court's ruling until after it had finished briefing the current Motions.

[12]  Such allegations in the Complaint cannot give rise to defamation liability as "[i]t has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses or parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation."  Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. Ct. 1991).

19

knowledge and continued distribution of allegedly mislabeled yarns during the 2006 to 2007 time frame would not support a RICO cause of action by TKW, it remains relevant to a consideration of whether TKW's general allegations of ongoing racketeering activity by KFI are true. In other words, to be accurate, Plaintiff need not necessarily establish that all of the elements of a § 1962(c) RICO claim[13] were met, but only that at some point prior to the Press Release KFI was being operated as a racketeering enterprise.

In short, a fair-minded jury, given the evidence adduced by Plaintiff, could potentially find that the defamatory statements ring true.  As truth acts as an absolute defense, summary judgment in favor of Defendant here is inappropriate.

## 5. Conclusion as to Defamation Counterclaim

The evidence of record in this matter leaves a genuine issue of fact on the crucial inquiry of whether the defamatory statements at issue were true.  Without question, the evidence is insufficient to allow Plaintiff to succeed on its Motion for Summary Judgment.  By the same token, however—notwithstanding the fact that Defendant has conclusively established every element of a defamation cause of action—the minor, but lingering uncertainty regarding the affirmative defense of truth prevents a grant of summary judgment in favor of Defendant on this claim.  As such, the Court denies both Motions for Summary Judgment on this claim and leaves it for a jury to resolve the remaining factual questions.[14]

---

[13]  To plead a RICO claim under § 1962(c), as is claimed in this case, "the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010) (quotations omitted).

[14]  Plaintiff is forewarned that the Court has, at its disposal, the authority to enter judgment as a matter of law if, at trial, Plaintiff fails to provide a legally sufficient evidentiary basis to find in its favor on the issue of truth.  Fed. R. Civ. P. 50(a)(1).

**B.**   **Tortious Interference**

Plaintiff also seeks summary judgment with respect to Defendant's counterclaims of tortious interference with existing and prospective business relations.[15]   These claims allege generally that, as a result of Plaintiff's various press releases, Defendant has suffered losses to its present and potential relationships with various customers.

To state a claim for tortious interference under Pennsylvania law, a plaintiff must allege: (1) the existence of a contractual or a prospective contractual relation between the plaintiff and a third party; (2) purposeful action on the part of the defendant specifically intended to harm the existing contractual relation or prevent the prospective contractual relation from coming to fruition; (3) the absence of privilege or justification on the part of defendant; and (4) the occasioning of actual legal damage due to the conduct of the defendant.  CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 357 F.3d 375, 384 (3d Cir. 2004) (citations omitted).

In the present matter, Plaintiff fails to engage in any application of the facts to the aforementioned elements.  Rather, it simply contends that because Defendant has failed to produce evidence to establish each of the elements necessary for it to prevail at trial on its defamation counterclaim, it cannot, by derivation, succeed on its tortious interference counterclaim.  As set forth in detail above, however, Defendant has established the elements of its defamation counterclaim and is stymied only by the remaining issue of fact regarding the affirmative defense of truth.  Given Plaintiff's failure to present any additional basis for dismissing the tortious interference counterclaim, the Court must deny this portion of Plaintiff's Motion.

---

[15]  Notably, Defendant does not seek summary judgment as to this claim.

**IV.     CONCLUSION**

Neither party in this case has conclusively demonstrated an entitlement to summary judgment in its favor on the remaining counterclaims.  Therefore, the Court denies both Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims and Defendant's Motion for Summary Judgment on the Defamation Counterclaim.  An appropriate order follows.