IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE KNIT WITH, | | |
| Plaintiff, | | |
| v. | : | Civil Action No. 08-cv-04221 |
| KNITTING FEVER, INC., et al. | | |
| Defendants. | | |

| | | |
|---|---|---|
| THE KNIT WITH, | | |
| Plaintiff, | | |
| v. | : | Civil Action No. 08-cv-04775 |
| EISAKU NORO & CO., LTD., et al., | | |
| Defendants. | | |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' PETITION FOR LEAVE OF COURT TO FILE 28 U.S.C § 1927 MOTION AND MOTION FOR EXCESS COSTS PURSUANT TO 28 U.S.C. § 1927**

Defendants Knitting Fever, Inc. ("KFI"), Filatura Pettinata V.V.G. di Stefano Vaccari & C. (S.A.S.) ("Filatura"), Designer Yarns, Ltd., Sion Elalouf, Diane Elalouf, Debbie Bliss, Jeffrey Denecke, and Jay Opperman (collectively "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Further Support of Defendants' Request for Fees and Costs Pursuant to 28 U.S.C. § 1927.

1

I.      **<u>INTRODUCTION</u>**

In opposing Defendants' request for fees, Mr. Casale[1] employs some of the same conduct that compelled Defendants' request in the first place.  Rather than addressing the arguments itemized in Defendants' Petition or attempting to explain his conduct head-on, Mr. Casale misses much of the point of Defendants' submission, instead persisting in unfounded accusations against Defendants and their counsel, misrepresenting the law, and ignoring or attempting to re-litigate this Court's prior rulings.  To the extent Mr. Casale addresses Defendants' arguments at all, he largely dismisses them with the conclusory refrain that "zealous advocacy" excuses his behavior.  But zealous advocacy is not a magical talisman that absolves a lawyer from compliance with his obligations to the law generally and to the Court specifically.  Indeed, the conduct in which Mr. Casale persistently engaged, delineated in Defendants' opening brief, is not zealous advocacy at all; it is sanctionable misconduct.

Rather than presenting argument on the application of Section 1927, Local Rule 83.6.1(b), or the Court's inherent authority to sanction his conduct, Mr. Casale's response merely seeks to re-litigate the merits of his now-dismissed claims against the Defendants because, in his view, whatever means he employed were justified by the end he hoped to reach—a judgment in his favor, made up almost entirely of an award of fees for his own time in litigating his case. Defendants respectfully ask that the Court reject Mr. Casale's tactics and deter others from similarly abusing the judicial system.

---

[1] Mr. Casale refers to the responding party as The Knit With.  *See* Opposition at 1 ("The Knit With opposes the Petition").  Likewise, Mr. Casale interchangeably discusses the imposition of fees against himself or The Knit With.  *See, e.g.*, *id.* at 12 ("Plaintiff respectfully submits Defendants fail to meet their heavy burden to shift to **Plaintiff**, or its counsel, the fees and costs Defendants incurred as litigation expenses.") (emphasis added).  To be clear, though this distinction may be of little import here, § 1927 "is designed to discipline counsel only and does not authorize imposition of sanctions on the attorney's client." *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll.*, 103 F.3d 294, 297 (3d Cir. 1996).

## II. ARGUMENT

### A. Mr. Casale Ignores the Majority of the Conduct at Issue

Mr. Casale asserts in his opposition that "Defendants identify no unreasonable conduct by TKW's counsel intended to multiply these proceedings" and goes on to attribute to Defendants any "delay" in the proceedings, as he understands that term. Opposition at 4. In making this assertion, Mr. Casale simply ignores the litany of instances of misconduct specifically detailed in Defendants' Petition. By way of example, nowhere in his opposition does Mr. Casale even attempt to defend his conduct—in a case involving the purchase of less than $10,000 of knitting yarn—in:

- Harassing Ms. Bliss and leaving a threatening voicemail that concludes "I know you are listening. I know you can hear this;"

- Contacting Mr. Denecke's mother and neighbors;

- Advertently incurring trumped up "damages" with the expectation that the amounts he paid himself and his relatives would be paid back threefold;

- Filing motions for no purpose other than to increase the costs of litigation and his anticipated award of his own attorney's fees;

- Submitting false declarations in support of the breach of warranty claims;

- Issuing more than 600 separate interrogatories seeking personal, sensitive, and wholly irrelevant information;

- Issuing twenty *sets* of requests for production (encompassing 830 individual requests);

- Abusing requests for admission to the extent that Mr. Welsh concluded that the "large number of requests for admissions support the conclusion that the plaintiff is attempting to use Rule 36 to, in essence, proceed to trial on the basis of that tactic." *See* Dkt. No. 77 (4775 case) at 2;

- Repeatedly threatening deponents with criminal prosecution;

- Repeatedly filing meritless motions to compel and/or for sanctions;

3

- Violating Rule 45 in an effort to evade the Protective Orders issued in this case and in the action brought by Cascade Yarns, Inc. pending in the United States District Court for the Western District of Washington;

- Refusing to provide discovery into clearly relevant matters while asserting, in the words of Mr. Welsh, "frivolous" objections, and then simply refusing to comply with Mr. Welsh's Orders;

- Obstructing depositions by, *inter alia*, instructing a witness not to answer on the basis of an objection as to form which necessitated the intervention of Mr. Welsh; and

- Invoking, in briefing against Jewish party opponents and counsel, the philosophical views of Nazis and using other curiously misplaced historical references.

None of this conduct could have been undertaken in good faith and, indeed, nowhere in his opposition did Mr. Casale even assert that it was. *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose . . . .").

As the Third Circuit has stated: "[T]he principal purpose of sanctions under § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (internal quotation marks omitted). Here, Mr. Casale demonstrates not the slightest degree of contrition nor offers the Court any assurance that such egregious conduct will not be repeated in future cases. In such instances, the imposition of sanctions is not only proper but necessary to achieve § 1927's deterrent effect. *See, e.g., Ally Fin., Inc. v. Mente Chevrolet Oldsmobile, Inc.*, No. 11-7709, 2012 U.S. Dist. LEXIS 141111, at *41 (E.D. Pa. Sept. 28, 2012) ("The Court believes the sanctions it imposes

here are reasonable and justified in light of [counsel's] conduct, and will achieve the deterrent effect for which sanctions are intended.").[2]

      B.      <u>Mr. Casale Misunderstands the Purpose of § 1927</u>

Other than relying on the concept of "zealous advocacy," Mr. Casale's primary argument appears to be that because Defendants sought, and were granted, stays of discovery in this litigation for the Court to consider dispositive motions, it is Defendants who caused the "delay." *See generally* Opposition at 2-3. While Mr. Casale cites no legal authority for this proposition, he appears to be reading the Third Circuit's statement "that the purpose of § 1927 is to deter intentional and unnecessary ***delay***" to suggest that § 1927 is concerned only with ***temporal*** delays in litigation. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 194 (3d Cir. 2002) (emphasis added). Such a reading, however, is inconsistent with the policy underlying Section 1927 and case law interpreting it which shows that the focus of § 1927 is the recovery of excess fees and costs incurred because of a vexatious multiplication of proceedings and does not limit the section's application to temporal metrics. *Id.* at 190 (affirming monetary sanctions where attorney "multiplied the proceedings at nearly every turn, and increased the cost of this litigation accordingly"); *see also LaSalle Nat'l Bank v. First. Conn. Holding Grp.*, 287 F.3d 279, 288 (3d Cir. 2002) ("The sanctions that may be imposed under § 1927 are also limited to excess costs and expenses that are incurred 'because of such conduct.'") (quoting in part 28 U.S.C. § 1927).

---

[2] Mr. Casale also asserts that the Court should not be permitted to consider imposing sanctions pursuant to its inherent authority or Local Rule 83.6.1. *See* Opposition at 2. Though Mr. Casale refers to these as "diverse and inconsistent Rules having nothing to do whatsoever with the purpose for § 1927 sanctions," *id.*, these various sanctioning powers are in all material respects equivalent. *See Cintron Bev. Grp. v. DePersia*, No. 07-3043, 2008 U.S. Dist. LEXIS 30715, at *7 (E.D. Pa. Apr. 14, 2008) (noting that while "Local Rule 83.6.1 tracks the language of Section 1927" and also requires a finding of bad faith, it "is somewhat broader in scope because it takes into consideration the Court's inherent power to sanction").

5

The suggestion that Defendants' requests for discovery stays preclude an award of excess fees under § 1927 is illogical. Had Defendants not requested, and the Court not imposed, stays of discovery while the Court considered dispositive motions, the wasted time, effort, and expense caused by Mr. Casale's tactics would have only increased. He provides no legal authority for the proposition that Defendants should be precluded from recovering their needlessly incurred costs simply because, at times, they were successful in preventing him from being even more vexatious.

    C.    <u>There is No Cure Provision Under § 1927 and Mr. Casale Received Sufficient Notice</u>

    1.    *Where an Attorney's Conduct Violates Existing Laws and Procedures, He Has Sufficient Notice That He May be Subject to Sanctions*

Mr. Casale's proclivity for misrepresenting the applicable law to this Court was well chronicled in Defendants' opening submission. *See, e.g.,* Dkt. No. 428 n.24. Yet in opposition to a motion for sanctions regarding, *inter alia*, this precise conduct, Mr. Casale persists in providing this Court with a misleading synopsis of the binding precedent. For example, Mr. Casale asserts that "Third Circuit caselaw is clear: attorney sanctions should not be imposed without an opportunity for change in challenged [sic] conduct." Opposition at 6. In support of this alleged "cure" provision under § 1927, Mr. Casale cites to the Third Circuit's decision in *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 571 (3d Cir. 1985) for the proposition that "fundamental fairness may require some measure of ***prior notice*** to an attorney that the conduct he or she ***contemplates undertaking*** is subject to discipline or sanction by a court." Opposition at 6 (emphasis added by Mr. Casale). Yet, the very next sentence of the *Eash* decision makes clear that the "prior notice" contemplated by the Third Circuit is satisfied where the sanctionable conduct is already proscribed by existing law or court procedure. *See Eash*, 757 F.2d at 571 ("Consequently the absence, for example, of a statute, Federal Rule, ethical canon,

6

local rule or custom, court order, or, perhaps most pertinent to the case at hand, court admonition, proscribing the act for which a sanction is imposed in a given case may raise questions as to the sanction's validity in a particular case.").[3]

The context of the referenced quotation in *Eash*, was that the court *sua sponte* and without prior notice sanctioned Defendants' attorney because while the case settled on the day trial was scheduled to begin, the attorney had not responded to plaintiff's counsel settlement overtures the prior week. *Id.* at 559. In imposing sanctions, the court held that "settlement on the eve of trial was not justified. Defendants' attorney was given adequate notice by plaintiffs' counsel and by court personnel to attempt to reach an agreement." *Id. Eash* does **not** stand for the proposition that an attorney must receive prior notice that he or she may be subject to sanctions for violating the Federal Rules of Civil Procedure, court orders, or the ethical canons that govern the profession.[4]

   2.  *Due Process Requires Only an Opportunity to Respond, Which is Satisfied By This Motion*

---

[3] To be clear, an attorney facing sanctions under § 1927 is not entitled to a cure or "safe harbor" provision similar to that required by Fed. R. Civ. P. 11. Instead, "[u]nlike Rule 11 sanctions, a motion for excess costs and attorney's fees under § 1927 against an attorney who multiplies the proceedings unreasonably and vexatiously 'is not predicated upon a 'safe harbor' period, nor is the motion untimely if made after final judgment in the case.'" *In re Jazz Corp.*, 312 B.R. 524, 541 (Bankr. D.N.J. 2004) (quoting in part *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997)).

[4] Mr. Casale's citation to the Third Circuit's decision in *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 192 (3d Cir. 2002) for the proposition that the attorney "was on **notice to the particular factors that he had to address if he were to avoid sanctions**" is similarly misplaced. Opposition at 6 (emphasis supplied by Mr. Casale). As an initial matter, the emphasized language is not a holding of the Third Circuit but rather is a quotation from the underlying district court opinion. *See Prudential*, 278 F.3d at 192 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 63 F. Supp. 2d 516, 524 (D.N.J. 1999)). Moreover, that quotation arose in the context of whether the attorney had adequate notice of the specific type of non-monetary sanction that the court was considering and not whether the attorney had adequate notice that his conduct was sanctionable. *See id.* at 192-193 ("Moreover, although Malakoff was clearly on notice that the court was empowered to make him pay for the increase in cost resulting from his vexatious conduct and that Lead Counsel would request those costs, it is not as clear that Malakoff had notice that the court was considering requiring him to attach his scarlet letter to his pro hac vice admissions in the District of New Jersey.").

7

As discussed above, Mr. Casale is not entitled to advance warning that violation of court orders, submission of false declarations, abuse of the discovery process, and harassment may subject him to sanctions. That said, due process does require that the court "provide the party to be sanctioned with notice of and some opportunity to respond to the charges." *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990).[5] In *Jones*, the Third Circuit endorsed a flexible approach to the due process which must be afforded. *Id.* at 1358 ("The circumstances must dictate what is required"). The court noted that "[i]n some cases an oral response may be sufficient, while in others an opportunity to file a written response must be accorded." *Id.* at 1358-59. Defendants' motion for sanctions provided Mr. Casale with sufficient notice of the allegations against him and the authorities under which sanctions were requested. *See, e.g., In re Prudential*, 278 F.3d at 191 ("Here, Malakoff did receive notice in the form of the motion for sanctions that Lead Counsel filed on December 10, 1996."). Moreover, Mr. Casale was afforded, by written response to Defendants' motion, the opportunity to be heard. *See, e.g., Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994) ("There may be times when an oral or evidentiary hearing will be necessary to aid in the court's factfinding. At other times the opportunity for counsel to fully brief the issue will suffice."). As Mr. Casale was put on notice of the allegations against him and the authorities under which sanctions are sought, and has had an opportunity to respond, he has been afforded the required due process.[6]

---

[5] Mr. Casale cites to *Jones* for the proposition that the "mere existence of 28 U.S.C. § 1927 does not constitute sufficient notice to satisfy due process"). Opposition at 6. The issue in *Jones*, however, was that neither party had raised § 1927 as a basis for sanctions until the court's order imposing sanctions relied on same. *Jones*, 899 F.2d at 1358 ("However, we cannot find where appellant was put on explicit notice that § 1927 would be relied upon in sanctioning him until he received the court's order of February 2, 1989, actually imposing sanctions. Defendants' motion for sanctions referred only to Rule 11 and appellant's responses primarily addressed that basis for sanctions.").

[6] Moreover, as Mr. Casale does not deny any of the conduct at issue in Defendants' motion, it does not appear that there is anything to be gained from an evidentiary hearing regarding Defendants' motion. In *Jones*, the Third Circuit declined to impose "any rigid rule" regarding the exact form that an opportunity to respond must take.

D. **Defendants' Earlier Efforts to Resolve the Warranty Claims Were Stymied by Mr. Casale's Submission of False Declarations to Create Issues of Disputed Fact**

Defendants' opening submission discusses at length how Mr. Casale's submission of false declarations delayed by years (and by hundreds of thousands of dollars) the summary disposition of The Knit With's warranty claims and the resources wasted (both by Defendants and the Court) as a result of same. *See* Dkt. No. 428 at Section III.D. Notwithstanding this inconceivable conduct by an officer of the court, Mr. Casale did not contest, explain, address, or even mention his preparation and submission of his sister's false declarations.

Rather, Mr. Casale makes the remarkable argument that sanctions are not appropriate because the delay in the dismissal of the warranty claims could have been avoided if Defendants had pinned him down earlier on the fact that these declarations were false. Opposition at 4 (citing to *Murphy v. Klein Tools, Inc.*, 123 F.R.D. 643, 647 (D. Kan. 1988)). But the case cited by Mr. Casale for this argument, *Klein Tools*, does not stand for that proposition nor does it bears any relationship to the circumstances or procedural history of this case. Defendants here did not idly wait for years before presenting their statute of limitations defense to the court in a motion. Instead, on April 1, 2010, Defendants filed a motion for summary judgment based on the untimeliness of the breach of warranty claims. *See* Dkt. No. 89 at 4 (asserting that "all of Plaintiff's breach of warranty claims are time-barred"). Thereafter, Mr. Casale continuously delayed resolution of those claims by presenting an ever-changing story regarding the non-existent 2005 delivery through a rotation of declarations falsely purporting to

---

899 F.2d at 1358 (explaining that "[g]iven the permutations inherent in fee applications and responses thereto, any rigid rule would, to say the least, be undesirable."). Instead, the Third Circuit held that "a district court in the exercise of its sound discretion must identify and determine the legal basis for each sanction charge sought to be imposed, and whether its resolution requires further proceedings, including the need for an evidentiary hearing." *Id.* at 1359. Of course, should the Court believe that an evidentiary hearing is appropriate in this instance, Defendants will make themselves available.

be based on personal knowledge.[7] Mr. Casale cannot seriously be contending that Defendants' failure to earlier expose his shell-game of deceit precludes recovery of the fees associated with such failure. To do so would only have the perverse effect of rewarding Mr. Casale for having gotten away with his conduct for as long as he did.[8]

      E.    <u>Defendants' Motion Is Not Predicated on Any Post-Hac Analysis</u>

Mr. Casale also asserts that "[f]atally infecting Defendants § 1927 Petition is fallacious, post-unreasonable hoc [sic] analysis." Opposition at 6. In attempting to paint Defendants' recitation of Mr. Casale's campaign of harassment against them as merely *ex post facto* hindsight, he suggests that Defendants merely "claim the Complaint fails to allege a factual basis for naming Ms. Bliss as a Defendant." Opposition at 7. As an initial matter, Defendants do not "claim" that Mr. Casale had no factual basis for including Ms. Bliss, the Court ruled ***as a matter of law*** that this was so. *See* Dkt. No. 215. In any event, Defendants' request for fees is

---

[7] For a more complete recitation of Mr. Casale's shifting factual assertions regarding who purportedly had knowledge of the fictional delivery, *see* Dkt. No. 362 & Dkt. No. 428 at § III.D.

[8] Mr. Casale also cites to the Seventh Circuit's decision in *Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir. 1987) for the proposition that the "Sanctions motion suffers from ostrich-like tactic of pretending potentially dispositive authority does not exist to defeat sanctions motion." Opposition at 5. To the extent this citation is somehow intended to chastise Defendants for not citing to the District of Kansas' *Klein Tools* decision, that case is neither factually similar to this case nor "dispositive authority" on this Court. *Cf.* Dkt. No. 371 at 8-9 (submission by Mr. Casale accusing Defendants' counsel of "an apparent lack of candor" for failing to cite clearly distinguishable cases from the Courts of Appeal for the Fourth and Fifth Circuits).

Moreover, Defendants are compelled to note that, in *Szabo*, the Seventh Circuit remarked that it was plaintiff's position, and not the resulting motion for sanctions, that suffered from "'the ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist.'" *Id.* (quoting *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987) (vacating denial of Rule 11 motion and remanding for imposition of sanctions)). Thus, *Szabo* stands for the proposition that one who abuses the judicial system and imparts unnecessary costs on his adversary and the court must be prepared for the consequences. *Id.* at 1079 ("Round-the-clock work by a large law firm does not come cheap. If Szabo-Digby imposed costs on its adversary and the judicial system by violating *Rule 11*, it must expect to pay.").

10

not an invitation to re-litigate the alleged merits of Mr. Cascale's claims. Rather, it is a result of the bad faith manner in which he advanced them.[9]

More importantly, Mr. Casale misses the point of Defendants' discussion of his inclusion of Ms. Bliss and Mrs. Elalouf in this litigation. Defendants are not attempting to find some back door through which to attain Rule 11 relief. Rather, Defendants' argument is that the tenuous basis for including Ms. Bliss and Mrs. Elalouf as individual defendants, combined with the pre-complaint harassment of, and threats against, Ms. Bliss and the harassing discovery against both individuals, evidence Mr. Casale's clear bad faith intent. *See, e.g., Baker Indus., Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 223 (3d Cir. 1985) ("Courts have generally invoked [§ 1927] either to punish knowingly baseless contentions that are made for an ulterior purpose, which is virtually always to harass or delay, or to punish repeated instances of flagrantly improper conduct, often in disregard of the court's warnings.") (internal citations omitted). The fact that Mr. Casale would threaten to publicly humiliate Ms. Bliss or include Mrs. Elalouf for no lawful purpose – charges that he did not deny in his opposition – clearly indicates that the conduct at issue in this motion is not good faith zeal run amok but a calculated, bad faith campaign of harassment. *See Barbee v. SEPTA*, No. 04-4063, 2007 U.S. Dist. LEXIS 7317, at *9 (E.D. Pa. Feb. 1, 2007) (noting that the "case law shows that bad faith will be inferred when the attorney's actions are so completely without merit as to have been undertaken only for some improper purpose.").[10]

---

[9] As to Mr. Casale's refusal to accept this Court's rulings, it is important to note that the Court did not reject his RICO claim because Defendants "successfully 'hanged together' until the Court rejected the sufficiency of the available facts." Opposition at 8. Instead, the Court held that The Knit With did not have standing to pursue the RICO claim because it could not identify a single alleged injury compensable under RICO "[n]otwithstanding this extensive discovery period and the fact that all documents relevant to this issue were within its own possession . . . ." Dkt. No. 402 at 25.

[10] Mr. Casale misrepresents the holding in *In re Orthopedic Bone Screw Prods. Liability Litig.*, 193 F.3d 781 (3d Cir. 1999). Mr. Casale asserts that the Third Circuit held that the "absence of Rule 11 motion challenging

F. Mr. Casale's Remaining Arguments Are Without Merit

1. *Mr. Casale's Assertion that Defendants Are Prejudiced Is Groundless*

Defendants' opening submission discussed Mr. Casale's frequent use of offensive and wholly inappropriate references to historical matters surrounding the persecution of members of the Jewish faith, including Mr. Casale's use of a quotation from Joseph Goebbels to describe his view of Defendants' conduct in inadvertently mis-citing a Local Rule. Notably, Mr. Casale did not attempt to justify his citation to Goebbels, nor did he deny that this quotation or his other curious references to historical events involving Jews were intended to offend and insult. Instead, Mr. Casale's only response was that **Defendants'** prejudices prevented them from seeing that his use of these offensive references was not improper because other litigants and/or courts have used each of the phrases at some point in our nation's history. Mr. Casale does not explain what he believes to be Defendants' prejudices, nor does he provide any support for his assertion.

2. *Mr. Casale's Continued Attempt to Litigate the Coats Matter Further Evidences His Bad Faith*

Finally, Mr. Casale continues to defend his refusal to accept this Court's orders prohibiting discovery into the *Coats* litigation. Mr. Casale makes a number of arguments about the supposed benefit of this discovery (none of which is supported by the documents to which he cites), but ignores the fact that the relevance of this discovery is no longer at issue. The issue, for purposes of Defendants' fee request, is not whether Mr. Casale believes that the Court should have ordered Defendants to produce all documents relating to that litigation. Instead, it is that

---

the Complaint indicates absence of bad faith in filing the Complaint." Opposition at 8. This is not what the Third Circuit said. To the contrary, what indicated an absence of bad faith to the Third Circuit was that the district court had "raised the issue of whether the original omni complaints satisfied the requirements of Fed. R. Civ. P. 11" before concluding that they "did not violate Rule 11 but still were not pleaded with sufficient particularity . . . ." *Id.* at 791. Thus, it was not the absence of a Rule 11 motion that indicated bad faith but the district court's conclusion that Rule 11 was satisfied.

his disagreement with the Court's denial of The Knit With's motion to compel did not give him license to harass third-parties and other courts by issuing subpoena after subpoena in a blatant end-run around this Court's ruling. To the extent Mr. Casale believes this Court too narrowly defined the scope of discovery in this case, the principle of zealous advocacy does not excuse his abject refusal to respect those rulings. As the Third Circuit has explained, "the case law establishes that a direct order of the trial judge fixes the limits of proper advocacy; the vigor permissible in representing a client's interests has never included the flaunting of a judge's rulings. Disobedience is not an ingredient of contentiousness; defiance is not an element of zealousness." *Commonwealth of Pa. v. Int'l Union of Operating Eng'rs*, 552 F.2d 498, 506 (3d Cir. 1977).

### III. CONCLUSION

For the foregoing reasons, and those contained in their opening submission, Defendants respectfully request that the Court grant Defendants' motion for sanctions and order Mr. Casale to reimburse Defendants for their excessive fees and costs incurred in this litigation.

Respectfully submitted,

PEPPER HAMILTON LLP

Dated January 11, 2013

s/ Joshua R. Slavitt
Joshua R. Slavitt
Joanna J. Cline
Noah S. Robbins
3000 Two Logan Square
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I, Joshua R. Slavitt, hereby certify that on the date set forth below I caused to be served the foregoing Reply in Further Support of Defendants' Petition for Leave of Court To File 28 U.S.C. § 1927 Motion and Motion for Excessive Costs Pursuant to 28 U.S.C. § 1927 via CM/ECF notification.


Dated: January 11, 2013                   */s/ Joshua R. Slavitt*
                                                          Joshua R. Slavitt